# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE AT KNOXVILLE

GARY WAYNE SUTTON, )
)
    Petitioner, )
)
vs. )    Case No. 3:07-cv-30
)    Judge Varlan/Shirley
RICKY BELL, Warden, )
)
    Respondent. )

## MOTION TO ALTER OR AMEND

Petitioner, Gary Wayne Sutton, through undersigned counsel, submits the following Motion to Alter or Amend.

1. The court took judicial notice of the evidentiary hearing conducted in *Sutton v. Bell*, Case No. 3:06-cv-388, relying upon FED. R. EVID. 201(b)(2), and then summarized what it considered the "pertinent parts of the testimony." D.E. 28, p. 49. Subsection (e), FED. R. EVID. 201, provides a "party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, a request may be made after judicial notice has been taken." Out of an abundance of caution, Mr. Sutton moves to be heard on application of the evidentiary hearing to the Sevier County case and submits the court may have overlooked the following:

**Neal Haskell, Ph.D., DABFE,** is a board certified forensic entomologist.[1] D.E.

---

[1]Dr. Haskell is certified under the auspices of the Entomological Society of America as a Board Certified Entomologist, and under the American Board of Forensic Entomology as a Diplomate. Hearing Transcript 2/1/10, p.25. His *curriculum vitae* was

137, Hearing Transcript 2/1/10, p.26. Dr. Haskell testified that all of the data gathered near or when the body was discovered reveal a lack of insect activity. He collected weather data for the area and determined it was easily warm enough to support fly activity. Specifically, on Monday, the day the body was found, the temperatures were above 50 degrees for 9 hours; on Sunday, for 8 hours, and on Saturday, for 8 hours. *Id.*, p.45. He noted forensic entomologists rely on weather data when reviewing cases.[2] *Id.*, p.53, 69. He gathered the data collected from both Blount County and Sevier County. *Id.,* p.69, 70. The data from both locations is similar and both show temperatures warm enough each day to support blue bottle fly activity.

Based on the temperature and location of the body, one would expect to find extensive blue bottle blow fly egg masses on the body after 64 hours. This lack of egg masses indicates Mr. Griffin was most likely killed somewhere between 24 and 36 hours before his body was found. *Id.*, p.53. It is possible, but highly unlikely, that Mr. Griffin was killed up to 48 hours before the body was found. *Id.,* p.54 Dr. Haskell testified Mr. Griffin could not have been killed Friday night. *Id.*, p.58.

**Stanton Kessler, M.D.,** is board certified by the National Board of Medical Examiners and is a Diplomate of the American Board of Pathology in combined Anatomic and Forensic Pathology.[3] A forensic pathologist looks at several factors in

---

introduced as Plaintiff's Hearing Exhibit 1, p.24.

[2]Dr. Haskell testified that he has studied climatology and done research in these areas for 25-30 years. D.E. 137, Hearing Transcript 2/1/10, p.77.

[3]He became board certified in anatomic and forensic pathology in 1985. *Id.,* p.89. He worked for more than ten years for Harvard Medical School as the director of the forensic pathology fellows program and trained and supervised medical doctors in

{2}

determining time of death, including the presence of lividity, the amount of decomposition, the presence or absence of food in the stomach, the appearance of the wound itself, and the presence of rigor mortis. *Id.*, Hearing transcript 2/1/10, p.92. A review of all of these factors in Mr. Griffin's death led him to conclude Mr. Griffin was killed within 24 hours of when the body was found. *Id.*, p. 129.

Dr. Kessler also reviewed weather data, Plaintiff's Hearing Exhibits 9, 10. The temperatures were warm enough during the time period in question for these processes all to occur. *Id.*, p.126-127. The temperatures were in the fifties and sixties during daylight hours. *Id.*, p.126. Temperatures were not cool enough to stop or significantly slow these processes. *Id.*, p.126-128. Temperatures in the fifties are hotter than the temperatures at a morgue; even at the morgue, these changes occur, just a little slower. *Id.*, p.127. Dr. Kessler also noted that the body likely had not been exposed to freezing temperatures because there were no ruptured capillaries on the skin. Also, if a deceased body is subject to fluctuating temperatures, decomposition progresses at a much faster rate. *Id.*, p.128, 131-32.

**Dr. Mileusnic-Polchan** is the Chief Medical Examiner for Knox County, Tennessee, and an Associate Professor of Pathology at the University of Tennessee Medical Center.[4]

Dr. Mileusnic-Polchan explained that she frequently renders forensic opinions in

---

how to become a forensic pathologist. *Id.,* p.90-91. His *curriculum vitae* was admitted as Plaintiff's Hearing Exhibit 12.

[4]Her *curriculum vitae* was admitted as Plaintiff's Hearing Exhibit 23.

{3}

cases where she did not personally perform the autopsy; in those instances, she relies on reports and data gathered by other people who have responded to the scene. D.E. 139, Hearing Transcript 2/2/10, p.43-44. She also relies upon weather data, if the body is found outside. *Id.*, p.44.

Dr. Mileusnic-Polchan also noted first responder observations that the body was in rigor, *id.*, p.121 discussing Plaintiff's Hearing Exhibit 2, and the EMT testimony that it was difficult to place the body in the body bag because of the full rigor mortis of the extremities. *Id.* She believed this suggested a fresh body. *Id.*, p.123.

Dr. Mileusnic-Polchan also noted that crime scene photos of the body show no signs of decomposition. *Id.*, p.52 discussing Plaintiff's Hearing Exhibits 15, 16; *Id.*, p.54 discussing Plaintiff's Hearing Exhibit 17. She noted that the photos clearly show the lower abdomen and the lumbar regions of the body and there was no greenish discoloration. *Id.*, p.52-53. Dr. Mileusnic-Polchan explained that because decomposition starts from the bowel and spreads, the abdomen would start to show green discoloration within 64 hours. *Id.*, p.52, 54. But in this case, the skin is a "nice tan skin color with no green discoloration." *Id.*, p.54. She also noted that the green discoloration of the abdomen is particularly observable in slender people and should have been observable in Mr. Griffin because he was a slender individual. *Id.*, p.52.

Dr. Mileusnic-Polchan also noted the wound was fresh appearing with no drying artifact. *Id.*, p.56. The wound would have dried out in 64 hours, even if there was light drizzle for part of one of the days during that time. *Id.*, p.56-57.

Dr. Mileusnic-Polchan also discussed temperature. She noted that although the

{4}

weather data is "never perfect," forensic pathologists rely on it because it gives a general sense of temperature. *Id.*, p.58. She also noted that if the temperatures fluctuate a lot, the rate of decomposition increases. *Id*. The temperature fluctuations in this case were not to such a degree that the decomposition process would dramatically change or slow, especially because decomposition starts from the bowel in the middle of the body and moves outward. The middle of the body would stay warm for a period of time, unless it were placed in subfreezing temperatures. *Id.*, p.59.

Dr. Mileusnic-Polchan estimated the time range during which death occurred as follows: "I'm comfortable with this body being dead 24 hours. I can maybe even push it to a day and a half. But beyond that, I'm very uncomfortable. ... I would never really support the time being more than 48 hours." *Id.*, p.60

**Dr. Bruce Phillip Levy.** Dr. Levy agreed with Drs. Wolfe, Mileusnic-Polchan, and Kessler, that the body was in rigor when it was discovered, D.E. 138,Hearing Transcript 2/3/10, p.10, 52; that livor mortis was transitional, *id.*, p.22; that there was no decomposition, *id., p.*24; and that there was no insect activity. *Id.*, p.75. He testified forensic pathologists rely on scientifically collected weather data, *id.,* p.30, but he disregarded it in this case. He opined that if the body were kept at temperatures like those recorded in Blount County, his opinion would change. *Id.*, p.52. Dr. Levy testified he did not have any training in climatology, *id., p.*49, or entomology. *Id.*, p.83.

**Other evidentiary matters.** Contemporaneously generated law enforcement records note a temperature of 58 degrees at 4:30 pm on the day the body was found. Plaintiff's Evidentiary Hearing Exhibit 2, p.3.

{5}

**Argument.**  The issue presented in the Sevier County petition is whether the Sevier County trial attorneys rendered effective assistance of counsel and whether the Sevier County  jury's verdict is worthy of confidence.  *Strickland v. Washington*, 466 U.S. 668 (1984).  The court concluded that because Mr. Sutton was convicted in Blount County, where there was scientific proof introduced, there was no prejudice to Mr. Sutton in the Sevier County case.  D.E. 28, p. 55 of 126.   Reliance upon the Blount County conviction to alleviate concerns about the constitutionality of the Sevier County conviction is an analysis fraught with peril.  The *only* expert testimony offered by the prosecution at the Blount County jury trial concerning time of death came from the mouth of Dr. Charles Harlan, who misrepresented his credentials on the stand and about whom the TBI possessed a wealth of undisclosed exculpatory evidence.  And because Dr. Harlan was called with no notice to defense counsel, and because volumes of profound impeaching information was not disclosed, Dr. Harlan's testimony, in all fairness, should be wholly discounted.

Further, the judicially noticed proof demonstrates with clarity that Mr. Sutton is entitled to relief on his Sevier County conviction. When considering whether a petitioner can show *Strickland* prejudice, the reviewing court must resist the urge to independently determine guilt. Evaluation of credibility of witnesses and the weight to be given their testimony is "exactly the task to be performed by a rational jury." *Matthews v. Abramajtys*, 319 F.3d 780, 790 (6th Cir. 2003). The task at hand is to consider how the evidence at issue would have affected the twelve members of the Sevier County jury.

It is respectfully submitted that the court's prejudice analysis grossly departs

{6}

from *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* held that prejudice requires a showing of a "reasonable probability that the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. An error which "alter[s] the entire evidentiary picture" presented to the jury is more likely to be prejudicial. *Id*. at 695. Expert proof undermining the state's time line presented at the Sevier County trial alters the evidentiary picture presented to the Sevier County jurors. *See Bell v. Miller*, 500 F.3d 149, 155 (2d Cir. 2007) (counsel's failure to investigate and present medical expert testimony supporting the defense theory of the case was ineffective, particularly where there was no "downside" to the testimony); *Couch v. Booker*, 632 F.3d 241, 248-49 (6th Cir. 2011) (finding prejudice for failure to investigate and present expert testimony on causation defense, where the scientific evidence "adds up to a [causation defense] that bears no relation to the [evidence] actually put before the jury." (internal citations omitted). Expert testimony undercutting the prosecution's theory of the case could have very well altered the outcome. At a minimum, it is sufficient to undermine confidence in the outcome. The writ should issue.

2. The court found the following allegations were procedurally defaulted: ineffective assistance of counsel for failure to object and appeal the unorthodox and unlawful manner in which the jury was selected (habeas claim II, D.E.3, p. 22-34)[5];

---

[5]In holding this claim procedurally barred, the court stated: "Clearly, the claim[] Sutton raises ... regarding the selection of the venires ... [was] never presented in state court and [is] therefore procedurally defaulted. ... Exhaustion requires a state prisoner to give the state courts a "fair opportunity to act" on each of the claims before he presents those claims in a federal habeas petition; some Sutton has failed to do." D.E. 28, p. 78-79.

ineffective assistance of counsel for failing to discover the presence of the Bible in the jury room and failing to appeal the issue(habeas claim II, D.E. 3, p. 25)[6]; ineffective assistance of counsel for failure to appeal the reasonable doubt jury instruction (habeas claim II, D.E. 3, p. 28-29)[7]; and the jurors were tainted by a prospective juror's statement that, "I've formed an opinion. I even know stuff that the boys done before they even committed the crime. Not being innocent, I don't believe ...." which denied Sutton his right to a trial by an impartial jury (habeas claim VI, D.E. 3, p. 45)[8].

The Supreme Court is currently considering whether ineffective assistance of post-conviction counsel can qualify as cause sufficient to excuse procedural bar. Out of an abundance of caution, Mr. Sutton has filed a motion asking this court to hold final resolution of this case until the Supreme Court resolves this issue. D.E. 30.

**Relief Requested**. Mr. Sutton requests the court to alter or amend its opinion to address the matters set forth above; to conclude Mr. Sutton has demonstrated *Strickland* prejudice; and grant the writ. Alternatively, he requests the court hold his

---

[6]In holding this claim procedurally barred, the court states: This ineffective assistance of counsel claim was not raised in state court and is therefore procedurally defaulted." D.E. 28, p. 80.

[7]In holding this claim procedurally barred, the court stated "Sutton's alleged constitutional violation was never presented to a state court and he has committed a procedural default for hwich no cause and prejudice, ... has been shown. Accordingly, this claim will be DISMISSED as procedurally barred." D.E. 28, p. 87.

[8]The court stated, "this cited ground of juror misconduct was not presented in the state appellate court on direct review or on appeal of the denial of his state post-conviction petition, thus violating the rule that a habeas petitioner must [properly exhaust] to avoid procedural default. ... Accordingly, because this claim wa snot pursued through one full round of state court review, it will be DISMISSED as [procedurally defaulted." D.E. 28, p. 107.

{8}

case in abeyance until the Supreme Court hands down new caselaw on cause and prejudice, as set forth D.E. 30. Mr. Sutton would then request the opportunity to be heard on cause and prejudice.

Respectfully submitted,

FEDERAL DEFENDER SERVICES
OF EASTERN TENNESSEE, INC.


s/Susanne Bales
Susanne Bales
Asst. Federal Community Defender
800 S. Gay Street, Suite 2400
Knoxville, TN  37929-9729
(865)637-7979

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2011, the foregoing Motion to Alter or Amend was filed electronically.  Notice electronically mailed by the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Notice delivered by other means to all other parties via regular U.S. Mail.  Parties may access this filing through the Court's electronic filing system.

s/Susanne Bales

{9}