**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE**

| | | |
|---|---|---|
| **GARY WAYNE SUTTON,** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| **vs.** | ) | Case No. 3:07-cv-30 |
| | ) | Judge Varlan/Shirley |
| **RICKY BELL**, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

---

### SUPPLEMENTAL AUTHORITY IN SUPPORT OF
### MOTION TO ALTER OR AMEND

---

Petitioner, Gary Wayne Sutton, through undersigned counsel, submits the

following supplemental authority in support of his Motion to Alter or Amend: *Martinez v.*

*Ryan*, 132 S.Ct. 1309 (2012). (Attachment A).

### I.      Introduction

The Sixth Amendment  right to trial before an impartial jury is "fundamental to the

American scheme of justice." *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968).  This

right includes the right to have the jury find the defendant guilty, beyond a reasonable

doubt.  *Sullivan v. Louisiana*, 508 U.S. 275, 277-78 (1993).  Equally important is the

right to counsel: "the right of one charged with crime to counsel may not be deemed

fundamental and essential to fair trials in some countries, but it is in ours."  *Gideon v.*

*Wainwright*, 372 U.S. 335 (1963).  The right to counsel would be meaningless were it

not for the right to the effective assistance of counsel.  *Strickland v Washington*, 466

U.S. 668 (1984).

The claims now before the court are claims that strike at the fundamental

fairness of Mr. Sutton's state court conviction. Despite extraordinary amounts of inflammatory pretrial publicity, trial counsel failed to protect Mr. Sutton's right to an impartial jury. Further, despite the tenuous and contested nature of the State's proof, trial counsel failed to object to jury instructions which lowered the burden of proof. Due to the fundamental nature of these claims, they were included in Mr. Sutton's initial habeas petition, even though they arguably were unexhausted. But this court was barred from reviewing them pursuant to *Coleman v. Thompson*, 501 U.S. 722 (1991). Under *Martinez v. Ryan*, this court now has the opportunity to review Mr. Sutton's claims that due to ineffective assistance of counsel, he was convicted by a biased jury based upon proof that does not rise to the level of beyond a reasonable doubt.

II.     **Procedural Background**

1.   On September 29, 2011, this court entered an order dismissing Mr. Sutton's petition for habeas corpus relief. R. 29.

2.   The Court found the following claims were procedurally defaulted: ineffective assistance of trial counsel for failure to object to the unorthodox and unlawful manner in which the jury was selected (habeas claim II, R. 3, p. 22-34), ineffective assistance of counsel for failure to appeal the denial of individual *voir dire* (habeas claim II, R. 3, p. 23-24)[1]; and ineffective assistance of counsel for failure to object to the reasonable doubt jury instruction which lowered the burden of proof (habeas claim II, R. 3, p. 28-

---

[1]In holding these jury selection claims procedurally barred, the court stated: "Clearly, the claims Sutton raises ... regarding the selection of the venires and individual voir dire were never presented in state court and are therefore procedurally defaulted. ... Exhaustion requires a state prisoner to give the state courts a "fair opportunity to act" on each of the claims before he presents those claims in a federal habeas petition; something Sutton has failed to do." R. 28, p. 78-79.

29).[2]

3.  On October 27, 2011, Mr. Sutton notified this court that the Supreme Court was then reviewing whether ineffective assistance of post-conviction counsel may qualify as cause sufficient to excuse procedural bar.  R. 30.

4.  On March 20, 2012, the Supreme Court held that ineffective assistance of post-conviction counsel may very well establish cause sufficient to excuse procedural bar.  *Martinez v. Ryan*, 132 S.Ct. 1309 (2012).

5.  On April 12, 2012, this Court entered an order directing the parties to brief the applicability of *Martinez v. Ryan* to Mr. Sutton's case.  R. 36.

## III.     *Martinez v. Ryan*

An Arizona jury convicted Martinez of sexual conduct with a minor.  The prosecution relied upon a videotaped forensic interview with the minor and evidence that Martinez's DNA was found on the minor's nightgown.  In his defense, Martinez offered evidence that the victim had recanted.  In rebuttal, the prosecution offered expert testimony explaining why the minor might have recanted.  The jury convicted and Martinez received a life sentence.  *Martinez*, 132 S.Ct. at 1313.

Martinez's post-conviction counsel filed a certification alleging there were no colorable claims to be raised in post-conviction.  Some time later, new post-conviction counsel filed a second post-conviction action alleging trial counsel was ineffective for failing to object to expert testimony, failing to call an expert witness in rebuttal, and

---

[2]In holding this claim procedurally barred, the court stated "Sutton's alleged constitutional violation was never presented to a state court and he has committed a procedural default for which no cause and prejudice, ... has been shown.  Accordingly, this claim will be DISMISSED as procedurally barred."  R. 28, p. 87.

failing to offer an exculpatory explanation for DNA evidence.  The state court dismissed Mr. Martinez's case, relying upon Arizona's rule barring relief on a claim that could have been presented in a previous collateral proceeding.  *Id.* at 1314.

Martinez next sought relief in federal district court.  He acknowledged his claims were defaulted but argued he showed cause for the default because his first counsel was ineffective in the initial post-conviction proceeding.  The district court, as well as the appeals court, held that under *Coleman v. Thompson*, 501 U.S. 722, 753-755 (1991), post-conviction attorney error can not qualify as cause to excuse a default.  *Martinez*, 132 S.Ct. at 1315.  The Supreme Court granted certiorari.  *Id.*

In *Martinez*, the Supreme Court recognized *Coleman's* holding  that the petitioner must bear the risk of "negligent" conduct by his attorney, " *Id.* at 1316.  The Court also recognized it held as much in 2011 in *Maples v. Thomas*, 565 U.S. ___, 132 S.Ct. 912, 922 (2012) (cited by *Martinez*, 132 S.Ct. at 1315).  The Court nonetheless "modif[ied]" *Coleman* by carving out an "exception":   "inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."  *Id.*

The Court explained that in states where the petitioner must wait until post-conviction to raise ineffective assistance claims, if the attorney charged with raising the ineffective assistance claim is ineffective, the claim will never be raised and will never be reviewed by *any* court, thus creating an intolerable risk that petitioners with valid claims of ineffective assistance of counsel may never have the fundamental fairness of their trials reviewed.  *Id.* at 1316.

{4}

The Court emphasized that effective assistance of counsel is a "bedrock principle" of our adversarial system of justice and is critical in protecting the rights of the accused. *Martinez, Id.* at 1317, quoting *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963). The Court also noted that ineffective assistance claims often require investigation, that a prisoner is often unable to develop the evidentiary basis for his claims, and that prisoners generally are unlearned in procedural rules as well as constitutional law. *Martinez,* 132 S.Ct. at 1317.

The Court concluded its opinion by stating its new rule as follows: "Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim[3] of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Id.* at 1320.

## IV. Application of *Martinez v. Ryan* to Mr. Sutton's case

*Martinez v. Ryan* modifies a long line of federal case law holding ineffective assistance of post-conviction counsel does not establish cause for failure to exhaust. *Coleman v. Thompson*, *supra; Mapes v. Thompson, supra; Landrum v. Mitchell*, 625 F.3d 905, 919) (6th Cir. 2010) (declining to find ineffective assistance of post-conviction counsel as cause); *Byrd v. Collins*, 209 F.3d 486, 516 (6th Cir. 2000) (same); *McCaslin v. Hatfield*, 52 F.3d 325 (6th Cir. 1995) (same).

---

[3]The Court explained a "substantial" claim is a claim that has "some merit," citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003) (describing the standards for certificates of appealability to issue).

A change in the controlling law may be raised in a Rule 59(e) motion. *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) ; *GenCorp, Inc.v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). This court recently recognized as much in this very case: "scenarios in which a motion to alter or amend may be granted [include] an intervening change in the controlling law." R. 35, p. 4 of 7. Accordingly, a RULE 59(e) motion is the appropriate vehicle for this court to consider application of *Martinez v. Ryan* to Mr. Sutton's case.

Mr. Sutton's case fits squarely within the ambit of *Martinez's* holding. Mr. Sutton's trial counsel represented him on his direct appeal. Add. 1, Vol. 1, p. 35 (order confirming counsel Webb as trial counsel); Add. 1, Vol. 3, p. 523 (order directing counsel Webb to represent Mr. Sutton on appeal). Claims of ineffective assistance of counsel cannot be raised on direct appeal. *See, e.g., State v. Allen*, 2011 WL 1344462 at *8-9 (Tenn. Crim. App. 2011) (declining to review ineffective assistance of counsel on direct appeal because appellant had not had evidentiary hearing on the issue and directing appellant to raise the claim on post-conviction). Claims of ineffective assistance of counsel are raised in post-conviction. TENN. CODE ANN. § 40-30-103.

In *Frazier v. State*, the Tennessee Supreme Court explained that this is because "trial counsel ... can hardly be expected to challenge his own ineffectiveness ...." ), because an attorney arguing his own ineffectiveness suffers a conflict of interest. 303 S.W.3d 674 (Tenn. 2010) (citations omitted). Accordingly, the petition for post-conviction relief was Mr. Sutton's first and only opportunity to launch a meaningful challenge to the effectiveness of his trial counsel. Important allegations of

{6}

ineffectiveness not raised in post-conviction have thus far not been reviewed.  As will be explained more fully below, post-conviction counsel was ineffective for failing to raise the claims at issue here.  Further, the claims at issue are substantial.  *Martinez* opens the gate for full review of the fundamental fairness of Mr. Sutton's trial.

**V.      Claims this court may now review pursuant to *Martinez v. Ryan***

      **A.      Counsel were ineffective for failing to protect Mr. Sutton's right to an impartial jury by failing to object to the inherently prejudicial manner in which the venires were selected and by failing to appeal the denial of individual *voir dire*.**

The small town of Sevierville was inundated with media coverage of the two deaths.[4]   Headlines such as "Mother Convinced Body is Daughter", Add. 1, Vol. 2, Ttech., p. 299; "Sister Focus of Massive Manhunt" *Id.* p. 303; and "Victim's mother: 'I want them caught'" *Id.* p. 301 were common.  Public outcry was so great that Sutton had to be relocated to a detention facility in Greeneville for "security reasons."  *Id.* p. 317.  There were no less than 27 newspaper articles about the deaths.  *Id.* pp. 296-332.

So many prospective jurors had prejudged the case and had to be excused, that the regular venire was exhausted.  To remedy this problem, the court directed the clerk to telephone citizens in their homes, after regular business hours, to report to the courthouse for jury duty the very next day.  Jurors were phoned in on two separate days. Add 2, Vol 3, p. 256; *Id.*, Vol. 4, p. 361; *Id.*, Vol. 6 p. 503, 513-14.  On the third day of jury selection, the court directed the attorneys to *voir dire* the phone-in emergency jurors.  Add. 2, Vol 5, p. 474.  Four jurors who determined Mr. Sutton's guilt

---

[4]

were phone in emergency *venire* jurors: Larry Gibson, Add. 2, Vol 6, p. 584; Jeffrey G. Johnson, Add. 2, Vol 6, p. 560; Howard Houk, Add. 2, Vol. 6, p. 474; and Terry Justus, Add. 2, Vol. 6, p. 557.

Prospective juror Mann explained "They called me last night"; to which the trial court responded, "Aren't you glad?" Add. 2, Vol 5, p. 481. The trial court also commented to the second emergency batch of phone-in jurors: "I notice that we have some new individuals with us who were called over the nighttime, and I know you were extremely glad to get the telephone call from the clerk's office." Further emphasizing the emergency nature of the *venire* selection process, the court explained, "We have excused a large number of jurors, and as a consequence we've had to call additional jurors in, and that is the reason you're here." Add. 2, Vol 6, p. 518. The court also emphasized to the jury how unusual the process was ("In the normal course of events, if you were called for the regular term of jury duty...."). Add. 2, Vol 6, p. 519.

Counsel failed to object to the erratic, unlawful manner in which the emergency *venires* were comprised. The trial court acted in complete disregard of Tennessee's statutory procedure for summoning a jury *venire*. TENN. CODE ANN. § 22-2-308(a)(2). The Tennessee Supreme Court enforces the statutory procedure for selecting emergency *venires* scrupulously, particularly in high profile cases. *State v. Bondurant*, 4 S.W.3d 662, 668 (Tenn. 1999). In *Bondurant,* the trial court instructed the clerk to summon additional jurors to appear the next day. According to statute, the clerk is to draw the names in open court, in the presence of the judge, and then issue summons. If time will not allow the clerk to do the summons the ordinary way, the judge is to direct

{8}

Case 3:07-cv-00030-TAV-CCS    Document 37    Filed 05/01/12    Page 8 of 18    PageID #: 209

the sheriff to summon the individuals in person.  However, in *Bondurant*, out of the presence of the court, the clerk drew names and summoned the jurors by telephone. *Id.*

The Tennessee Supreme Court found this deviation illegal and reversible error because the process "inherently caused jurors to speculate that the defendant was more dangerous or that the alleged crime was more serious than other criminal cases." *Id.* at 670.  The Tennessee Supreme Court explained that in a highly publicized capital trial, adherence to the proper procedures for selecting the jury is critical; otherwise, the risk is great that a "jury will base its decision on extraneous information."  *Id.* at 664. The court refused to find the error harmless and remanded for a new trial.  *Id*.  See *also State v. Lynn*, 924 S.W.2d 892 (Tenn. 1996) (same).

In Mr. Sutton's case, the jurors did not need to speculate that the case was more serious, as the trial court told the jury the *venires* were not "normal and customary." Add 2, Vol 1, p. 7.  They were called in the night before, which emphasized to the jury how important it was to quickly resolve the case.  The process used in Sutton's case is identical to that condemned in *Bondurant*.

There are several Tennessee state cases raising statutory irregularities in the *venire* selection procedure.  *See, e.g., State v. Boyd*, 867 S.W.2d 330 (Tenn. Crim. App. 1992); *State v. Wiseman*, 643 S.W.2d 354 (Tenn. Crim. App. 1982); *State v. Elrod*, 721 S.W.2d 820, 822 (Tenn. Crim. App. 1986) (specifically admonishing "a trial judge does not have carte blanche to deviate arbitrarily from the prescribed statutory procedure.") The *Lynn* case, where a new trial was granted on this issue, was on

{9}

appeal during the same time frame as Mr. Sutton's case.  Telephoning jurors to come in the next day was a significant and obvious defect in the proceedings and trial counsel stood mute as Mr. Sutton's right to an impartial jury was violated.  There is no legitimate reason for counsel's failure to protect Mr. Sutton's right to have the *venire* comprised consistent with Tennessee state law.

Counsel failed to follow professional norms when counsel failed to object to the deviation from Tennessee's statutory scheme for jury selection.  This failure prejudiced Mr. Sutton because it allowed biased jurors to sit in judgment of Mr. Sutton.  *Strickland v. Washington*, 466 U.S. 668 (1984).  *See Walker v. Morrow*, 2012 WL 313689 *8 (6th Cir. 2012) (finding ineffective assistance of counsel where counsel failed to object under Tennessee's Rules of Evidence, the failure to object was due to inattention, and the violation of state law was patent and prejudicial).

Counsel's failure to object also denied Mr. Sutton his Sixth Amendment right to an impartial jury.  The most important right counsel can protect is the right to be tried by an impartial jury.  Counsel failed to protect this right to Mr. Sutton's prejudice.  The denial of the right to be tried by an impartial jury is an error of constitutional magnitude. *Neder v. United States*, 527 U.S. 1, 8 (1999); *Ross v. Oklahoma*, 487 U.S. 81, 85 (1988).  Trial counsel was ineffective for failing to object to the prejudicial selection procedure used to compose the venire.  The process used denied Mr. Sutton his right to trial by an impartial jury.  *See also Quintero v. Bell,* 256 F.3d 409 (6th Cir. 2001) (ineffective assistance of counsel for failing to object to the composition of the jury pool).  Relief is warranted.

Counsel were also ineffective for failing to appeal the denial of the motion for

{10}

individual *voir dire*.  The trial court questioned prospective jurors in groups of twelve.  Of the twelve jurors who sat, eight had heard about and read about the case in the media.[5]  During *voir dire*, prospective juror Seaton stated, "I've formed an opinion.  I even know stuff that the boys done before they even committed the crime.  Not being innocent, I don't believe."  Add. 2, Vol. 1, TT,  p. 76-77.  Similarly, prospective juror Charles E. McCarter, stated "I have a friend in Blount County; I've heard a lot there.  And I've been counseling with a lady that's – maybe it's not proven that this involved her son's death, and maybe – but counseling with her and praying with her through this, that I'm afraid that ... I wouldn't be fair."  *Id.*, TT, p. 72-73.  Although prospective jurors Seaton and McCarter did not sit on the petit jury, they shared this information with two people who did serve, David McClellan and Bruce Gaps.  Add. 2, Vol. 1, TT, p. 69; Add. 1, Vol. 2, Ttech., p. 491.

When Seaton blurted out the prejudicial information, counsel renewed the motion for individual *voir dire*.  Add. 2, Vol. 1, TT, p. 77.  Even the prosecutor observed "I do think that maybe they need to be instructed not to say what they know about it."  Add. 2, Vol. 1, TT p. 78.  The trial court denied the motion. *Id.*, p. 79.

Counsel were ineffective for failing to object to and appeal when jurors were tainted by extrinsic evidence, which denied Sutton his right to a trial by an impartial jury, as mandated by the Sixth and Fourteenth Amendments. Juror Seaton communicated objective extrinsic facts about Sutton's prior criminal behavior and became an unsworn

---

[5]Juror Gaps, Add. 2, Vol. 1, TT, p. 71; Juror Cole, *Id.*, Vol. 2, TT, p. 191; Juror Maples, *Id.*, Vol. 3, TT, p. 239; Juror Ballenger, *Id., Vol. 4,* TT, p. 367; Juror Ogle, *Id.*, Vol. 5, TT, p. 410; Juror Yarnell, *Id.*, Vol. 5, TT, p. 431; Juror Justus, *Id.*, Vol. 6, TT, p. 559; and Juror Johnson, Id., Vol. 6, TT, p. 561.

{11}

witness again Sutton.  Prospective juror McCarter communicated evidence about the victim's mother and homicide charges in another county.  *United States v. Howard*, 506 F.2d 865, 866 (5th Cir. 1975).  Juror knowledge of prior criminal behavior is inherently prejudicial.  *Quintero v. Bell*, *supra*, at 412-413; *United States v. Maliszewski*, 161 F.3d 992, 1004 (6th Cir. 1998) (observing a defendant is prejudiced where the jury learns co-defendants have pled guilty).  Before opening statements had even begun, jurors McClellan and Gap had information that Sutton had previously committed unrelated criminal behavior.  Counsel failed to appeal this issue.  Relief is warranted.

In *Mapes v. Coyle*, the Sixth Circuit set forth several factors to consider in reviewing ineffective assistance of appellate counsel claims.  171 F.3d 408, 427-48 (6th Cir. 1999).  One factor is whether the omitted issue is "significant and obvious."  *Id.* at 427. Juror knowledge of unrelated prior criminal activity is inherently prejudicial.

Another factor is whether the omitted issue is stronger than those presented.  *Id.* Trial counsel raised three guilt-phase issues on appeal:  sufficiency of the evidence, consolidation of the case with Mr. Sutton's uncle, James Dellinger, and admission of prior bad acts (including the denial of a hearing before doing so).  *State v. Sutton*, 1995 WL 406953 (Tenn. Crim. App. 1995) (perm. app. denied, concurring in results only, January 22, 1996).  A challenge to sufficiency of the evidence was warranted.  But the other issues were weak and had little chance of prevailing.  In a case where the defendant was convicted of murder and ordered to serve a life sentence, appellate counsel should have raised more than three issues.

Another *Mapes* factor is whether the trial court rulings are subject to deference

{12}

on appeal. *Mapes v. Coyle*, 171 F.3d at 427. Each of the issues trial counsel raised carries a significant burden of persuasion on appeal. In Tennessee, a trial court's ruling on admission of prior bad acts will not be disturbed on appeal absent an abuse of discretion. *State v. DuBose,* 953 S.W.2d 649, 652 (Tenn. 1997) (trial court's admission of evidence is reviewed for abuse of discretion). "The decision as to whether or not to grant a severance is [also] left to the sound discretion of the trial judge ...." *State v. Maddox*, 957 S.W.2d 547, 556 (Tenn. Crim. App. 1997). Accordingly, focusing on issues, discretion of which is strongly vested in the trial court, to the exclusion of challenging the seating of biased jurors, was ineffective assistance of appellate counsel.

The jury trial lasted nine days. The trial court ruled on more than 150 motions. Add.1, Vol.1, p.10-170; Vol. 2, p. 171-389. Counsel failed to appeal numerous potential issues and notably failed to raise any issues about jury selection. Trial counsel was ineffective for failing to preserve and appeal this meritorious issue. *Franklin v. Anderson*, 434 F.3d 412, 429 (6th Cir. 2006). Relief is warranted.

**B.     Trial counsel were ineffective for failing to object to jury instructions that diluted the beyond-a-reasonable-doubt standard.**

In state criminal trials, the due process clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358 (1970). The reasonable doubt standard "plays a vital role in the American scheme of criminal procedure." *Id*.

In this case, the jury was instructed that reasonable doubt should be considered

{13}

under the following definition:

> A reasonable doubt is an honest doubt which remains after investigation of all of the evidence, which will not permit the mind to rest easily as to the certainty of guilt.  A reasonable doubt does not include a captious, possible, or an imaginary doubt.  Absolute certainty of guilt is not required to convict, but moral certainty is required, and this certainty extends to every element necessary to constitute the offense.  TT Vol. 22, p. 2108.

These instructions on the constitutional requirement of a finding "beyond a reasonable doubt" referred to the required degree of proof as being to a "moral certainty," and the instructions excluded from the definition of reasonable doubt a "possible" doubt and a "doubt that may arise from possibility."  There is a reasonable likelihood that these instructions diluted the constitutional standard and that the jury convicted Sutton without finding that the State met the constitutional requirement.

Excluding from the realm of reasonable doubt, a "possible" doubt arbitrarily raised the threshold of doubt above that required for acquittal.  Possible doubt is not so unlikely that it should be excluded from the definition of reasonable doubt.  This context given by the court violated Gary Sutton's due process rights by making the notion of reasonable doubt far too narrow.

In addition, the Supreme Court has expressed concern with the use of the phrase "moral certainty" in connection with the definition of reasonable doubt.  *Victor v. Nebraska*, 511 U.S. 1 (1994).  The Court recognized that while "moral certainty" was traditionally "an equivalent phrase with 'beyond a reasonable doubt,'" it is "not a mainstay of the modern lexicon."  *Id*. at 12.  The instruction on "moral certainty" in *Cage v. Louisiana*, 498 U.S. 39 (1990), contributed to a holding that the definition of reasonable doubt was unconstitutional because "moral certainty" would be understood

{14}

Case 3:07-cv-00030-TAV-CCS   Document 37   Filed 05/01/12   Page 14 of 18
PageID #: 215

very differently from "evidentiary certainty." *Id*. at 41.  The instruction containing this phrase was upheld in *Victor* because "moral certainty" was defined in terms of the evidence and was therefore given meaning in the context of the instructions as a whole. *Victor*, 511 U.S. at 16.  No such context was given in Gary Sutton's case.  In the context of the instructions given in this trial, there is a reasonable probability that the jury understood the term "moral certainty" to be a lesser burden of proof than that required by the Constitution.

Instructing the jury that a reasonable doubt is not a "possible" doubt, in combination with the "moral certainty" phraseology, created a reasonable likelihood that the jury viewed the degree of proof necessary for a verdict to be below that which is required by the Due Process Clause.  It bears emphasizing that this was a strongly contested case.  There was no confession nor direct evidence linking Mr. Sutton to the crime.  "It would not have taken much to sway at least some jurors toward acquittal." *Dugas v. Coplan*, 428 F.3d 313, 336-67 (1st Cir. 2005).  Under *Strickland*, a verdict weakly supported by the record is more likely to be affected by counsel's errors.  466 U.S. at 699.  Counsel's failure to protect Mr. Sutton's right to have the jury find his guilt beyond a reasonable doubt is prejudicial in this case.  *Id.*  Relief is warranted.

## VI.    Post-conviction counsel were also ineffective for failing to raise these issues.

Thus far, Mr. Sutton has argued his trial counsel were ineffective for failing to discover and appeal the issues herein.  But post-conviction counsel was also ineffective for failing to argue trial counsel was ineffective for failing to raise these issues.

{15}

Mr. Sutton's petition was filed on January 21, 1997.  Amendments were filed on July 10, 1998, and June 22, 2003.  Add. 12, Vol. 1, PCTech, pp. 1, 27-30, 37-38.  At the time his initial petition was filed, Tennessee state law required state post-conviction counsel to certify the following:

> I, _____, certify that I have thoroughly investigated the possible constitutional violations alleged by petitioner, including those in paragraph 16 of the form petition set forth in Appendix A and any other ground that petitioner may have for relief.  I have discussed other possible constitutional grounds with petitioner.  I have raised all non-frivolous constitutional grounds warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law which petitioner has.  I am aware that any ground not raised shall be forever barred by the application of Tenn. Code Ann. §§ 40-30-106(g), and have explained this to petitioner.

TENN. S. CT. R. 28, Section 6 C,  Appx C. (Adopted October 28, 1996).

The 1989 ABA Guidelines governing duties of post-conviction counsel require post-conviction counsel to be familiar with all state and federal post-conviction remedies available to the client.  The Guidelines also direct post-conviction counsel to present all arguably meritorious issues.  1989 ABA Guideline 11.9.3 A and B.  In *Martinez*, the Supreme Court held "effective counsel preserves claims to be considered on appeal ... and in federal habeas proceedings, *Edwards v. Carpenter*, 529 U.S. 446 (2000)." *Martinez*, 132 S.Ct. at 1317-18.

As this court has already found these issues may not be reviewed because they were defaulted in state court, it is apparent post-conviction counsel did not take the

proper steps to preserve these issues for habeas review. Post-conviction counsel was ineffective for failing to preserve these issues. This ineffectiveness qualifies as cause sufficient to avoid the procedural bar. *Martinez, supra*.

## VII. Conclusion

Mr. Sutton asks this court to review the merits of the aforementioned claims. He further asks the court to find counsel was ineffective for failing to protect Mr. Sutton's right to an impartial jury and for failing to protect his right to demand proof beyond a reasonable doubt. He asks the court to grant the writ or any other relief the court deems appropriate.

Respectfully submitted,

FEDERAL DEFENDER SERVICES
OF EASTERN TENNESSEE, INC.

s/Susanne Bales
Susanne Bales
Asst. Federal Community Defender
800 S. Gay Street, Suite 2400
Knoxville, TN 37929-9729
(865)637-7979

{17}

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 1, 2012, the foregoing Supplemental Authority in Support of Motion to Alter or Amend was filed electronically. Notice electronically mailed by the Court's electronic filing system to all parties indicated on the electronic filing receipt. Notice delivered by other means to all other parties via regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

<u>s/Susanne Bales</u>

{18}