UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

GARY WAYNE SUTTON,    )
              )
  Petitioner,     )
              )
v.            )   Case No. 3:07-cv-30
              )   Judge Varlan/Shirley
WAYNE CARPENTER, Warden,   )
              )
  Respondent.    )

## SUPPLEMENTAL BRIEF

Petitioner, Gary Wayne Sutton, through undersigned counsel, submits the following supplemental brief.

### Introduction

This is a circumstantial evidence case where trial counsel failed to present available lay and scientific defense proof. At the close of proof, trial counsel failed to object when the trial court instructed the jury it could convict based upon "moral certainty" and that it could not consider "possible" doubt. Even where trial counsel failed to present available defense evidence, and where the jury instructions lowered the prosecution's burden of proof, the jury struggled to reach a guilty verdict. Only after consulting a Bible and prayer could the jury find guilt to a moral certainty and convict Mr. Sutton. Confidence in this verdict is undermined. Mr. Sutton asks the Court to find this proceeding violated his constitutional right to the effective assistance of counsel and grant the writ of habeas corpus.

## Procedural Background

Mr. Sutton timely filed a petition for habeas relief alleging numerous claims of ineffective assistance of counsel ("IAC").  (R. 3).  This Court dismissed the petition finding several of the claims procedurally defaulted.  *See* R.46, PageID# 284.

Subsequently, in *Sutton v. Carpenter,* the Sixth Circuit remanded this case to this Court for consideration in the first instance of his newly raised ineffective assistance claims. 745 F.3d 787, 795-96 (6th Cir. 2014); R. 46, PageID# 286.  This Court has directed supplemental briefing.  (R.46).  Consistent with this Court's order, Mr. Sutton submits briefing on the newly raised ineffective assistance claims, applicable legal standards, and whether AEDPA deference applies.  (R.46, PageID# 286).

## Factual Background

Mr. Sutton was charged with aiding and abetting his uncle, James Dellinger, in the first degree murder of Connie Branam.  (Add. 1, Vol. 1, p. 1; Add. 3, Vol. 15, Pretrial Motions, pp. 33, 57-58)[1].  The prosecution theory of the case was that Ms. Branam was killed when she began to suspect Dellinger and Sutton were responsible for the death of her missing brother, Tommy Griffin.  The State was permitted to offer proof establishing both deaths.  There was no confession nor was there any direct evidence linking Mr. Sutton to Ms. Branam's death.

---

[1]Citation to the addenda in this case is to R.19, Notice of Manual Filing of Documents, unless noted otherwise.

2

The small, mountain town of Sevierville, Tennessee, where Mr. Sutton was tried and convicted, was inundated with unprecedented amounts of pretrial publicity. Defense counsel filed motions for a change of venue and for individual *voir dire.* (Add. 1, Vol. 1, p. 136; Add. 1, Vol. 2, p. 294-95). Both motions were denied.

Selecting an impartial jury was difficult. So many prospective jurors had prejudged the case, that the regular *venire* in this small community was exhausted. To remedy the problem, the trial court took the emergency measure of directing the clerk to telephone citizens in their homes, after regular business hours, to report to the courthouse for jury duty the very next day. Emergency jurors were phoned in on two separate days. (Add. 2, Vol. 3, p. 256; Add. 2, Vol. 4, pp. 360-61; Add. 2, Vol. 6, pp. 503, 513-14). The trial court emphasized to the jury how extraordinary the emergency process was. (Add. 2, Vol. 6, pp. 518-19).

Four jurors who determined Mr. Sutton's guilt were phone-in emergency jurors: Larry Gibson, Add. 2, Vol. 6, p. 584; Jeffrey Johnson, Add. 2, Vol. 6, pp. 560-61; Howard Houk, Add. 2, Vol. 5, p. 474, 499; and Terry Justus, Add. 2, Vol. 6, p. 557.

Trial counsel did not object to the emergency procedure.

At trial, the prosecution attempted to establish the following time line and theory:

- Mr. Griffin was murdered on Friday night, February 21, 1992, at around midnight in Blount County. (Add. 2, Vol. 9, p. 837);

3

- The next day, Connie Branam began searching for her missing brother, Mr. Griffin. (*Id.*, pp. 838-39);

- Ms. Branam was murdered on February 22, 1992, at around 8:30 pm in Sevier County. (*Id.*, p. 839);

- Dellinger and Mr. Sutton had been seen with each of the victims. (*Id.*, p. 839; Add. 3, Vol. 2, pp. 1164-66).

Mr. Sutton vigorously maintained his innocence. He offered proof attempting to establish the following:

- Bill Cogdill was responsible for Ms. Branam's death, having made several incriminating statements. (Add. 3, Vol. 8, pp. 1702-04, 1740-46);

- Mr. Sutton was not with Dellinger at all times during the weekend in question and ballistics evidence pointed more strongly at Dellinger. (Add. 3, Vol. 8, pp. 1701, 1786-88; Add. 3, Vol. 9, pp. 1870-76);

- Mr. Sutton loved Mr. Griffin and had no motive to kill him. (Add. 3, Vol. 7, p. 1692; Add. 2, Vol. 9, p. 856);

Although the time of Mr. Griffin's death was critical to the prosecution case, defense counsel did not investigate the circumstances surrounding Mr. Griffin's death. Dr. Ellington, who performed the autopsy, had reported Mr. Griffin died on February 24, 1992, which directly contradicted the prosecution theory about when the death occurred. (Add. 14, PC Exhibit 12, Griffin Autopsy). Trial counsel failed to offer this evidence at trial.

4

At the close of proof, the trial court instructed the jury it could convict upon a finding of "moral certainty" as to Mr. Sutton's guilt, and that the jury need not consider "possible" doubt. (Add. 3, Vol. 12, p. 2108). Trial counsel failed to object to this instruction, which unconstitutionally diluted the reasonable doubt standard.

During deliberations the jury had difficulty reaching a verdict. Juror Larry Gibson[2] openly wept, consulted a Bible, and prayed. (Add. 13, Vol. 2, pp. 102-03). Trial counsel failed to investigate and present evidence of the jury's reliance on the Bible.

The jury found Mr. Sutton guilty of first degree murder. (Add. 1, Vol. 3, p. 486). His conviction was affirmed on direct appeal. *State v. Sutton*, No. 03C01-9403-CR-0090, 1995 WL 406953, at *1 (Tenn. Crim. App. July, 11, 1995), *perm. app. denied* Jan. 22, 1996. Mr. Sutton thereafter timely filed a petition for post-conviction relief which was denied. *Sutton v. State*, No. E2004-01068-CCA-R3-PC, 2006 WL 1679595, at *1 (Tenn. Crim. App. Jun. 19, 2006), *perm. app. denied* Oct. 30, 2006.

### Issues Presented for Review

**1. Trial counsel failed to object and appeal the manner in which the jury *venire* was comprised and the denial of individual *voir dire*.**

Mr. Sutton's jury was comprised in part of citizens who were summoned to jury duty on an emergency basis. They were called at their homes the evening before trial and ordered to appear the very next day. (Add. 2, Vol. 3, p. 256; Add. 2,

---

[2]Juror Gibson was a phone-in emergency juror. (Add. 2, Vol. 6, p. 584).

Vol. 4, pp. 360-61; Add. 2, Vol. 6, pp. 503, 513-14). The trial court emphasized to the jury the extraordinary nature of its members being summoned with little more than twelve hours notice. (Add. 2, Vol. 6, p. 518-19). The trial court also told the jury the *venires* were not "normal and customary." (Add. 2, Vol. 1, p. 7). Further, the phone-in emergency procedure caused the jury to speculate Mr. Sutton was unusually dangerous and his crime so serious that a trial had to occur immediately. This procedure was in violation of Tennessee's jury *venire* composition laws as well as the Sixth Amendment right to an impartial jury.

Effective counsel would have objected and appealed the prejudicial jury selection method, which ran afoul of Tennessee's law on selecting jurors, as well as Mr. Sutton's Sixth Amendment right to be tried by an impartial jury.

Tennessee's *venire* selection procedure is codified at Tenn. Code Ann. § 22-2-308(a)(2) (1993). The Tennessee Supreme Court enforces the statutory procedure for selecting *venires* scrupulously, particularly in high profile cases, to protect the "fundamental principles of impartiality, disinterestedness and fairness . . . ." *State v. Lynn*, 924 S.W.2d 892, 898 (Tenn. 1996) (granting a new trial where *venire* selection process not followed). There are several Tennessee state cases addressing state law irregularities in the jury selection procedure. *See, e.g., State v. Boyd*, 867 S.W.2d 330 (Tenn. Crim. App. 1992); *State v. Wiseman*, 643 S.W.2d 354 (Tenn. Crim. App. 1982); *State v. Elrod*, 721 S.W.2d 820, 822 (Tenn. Crim. App. 1986)

6

(specifically admonishing "a trial judge does not have carte blanche to deviate arbitrarily from the prescribed statutory procedure.").[3]

Counsel was ineffective for failing to object and appeal the prejudicial jury selection method. A *Strickland* claim can be based on counsel's failure to protect the accused's state law rights. *See, e.g., Goff v. Bagley*, 601 F.3d 445, 464 (6th Cir. 2010) (finding counsel ineffective for failing to protect state law rights); *Joshua v. Dewitt*, 341 F.3d 430, 441-42 (6th Cir. 2003) (same); *Shaw v. Wilson*, 721 F.3d 908, 914 (7th Cir. 2013) ("[a] competent lawyer . . . should have recognized that there was a state statute under which relief for his client was possible. . . ."). Counsel's failure to object was deficient performance, *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Mr. Sutton was prejudiced by his attorneys failure to raise this meritorious claim. *Id.* Four of the jurors who were summoned in this prejudical manner sat on Mr. Sutton's jury. *See infra* at pp. 3, 5. One of those four jurors, Gibson, was distraught over the judicial process and felt pressured. *See infra* at pp. 5, 17, 18.

---

[3]*See also State v. Bondurant*, 4 S.W.3d 662, 666-67 (Tenn. 1999). In *Bondurant*, the trial court instructed the clerk to summon additional jurors to appear the next day. According to statute, the clerk is to draw the names in open court, in the presence of the judge, and then issue summons. If time will not allow the clerk to do the summons the ordinary way, the judge is to direct the sheriff to summon the individuals in person. However, in *Bondurant*, out of the presence of the court, the clerk drew names and summoned the jurors by telephone. *Id.* The Tennessee Supreme Court found this deviation illegal and reversible error because the process "could have inherently caused jurors to speculate that the defendant was more dangerous or that the alleged crime was more serious than other criminal cases." *Id.* at 670. The process used in Sutton's case is identical to that condemned in *Bondurant*.

7

Counsel's failure to object to this process also denied Mr. Sutton his Sixth Amendment right to an impartial jury. The most important right counsel can protect is the right to be tried by an impartial jury. Counsel failed to protect this right to Mr. Sutton's prejudice. The denial of the right to be tried by an impartial jury is an error of constitutional magnitude. *Neder v. United States*, 527 U.S. 1, 8 (1999); *Ross v. Oklahoma*, 487 U.S. 81, 85 (1988). "Judicial control of the [jury's] knowledge of the case . . . is fundamental to the prevention of bias and prejudice." *Farese v. United States*, 428 F.2d 178, 180 (5th Cir. 1970). Here the judge conveyed an urgency to proceed to trial immediately which created an impression that Mr. Sutton was unusually dangerous. Trial counsel was ineffective for failing to object to the prejudicial selection procedure used to compose the *venire*.

Counsel also were ineffective for failing to object and to appeal the denial of the motion for individual *voir dire*. The trial court questioned prospective jurors in groups of twelve. During *voir dire*, prospective juror Seaton stated, "I've formed an opinion. I even know stuff that the boys done before they even committed the crime. . . . Not being innocent, I don't believe." (Add. 2, Vol. 1, pp. 76-77). Although prospective juror Seaton did not sit on the petit jury, he shared this information with two people who did serve, David McClellan and Bruce Gaps. (Add. 2, Vol. 1, p. 69; Add. 1, Vol. 3, p. 491). After Seaton blurted out the prejudicial information, counsel ineffectively failed to strike jurors who heard Seaton's strongly held, inflammatory opinion.

8

In *Miller v. Webb*, 385 F.3d 666 (6th Cir. 2004), the Sixth Circuit found counsel ineffective for failing to strike a biased juror. The court found counsel's conduct was deficient and not justified by strategy because the "decision whether to seat a biased juror cannot be a discretionary or strategic decision" because it amounts to "a waiver of a defendant's basic Sixth Amendment right to trial by an impartial jury." *Miller*, 385 F.3d at 675-76. The Sixth Circuit presumed prejudice because the presence of a biased juror cannot be harmless. *See also Virgil v. Dretke*, 446 F.3d 598, 613-14 (5th Cir. 2006) (counsel ineffective for failing to challenge for cause two biased jurors; appeals court would not speculate on the effect of the biased juror on the remaining panel).

Similarly, here, counsel knew jurors McClellan and Gaps heard prejudicial information that Mr. Sutton was not innocent. Counsel failed to take action to remove these jurors from the panel. Counsel's failure to do so, or to object and appeal the denial of individual *voir dire*, fell below the standard of competence demanded of attorneys. Counsel's performance was deficient; prejudice is apparent because Mr. Sutton was denied the right to an impartial jury. *Id.* at 614.

**2.    Trial counsel failed to call Danny Sutton to bolster the defense theory of the case.**

A theory of the defense was that Bill Cogdill was responsible for Ms. Branam's death. The defense offered the testimony of Joyce Tipton that Cogdill threatened her saying that, "'I'd hate to see something happen to you like happened to Connie.'" (Add. 3, Vol. 8, p. 1744). But there was additional available evidence.

9

Counsel failed to call Danny Sutton to testify. Danny Sutton would have testified that Bill Cogdill offered him cash to "take him to Happy Hollow in Wears Valley so that [he] could burn his truck [and destroy] fingerprints on his truck that would convict him." (Attachment A, Danny Sutton interview).

Defense counsel, aware of Danny Sutton's information, had a subpoena issued and served requiring his presence at trial. (Attachment B, Danny Sutton subpoena). However, when Danny Sutton did not appear to testify, trial counsel took no further action to present this defense witness to the jury. The jury did not learn of Cogdill's incriminating statements.

To establish ineffective assistance, Mr. Sutton must show both deficient performance by counsel and prejudice. *Strickland v. Washington*, 466 U.S. 668 (1984). The duty to investigate, discover, and present defense witnesses "derives from counsel's basic function, which is 'to make the adversarial testing process work in the particular case.'" *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986), relied upon and quoted in *Foster v. Wolfenbarger*, 687 F.3d 702, 708 (6th Cir. 2012). Counsel's duty includes the "obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005); *Foster v. Wolfenbarger, supra.*

Defense counsel was deficient in failing to secure Danny Sutton's compliance with the subpoena and ensuring the jury heard his testimony. *Strickland, supra.*

10

This deficient performance prejudiced Mr. Sutton and undermines confidence in the outcome.

**3. Trial counsel failed to present testimony rebutting the prosecution theory of the case.**

This circumstantial evidence case hinged upon Griffin being murdered at 11:55 pm on Friday, February 21. Thomas Defoe, Lt., testified that Dellinger bailed Griffin out of jail at approximately 11:45 pm. (Add. 3, Vol. 2, pp. 1164-65, 1167). Jason McDonald testified that he was writing in his journal and heard gunfire at 11:55 pm (presumably the fatal gunshot to Griffin) near the area where Griffin's body was found; he was certain of this time because he wrote the time in his journal. (Add. 3, Vol. 2, pp. 1170-71). Jason's mother corroborated her son's testimony. (Add. 3, Vol. 2, pp. 1174-75). Griffin's body was discovered at 3:30 pm on Monday, February 24. According to the State's theory, Griffin had been dead 64 hours before his body was discovered.

The prosecution theory of the case notwithstanding, Dr. Ellington, who performed the autopsy, opined Mr. Griffin was killed on February 24, 1992. (Add. 14, PC Exhibit 12, Griffin Autopsy). Defense counsel recognized Dr. Ellington's report contradicted the State's theory. (Attachment C, Trial Attorney Notes on Dr. Ellington's Autopsy of Tommy Griffin). Counsel agreed nonetheless that Dr. Ellington's testimony was not necessary at trial. (Add. 3, Vol. 4, p. 1385). Counsel failed to further investigate and present scientific evidence contradicting the State's

11

theory. An adequate investigation would have revealed compelling scientific evidence rebutting the prosecution theory of the case.

**Stanton Kessler, M.D.,** is board certified by the National Board of Medical Examiners and is a Diplomate of the American Board of Pathology in combined Anatomic and Forensic Pathology.[4] A forensic pathologist looks at several factors in determining time of death, including the presence of lividity, the amount of decomposition, the presence or absence of food in the stomach, the appearance of the wound itself, and the presence of rigor mortis. (Attachment D, pp. 92-93, 118). A review of all of these factors in Mr. Griffin's death led him to conclude Mr. Griffin was killed within 24 hours of when the body was found on Monday. (*Id.*, p. 129).

**Neal Haskell, Ph.D., DABFE,** is a board certified forensic entomologist.[5] Dr. Haskell testified that all of the data gathered near or when the body was discovered revealed a lack of insect activity. (Attachment E., pp.36-41). He collected weather data for the area and determined it was easily warm enough to support fly activity. (*Id.*, pp. 42-49).

---

[4]Dr. Kessler testified in the federal evidentiary hearing challenging Mr. Sutton's Blount County convictions for the death of Mr. Griffin. *Sutton v. Carpenter*, No. 3:06-cv-388. His testimony is submitted in support of Mr. Sutton's challenge to his Sevier County case as Attachment D. Citations to Attachment D are to the actual page number of the transcript.

[5]Dr. Haskell testified in the federal evidentiary hearing challenging Mr. Sutton's Blount County convictions for the death of Mr. Griffin. *Sutton v. Carpenter*, No. 3:06-cv-388. His testimony is submitted in support of Mr. Sutton's challenge to his Sevier County case as Attachment E. Citations to Attachment E are to the actual page number of the transcript.

12

Based on the temperature and location of the body, one would expect to find extensive blue bottle blow fly egg masses on the body after 64 hours. This lack of egg masses indicates Mr. Griffin was most likely killed somewhere between 24 and 36 hours before his body was found on Monday. (Attachment E, p. 53). It is possible, but highly unlikely, that Mr. Griffin was killed up to 48 hours before the body was found. (Attachment E, pp. 53-54). Dr. Haskell testified Mr. Griffin could not have been killed Friday night. (Attachment E, p. 54).

Counsel were ineffective for failing to present this evidence. It would have affected the outcome because it further demonstrates the scientific impossibility of the State's case.

*Strickland* held that prejudice requires a showing of a "reasonable probability that the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694. An error which "alter[s] the entire evidentiary picture" is more likely to be prejudicial. *Id*. at 696. Expert proof undermining the state's time line presented at the Sevier County trial alters the evidentiary picture. *See Bell v. Miller*, 500 F.3d 149, 155, 157 (2d Cir. 2007) (counsel's failure to investigate and present medical expert testimony supporting the defense theory of the case was ineffective, particularly where there was no "downside" to the testimony); *Couch v. Booker*, 632 F.3d 241, 248-49 (6th Cir. 2011) (finding prejudice for failure to investigate and present expert testimony on causation defense, where the scientific

13

evidence "adds up to a [causation defense] that bears no relation to the [evidence] actually put before the jury." (internal citation and quotation omitted).

Jurors were presented with a motiveless crime and no direct evidence of Mr. Sutton's guilt.  Expert testimony disproving the prosecution's theory of the case could have very well altered the outcome.  At a minimum, it is sufficient to undermine confidence in the outcome.  *See Bell*, 500 F.3d at 155 (counsel's failure to investigate and present medical expert testimony supporting the defense theory of the case was ineffective, particularly where there was no "downside" to the testimony); *Couch v. Booker*, 632 F.3d 241, 248-49 (6th Cir. 2011) (finding prejudice for failure to investigate and present expert testimony on causation defense, where the scientific evidence "adds up to a [causation defense] that bears no relation to the [evidence] actually put before the jury." (internal citations omitted).

**4.     Trial counsel failed to challenge the instruction that the jury could convict based on "moral certainty."**

In a case where jurors wept, read the Bible, and prayed, *see infra* at pp. 17-18, an instruction that the jury act based on "moral certainty" and not consider "possible" doubt is troubling.  Counsel were ineffective for failing to object to jury instructions that diluted the burden of proof, to Mr. Sutton's prejudice.

In state criminal trials, the due process clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In*

14

*re Winship*, 397 U.S. 358, 364 (1970). "The reasonable-doubt standard plays a vital role in the American scheme of criminal procedure." *Id*. at 363.

In this case, the jury was instructed that reasonable doubt should be considered under the following definition:

> A reasonable doubt is an honest doubt which remains after investigation of all of the evidence, which will not permit the mind to rest easily as to the certainty of guilt. A reasonable doubt does not include a captious, possible, or an imaginary doubt. Absolute certainty of guilt is not required to convict, but moral certainty is required, and this certainty extends to every element necessary to constitute the offense.

(Add. 3, Vol. 12, p. 2108).

These instructions on the constitutional requirement of a finding "beyond a reasonable doubt" referred to the required degree of proof as being to a "moral certainty," and the instructions excluded from the definition of reasonable doubt a "possible" doubt and a "doubt that may arise from possibility." There is a reasonable likelihood that these instructions diluted the constitutional standard and that the jury convicted Sutton without finding that the State met the constitutional requirement.

Possible doubt is not so unlikely that it should be excluded from the definition of reasonable doubt. This context given by the court violated Gary Sutton's due process rights by making the notion of reasonable doubt far too narrow.

In addition, the Supreme Court has expressed concern with the use of the phrase "moral certainty" in connection with the definition of reasonable doubt.

15

*Victor v. Nebraska*, 511 U.S. 1 (1994). The Court recognized that while "moral certainty" was traditionally "an equivalent phrase with 'beyond a reasonable doubt,'" it is "not a mainstay of the modern lexicon[.]" *Victor*, 511 U.S. at 12 (citation omitted). The instruction on "moral certainty" in *Cage v. Louisiana*, 498 U.S. 39 (1990), contributed to a holding that the definition of reasonable doubt was unconstitutional because "moral certainty" would be understood very differently from "evidentiary certainty." *Cage*, 498 U.S. at 41. The instruction containing this phrase was upheld in *Victor* because "moral certainty" was defined in terms of the evidence and was therefore given meaning in the context of the instructions as a whole. *Victor*, 511 U.S. at 16. No such context was given in Gary Sutton's case. In the context of the instructions given in this trial, there is a reasonable probability that the jury understood the term "moral certainty" to be a lesser burden of proof than that required by the Constitution.

Instructing the jury that a reasonable doubt is not a "possible" doubt, in combination with the "moral certainty" phraseology, created a reasonable likelihood that the jury viewed the degree of proof necessary for a verdict to be below that which is required by the Due Process Clause.

It bears emphasizing that this was a strongly contested case. There was no confession nor direct evidence linking Mr. Sutton to the crime. Jurors consulted the Bible. "[I]t would not have taken much to sway at least some jurors toward acquittal." *Dugas v. Coplan*, 428 F.3d 317, 336 (1st Cir. 2005). Under *Strickland v.*

16

*Washington*, a verdict weakly supported by the record is more likely to be affected by counsel's errors. 466 U.S. at 696.  Counsel's failure to protect Mr. Sutton's right to have the jury find his guilt beyond a reasonable doubt is prejudicial in this case. *Id.*

**5.      Trial counsel failed to investigate and learn that jurors consulted the Bible during the deliberation process.**

Counsel did not interview jurors post-trial to learn that the jurors consulted a Bible during the deliberation process.  During deliberations at the guilt phase, at least two jurors consulted a Bible and prayed.  Juror Ballinger testified that juror Larry Gibson brought a Bible into the deliberation room.  (Add. 13, Vol. 2, p. 102). Gibson was crying and having a "real hard time, and he went off to be by himself with his Bible, and he was praying."  (Add. 13, Vol. 2, p. 103).  Gibson had his Bible open and Ballinger and Gibson "prayed together."  (*Id.*).  Ballinger and Gibson discussed "dealing with decision process and judgements process . . . [which was a] heavy weight, and how to deal with this weight.  And hand it to the Lord and let the Lord have it and not us."  (Add. 13, Vol. 2, p. 105).

The Sixth Amendment guarantee of a trial by jury requires the jury verdict to be based on the evidence produced at trial.  *Turner v. State of Louisiana*, 379 U.S. 466, 472 (1965).  The presence of the Bible in the jury room and the prayer for guidance in the judgment process violate this rule.

In *Jones v. Kemp*, 706 F.Supp. 1534, 1558 (N.D. Ga. 1988), the district court granted relief where the jury was permitted to "take the Bible back" to use during

17

deliberations.  The court relied upon an appellate opinion by late Justice Brennan noting it is"elementary" that the jury's verdict must be based upon the court's charge and the properly admitted evidence.  *Id.* (quoting *Palestroni v. Jacobs*, 77 A.2d 183 (N.J. 1950).  *See also Barnes v. Joyner*, 751 F.3d 229 (4th Cir. 2014) (remand to determine whether jury consultation with her pastor had a clear and injurious effect on the verdict).  In *Coe v. Bell*, 161 F.3d 320, 351 (6th Cir. 1998), the Sixth Circuit noted it would be error to allow the Bible into the jury room, where it was not "properly admitted evidence."

Here, the proof establishes that jurors relied upon the Bible and prayer as aids in passing judgment upon Mr. Sutton.  The Bible, which jurors recalled was open during deliberation, was an impermissible external influence.  Counsel were ineffective for failing to discover and present this issue.  Relief is warranted.

<strong>Controlling Legal Standards</strong>

**1.    The Standard of Review is *de novo.***

This Court found the newly raised ineffective assistance claims were procedurally defaulted.  (R. 46, PageID# 284).  As a result, there is no state court decision to which deference is due.  *See, e.g., Johnson v. Williams*, 133 S. Ct. 1088, 1097 (2013) ("The language of 28 U.S.C. § 2254(d) makes it clear that this provision applies only when a federal claim was 'adjudicated on the merits in State court.'").  *See also Porter v. McCollum,* 130 S. Ct. 447, 452 (2009) (because the state court did not address the performance prong of *Strickland*, federal review was *de novo*); *Cone*

18

*v. Bell*, 556 U.S. 449, 472 (2009) (*Brady* claim reviewed *de novo* where state court failed to review the merits).

**2.      *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), permits this Court to consider new evidence.**

*Coleman v. Thompson*, 501 U.S. 722 (1991), sets forth the Supreme Court's cause and prejudice doctrine.  Once cause is established, the petitioner is permitted to show "actual prejudice as a result of the alleged violation of federal law." *Coleman*, 501 U.S. at 750.  *See also Williams v. Taylor*, 529 U.S. 420, 443-44 (2000) (holding that once cause is established, the petitioner must be afforded the opportunity to present evidence and remanding for the development of evidence).

*Martinez v. Ryan*, modified *Coleman* by holding ineffective assistance of post-conviction counsel may establish cause to excuse procedural default.  132 S. Ct. at 1315.  Courts have held that once *Martinez* cause is established, the petitioner may present additional evidence.  *Sasser v. Hobbs*, 735 F.3d 833, 853-54 (8th Cir. 2013), *r'hrg en banc denied*, 745 F.3d 896 (8th Cir. 2014) (remanding under *Martinez* for consideration of new evidence.  *See also Leberry v. Howerton*, No. 12-5980, 2014 WL 4668236 (6th Cir. Sept. 22, 2014) (same).  Accordingly, Mr. Sutton is entitled to present new evidence in support of his procedurally defaulted, newly raised ineffective assistance claims.

Certain of Mr. Sutton's newly raised ineffective assistance claims rest solely on the evidence developed in state court, including the jury selection claims, *infra* at pp. 5-9, the jury instruction claim, *infra* at pp. 14-17; and the introduction of the

Bible into deliberations claim, *infra* at pp. 17-18. The Court may review these claims without consideration of additional proof.

Mr. Sutton's claim that trial counsel ineffectively failed to present the testimony of Danny Sutton rests on newly presented evidence, including the interview with Danny Sutton and the defense subpoena served on Danny Sutton. *See* Attachments A and B. This evidence demonstrates trial counsel was aware of Danny Sutton's testimony, intended to present it, yet inexplicably failed to do so.

Mr. Sutton's claim that trial counsel failed to offer scientific evidence rebutting the state's claim that Mr. Griffin was killed around 11:55 pm on February 21, also rests on new, unpresented evidence. In post-conviction, Mr. Sutton offered lay-person testimony establishing there was undigested food in Griffin's stomach and that the body was in rigor mortis when found. (Add. 13, Vol. 2, pp. 119-20). Mr. Sutton did not offer expert forensic or entomological evidence demonstrating the falsity of the State's theory. In this proceeding, Mr. Sutton offers evidence that counsel recognized there were scientific challenges to the State's theory. (Attachment C, Trial Attorney Notes on Dr. Ellington's Autopsy of Tommy Griffin). Mr. Sutton also offers the expert opinion of Drs. Kessler and Haskell. (Attachments D and E, respectively).

This Court may consider this evidence because it, "fundamentally alter[s] the claim" rendering it "unexhausted." *Vasquez v. Hiller*, 474 U.S. 254, 260 (1986). Although the Supreme Court recognized the difficulty of deciding "where to draw the line between new claims and claims adjudicated on the merits," *Cullen v.*

20

*Pinholster*, 131 S. Ct. 1401, 1419 n.10 (2011), in this case the new evidence fundamentally alters the claim such that it is a new, unexhausted claim.

AEDPA and case law provide multiple ways for this Court to conduct an evidentiary hearing or to receive the evidence. Section 2246, 28 U.S.C. provides this Court may take evidence "orally or by deposition, or, in the discretion of the judge, by affidavit." The HABEAS RULES GOVERNING SECTION 2254 CASES similarly grant flexibility. Rule 7 provides the record may be expanded to include letters, documents, exhibits, and affidavits. The Fourth Circuit recently considered such a case in *Brandt v. Gooding,* 636 F.3d 124, 127-29, 132, 136 (4th Cir. 2011), and concluded the district court properly granted petitioner relief based on a state court record supplemented by documents obtained through discovery. *See also Liles v. Saffle*, 945 F.2d 333 (10th Cir. 1991) (district court properly granted relief on basis of state court record and other affidavits admitted in federal court).[6]

Accordingly, Mr. Sutton moves the Court to consider the following evidence in support of his claims:

A. Danny Sutton's interview (Attachment A);

B. Danny Sutton's subpoena (Attachment B);

---

[6]*See also Murray v. Carrier*, 477 U.S. 478, 487 (1986) (consideration of claim based on affidavits is permissible); *Mathis v. Zant*, 903 F.2d 1368, 1370 (11th Cir. 1990) (district court adjudicated prejudice prong of *Strickland* claim on the basis of documentary evidence with which court expanded record); *Brown v. Johnson*, 224 F.3d 461, 467 (5th Cir. 2000) (district court may review documentary evidence in lieu of a "full-blown hearing").

21

C.    Trial Attorney Notes on Dr. Ellington's Autopsy of Tommy Griffin
(Attachment C);

D.    Dr. Kessler's testimony (Attachment D);

E.    Dr. Haskell's testimony (Attachment E).

## Conclusion

Wherefore, Mr. Sutton moves the Court to consider the aforementioned claims, arguments, and evidence and respectfully asks this Court to issue a writ of habeas corpus.

Respectfully submitted,

FEDERAL DEFENDER SERVICES
OF EASTERN TENNESSEE, INC.

BY:    s/Susanne Bales
Susanne Bales
Asst. Federal Community Defender
800 S. Gay Street, Suite 2400
Knoxville, TN  37929
(865) 637-7979

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 26, 2014, the foregoing Supplemental Brief was filed electronically.  Notice electronically mailed by the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Notice delivered by other means to all other parties via regular U.S. Mail.  Parties may access this filing through the Court's electronic filing system.

s/Susanne Bales
Susanne Bales

Case 3:07-cv-00030-TAV-CCS    Document 51    Filed 09/26/14    Page 23 of 23
PageID #: 320