TECHNICAL RECORD

*E2004-02308-CCA-R3-PC* (handwritten)

COA NO. __E2004-02308-CCA-R3-PC__ VOLUME: I of I

NO. __96-1185-III__

## APPEALED FROM

### SEVIER COUNTY CIRCUIT COURT

### AT SEVIERVILLE, TENNESSEE

FILED
DEC 2 1 2004
Clerk of the Courts

HON. __REX HENRY OGLE,__ JUDGE

__JANETTE L. BALLARD,__ CLERK

## IN THE CASE OF

__JAMES A. DELLINGER, PLAINTIFF,__ APPELLANT(S)

VS.

__STATE OF TENNESSEE, DEFENDANT/__ APPELLEE(S)

TO THE

__CRIMINAL APPEALS__ COURT

KNOXVILLE, TENNESSEE

### JUDGMENT LOWER COURT

__THE PETITION FOR POST-CONVICTION RELIEF WAS OVERRULED__

__BY HON. REX HENRY OGLE ON AUGUST 30, 2004.__

__RICHARD BURNETTE, BPR# 018571__
__110 W. SUMMIT HILL DRIVE, SUITE TWO__
__KNOXVILLE, TENNESSEE 37901__

ATTORNEYS FOR PLAINTIFF / APPELLANT

__STEVEN HAWKINS, BPR# 01043, ASST. DIST ATTY.__
__125 COURT AVENUE, ROOM 301-E__ ATTORNEYS FOR DEFENDANT / APPELLEE
__SEVIERVILLE, TENNESSEE 36862__

FILED_____ DAY OF _____ 20_____.

_____COURT _____ CLERK

NO._____ _____Addendum 23_____ DEP. CLERK

Case 3:07-cv-00030-TAV-CCS    Document 52-1    Filed 09/29/14    Page 1 of 105
PageID #: 479

TRANSMITTED TO APPELLATE COURT _____

JAMES DELLINGER
VS.   96-1185   E2004-02308-CCA-R3-PC
STATE OF TENNESSEE

## I N D E X

AFFIDAVIT OF DONALD E. DAWSON ............................................... 76

AMENDMENTS TO PETITION FOR P.C. RELIEF............................... 24

ANSWER...................................................................................... 21

ANSWER TO AMENDMENTS TO PETITION FOR P.C. RELIEF AND
    SUPPLEMENT TO PETITION FOR P.C. RELIEF ............................ 94

CERTIFICATE ....................................................................................101

NOTICE OF APPEARANCE CATHERINE Y. BROCKENBOROUGH  79

NOTICE OF APPEAL............................................................................ 98

ORDER TO RELEASE RECORDS  (7-21-99) ........................................ 23

ORDER GRANTING PERMISSION TO FILE INTERLOCUTORY
    APPEAL (7-1-03) ................................................................................ 87

ORDER OVERRULING PETITION FOR P.C. RELIEF (8-30-04) ......... 96

PETITION FOR RELIEF FROM CONVICTION OR SENTENCE.........  1

PETITIONER'S MOTION TO CONSOLIDATE CASES TO CONTINUE
    THE JUNE 30, 2003 HEARING AND TO SUBSTITUTE COUNSEL  61

PETITIONER'S MOTION TO DISQUALIFY THE HON. REX H. OGLE
    FROM SERVING AS JUDGE IN THIS CASE................................... 81

SUPPLEMENT TO AMENDED PETITION FOR POST-CONVICTION
    POST-CONVICTION RELIEF ............................................................ 90

Addendum 23

IN THE ___CIRCUIT___ COURT OF

_____SEVIER_____ COUNTY, TENNESSEE

___JAMES DELLINGER___  )
PETITIONER (FULL NAME)  )
                        )
VS.                     )  CASE NO. _96-1185-III_
                        )
                        )  (POST-CONVICTION)
STATE OF TENNESSEE      )

CIRCUIT COURT
FILED
HOUR ___4:20___ M
OCT 2 4 1996
Janette Layman
CIRCUIT COURT CLERK
SEVIER COUNTY, TN

## PETITION FOR RELIEF FROM CONVICTION OR SENTENCE

Mailing Address of Petitioner __RMSI, UNIT 2, 7475 COCKRILL BEND IND. RD.,__
(including zip code)
__NASHVILLE, TN 37209-1010__

Place of Confinement __RIVERBEND MAXIMUM SECURITY INSTITUTION__
Dep't of Corrections Number __#213865__

NOTICE:   BEFORE COMPLETING THIS FORM, READ CAREFULLY THE
          ACCOMPANYING INSTRUCTIONS.

1. Name and location (city and county) of court which entered the judgment
   of conviction or sentence challenged

   __SEVIER COUNTY CIRCUIT COURT, SEVIERVILLE, TN 37862__

2. Date of judgment of conviction __FEBRUARY 24, 1993__

3. Case Number __#5035, 5036__

4. Length of sentence __LIFE; AND TWO (2) YEARS__

5. Offense Convicted of __FIRST DEGREE MURDER, ARSON__

Addendum 23

Case 3:07-cv-00030-TAV-CCS     Document 52-1     Filed 09/29/14     Page 3 of 105
PageID #: 481

1

6. What was your plea? (Check One)

(a) Guilty _____
(b) Not Guilty _X_ _____
(c) Not Guilty by reason of mental disease or defect _____
(d) Not guilty and not guilty by reason of mental
    disease or defect _____
(e) Nolo contendere _____
(f) None _____

If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, specify.

(a) guilty plea counts: _____
(b) not guilty counts: _____

7. Kind of trial: (Check One)

(a) Jury _X_    (b) Judge only _____

8. Did you testify at the trial?

Yes _____    No _X_

9. Did you appeal from the judgment of conviction?

Yes _X_    No _____

10. If you did appeal, answer the following:

(a) As to the state court to which you first appealed, give the following information:

(1) Name of court _COURT OF CRIMINAL APPEALS (KNOXVILLE)_

(2) Result _AFFIRMED_

(3) Date of result _JULY 11, 1995_

(4) Grounds raised on appeal _SEE ATTACHED PAGE 4(a)_

_____

(b) If you appealed to any other court, then as to the second court to which you appealed, give the following information:

(1) Name of court _TENNESSEE SUPREME COURT_

Addendum 23

Case 3:07-cv-00030-TAV-CCS    Document 52-1    Filed 09/29/14    Page 4 of 105
PageID #: 482

## GROUNDS RAISED ON APPEAL

### I.

The evidence is insufficient to allow a jury to conclude beyond a reasonable doubt that appellant is guilty of first degree murder because:
A. The evidence is insufficient to show premeditation, deliberation or malice;
B. No evidence showed that the victim died from a criminal instrumentality (corpus delicti).

### II.

The court erred in consolidating appellant's trial with that of Gary Wayne Sutton.

### III.

The court's ruling to admit proof of collateral criminal activity in the State's case-in-chief pursuant to Tenn.R.Evidence 404(B) was reversible error.
A. The State introduced proof regarding the burning of Tommy Griffin's trailer on February 21, 1992.
B. The State introduced proof of an alleged altercation between the defendants and Tommy Griffin on hunt road off of Alcoa Highway in Blount County, Tennessee.
C. The State introduced proof regarding the murder of Tommy Griffin in Blount County on February 21, 1992.

### IV.

The court erred in failing to grant appellant Dellinger a mistrial when the State failed to come forward with clear and convincing evidence of the arson of the trailer and the appellant's involvement with an alleged fight on Hunt Road in Blount County, when that evidence had been included in the State's proffer of proof.

### V.

The court erred in refusing defendant's motion, pursuant to _Brady_, to obtain statements from the defendant's wife, finding that _Brady_ only applied to information "within the exclusive control of the State."

### VI.

The court erred in imposing a consecutive sentence in this cause.

-4(a)-

Addendum 23

Case 3:07-cv-00030-TAV-CCS    Document 52-1    Filed 09/29/14    Page 5 of 105
PageID #: 483

(2) Result __DENIED__

(3) Date of result __JANUARY 22, 1996__

(4) Grounds raised __SEE ATTACHED PAGE 5(a)__

    (c) If you appealed to any other court, then as to the third court to which you appealed, give the following information:

        (1) Name of court __N/A__

        (2) Result ____

        (3) Date of result ____

        (4) Grounds raised ____

11. If more than one (1) year has passed since the date of final action on your direct appeal by the state appellate courts, state why the statute of limitations should not bar your claim.

__N/A__

12. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to the judgment in any state or federal court?

    Yes ____     No __X__

13. If your answer to Question 12 was "yes", then give the following information in regard to the first such petition, application, or motion you filed:

    (a)    (1) Name of court ____
           (2) Nature of proceeding ____
           (3) Grounds raised ____

           (attach additional sheets if necessary)
           (4) Did you receive an evidentiary hearing on your petition, application or motion?
                Yes ____    No ____
           (5) Result ____
           (6) Date of result ____

Addendum 23

## GROUNDS RAISED IN APPLICATION FOR PERMISSION
## TO APPEAL TO THE TENNESSEE SUPREME COURT

A. The evidence is insufficient to support a verdict of first degree murder because the evidence fails to show premeditation, deliberation or malice.

B. The court erred in refusing to sever appellant's trial from that of Gary Wayne Sutton.

C. The court's ruling to admit proof of collateral criminal activity in the State's case-in-chief pursuant to Tenn.R.Evidence 404(B) was reversible error.

-5(a)-

Addendum 23

5

(b) As to any second petition, application, or motion, give same information:

(1) Name of court _____
(2) Nature of proceeding _____
(3) Grounds raised _____

_____
_____
_____
_____

(attach additional sheets if necessary)
(4) Did you receive an evidentiary hearing on your petition, application, or motion?

Yes _____ No _____

(5) Result _____
(6) Date of result _____

(c) Did you appeal to any appellate court the result of the action taken on any petition, application, or motion identified above?

(1) First petition, etc. Yes _____ No _____
(2) Second petition, etc. Yes _____ No _____

(d) If you did not appeal when you lost on any petition, application, or motion, explain briefly why you did not appeal:

_____
_____
_____

14. If you have previously filed a petition, application or motion with respect to the judgment(s) in any court, explain why your claim in this case has not been waived for failure to raise it in that prior proceeding, or why the issue is not previously determined, if it was raised in that prior proceeding.

N/A _____
_____
_____

15. Specify every ground on which you claim that you are being held unlawfully, by placing a check mark on the appropriate line(s) below and providing the required information.

Include all facts which support the grounds you claim. You may attach pages stating additional grounds and the facts supporting them.

Addendum 23

6

# GROUNDS OF PETITION

Listed below are possible grounds for relief. Consider the ground(s) that apply in your case, and follow the instruction under the ground(s):

_____ (1) Conviction was based on unlawfully induced guilty plea or guilty plea involuntarily entered without understanding the nature and consequences of the plea.

_____ (2) Conviction was based on use of coerced confession.

_____ (3) Conviction was based on use of evidence gained pursuant to an unconstitutional search and seizure.

_X_ (4) Conviction was based on use of evidence obtained pursuant to an unlawful arrest.

_____ (5) Conviction was based on a violation of the privilege against self incrimination.

_X_ (6) Conviction was based on the unconstitutional failure of the prosecution to disclose to defendant evidence favorable to defendant.

_____ (7) Conviction was based on a violation of the protection against double jeopardy.

_X_ (8) Conviction was based on action of a grand or petit jury that was unconstitutionally selected and impaneled.

_X_ (9) Denial of effective assistance of counsel.

_X_ (10) Newly discovered evidence

_X_ (11) Illegal evidence

_X_ (12) Other grounds

THE LIST ABOVE IS NOT A COMPLETE LIST OF ALL CONSTITUTIONAL VIOLATIONS. YOU MAY ADD ANY OTHERS YOU DEEM APPROPRIATE. ATTACH A SEPARATE SHEET OF PAPER LISTING EACH CONSTITUTIONAL VIOLATION THAT YOU CLAIM, WHETHER OR NOT IT IS LISTED ABOVE. INCLUDE UNDER EACH VIOLATION YOU CLAIM EACH AND EVERY FACT YOU FEEL SUPPORTS THIS CLAIM. EXPLAIN IN DETAIL HOW YOU ARE PREJUDICED BY THE VIOLATION AND WHY YOU ARE ENTITLED TO RELIEF. BE SPECIFIC.

Addendum 23

7

## GROUNDS FOR RELIEF

### Insufficient indictment

A. The indictment against Petitioner failed to allege an offense and failed to contain all of the necessary elements of the offense for which Petitioner was convicted. Specifically, the indictment under which Petitioner was convicted failed to allege all of the elements constituting the offense in this case. The record shows that Petitioner was convicted for the offense of arson, and murder in the first degree. However, the indictment fails to allege the requisite elements of the offense of arson or murder in the first degree, and fails to allege all necessary and essential facts as mandated pursuant to T.C.A. § 40-13-202. Neither the essential elements nor any pertinent facts are contained in the indictment. The indictment is therefore invalid. Because the indictment fails to allege the requisite elements for the offense of arson, or murder in the first degree, and since an indictment must stand or fall upon its own averment, the trial court was without jurisdiction of the indictment in this cause, and Petitioner's conviction and sentence are therefore void.

### Unconstitutional selection of Grand and Petit Jury

B. Petitioner's conviction and sentence are void because the grand jury which returned the indictment in this case was unconstitutionally selected and composed in violation of Petitioner's rights secured under the Constitution of the United States. Petitioner was indicted by a grand jury from which black and female grand jurors and grand jury forepersons have been substantially under-represented and systematically excluded over a substantial period of time. Petitioner's trial counsel failed to raise this issue and as a result, Petitioner's rights were violated.

-8-

Case 3:07-cv-00030-TAV-CCS   Document 52-1   Filed 09/29/14   Page 10 of 105
PageID #: 488

C. The grand jury which indicted Petitioner, were drawn from jury pools which did not reflect a fair representative cross-section of the community. These groups of jurors did not fairly represent the community and resulted in a biased selection process. The representation of the group on the jury panel was not fair and reasonable in relation to the number of such persons in the community. Petitioner's appointed counsel failed to raise this issue and, as a result, Petitioner's rights under the United States Constitution were violated.

### Failure to disclose exculpatory evidence

D. Prior to and during Petitioner's trial in this cause, the State knowingly withheld favorable and otherwise exculpatory evidence from the Petitioner. This evidence pertained to inconsistent statements and other evidence made by and concerning State and prosecution witnesses which in fact contradicted the State's theory of the case against Petitioner. These statements and other exculpatory evidence pertained to deals and other agreements made by the State to prosecution witnesses, Jennifer Branum, Herman Lewis, Jason E. McDonald, and Barbara A. Gordon, to provide false evidence concerning the sequence of events involving the facts of this case.

The State also withheld the police interview notes and pretrial statements showing that the above witnesses submitted their original statements indicating that they had no knowledge of the facts of this case insofar as it concerned Petitioner. The prosecution improperly withheld this evidence to which Petitioner was entitled and to which Petitioner had a right to present to the jury during his trial. The evidence withheld by the State was material to the guilt and punishment of the Petitioner. This evidence, if properly disclosed by the prosecution, would reveal, among others, that Petitioner did not actually commit but

-8-

9

Addendum 23

Case 3:07-cv-00030-TAV-CCS    Document 52-1    Filed 09/29/14    Page 11 of 105
PageID #: 489

was in fact innocent of the alleged offense in this matter; and that the State made deals with these witnesses in exchange for their false evidence against Petitioner. The State never properly revealed these deals nor properly disclosed the exculpatory evidence to Petitioner, in violation of Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); State v. Spurlock, 874 S.W.2d 602 (Tenn.Crim.App. 1993). As a result, Petitioner was unconstitutionally convicted because of the State's failure to disclose evidence favorable to the defense.

### Prosecutorial misconduct

E. The state committed prosecutorial misconduct during Petitioner's trial when the prosecutor inflamed the jury with intemperate argument which was not predicated on the evidence during the trial or pertinent to the issues being tried. The prosecutor, during opening and closing arguments, made disparaging remarks about the Petitioner, about evidence, and about the crime, which were made solely to induce prejudice toward the Petitioner. Consequently, the effect of the prosecutor's argument was to produce an irrational verdict, and a verdict not based solely on an impartial consideration of the evidence, which was highly prejudicial to the Petitioner. These errors include, but are not limited to:

(a) Prosecutorial misconduct during the Petitioner's trial when the prosecution improperly vouched for the credibility of its witnesses by indicating that State witnesses were always truthful and would not lie. These witnesses included all of the law enforcement officials and other witnesses called to testify by the State.

(b) Knowingly misrepresented a defense witness's grand jury testimony. The State represented to the jury that

-10-

Addendum 23

Case 3:07-cv-00030-TAV-CCS    Document 52-1    Filed 09/29/14    Page 12 of 105
PageID #: 490

10

several defense witnesses presented testimony before the grand jury containing incriminating statements against Petitioner. However, the grand jury testimony was never presented as evidence.

(c) Misstated the facts and the law applicable to the case against Petitioner.

(d) Improperly asked the jury to rely upon the prosecutor's own integrity, ethics and credibility as a State representative before deliberating on the evidence and case against Petitioner.

(e) Improperly appealed to the jurors as a conscience of the community by commenting that Petitioner would go right back out into the community and begin committing other crimes if the jury did not convict and sentence Petitioner.

(f) Improperly commented that the State would have never investigated and charged Petitioner if he was not guilty.

(g) Prosecutorial misconduct when the prosecutor failed to reveal all promises, deal, agreements, understanding, tacit, explicit or implicit made by or on behalf of the State to witnesses.

### Errors by the Trial Judge

F. Before Petitioner's trial, during the guilt/innocence phase and during post-trial, the trial judge committed errors that violated Petitioner's constitutional rights including, but not limited to:

(a) The trial court improperly allowed irrelevant, inadmissible and false evidence to be presented to and considered by the jury.

(b) Improperly conducted the voir dire of the jury.

(c) The trial court's failure to properly instruct the jury on all lesser included offenses.

(d) The trial court's failure to properly charge the jury on all defenses.

-11- Addendum 23

**11**

Case 3:07-cv-00030-TAV-CCS    Document 52-1    Filed 09/29/14    Page 13 of 105    PageID #: 491

(e) The trial court kept relevant facts from the jury regarding Petitioner's sentence.

(f) The trial court failed to properly give curative instructions regarding the numerous instances of prosecutorial misconduct by the State.

(g) The trial court improperly charged the jury on mandatory presumptions as to the elements of the offense in question. The trial court instructed the jury that it could presume that Petitioner committed the offense in this matter. This charge by the trial court imposed a mandatory presumption as to the core elements of the offense charged and foreclosed independent jury consideration of the facts. Under these circumstances, the instructions violated Petitioner's constitutional rights to a fair trial under the Constitution of the United States and the Tennessee Constitution.

(h) The trial court repeatedly and improperly defined reasonable doubt as "doubt to a moral certainty."

(i) Failed to properly define all of the elements of the offense alleged against Petitioner.

Because of the numerous errors committed by the trial court, Petitioner was unconstitutionally denied a fair trial. Petitioner's conviction and sentence are therefore void.

### Knowing use of perjured testimony by the State

G. The prosecution knowingly used false and perjured testimony to obtain the conviction and sentence against Petitioner. During Petitioner's trial, the prosecution presented Jennifer Branum, Herman Lewis, Jason E. McDonald, and Barbara A. Gordon, to testify for the State who were alleged to have knowledge of the alleged incident which resulted in Petitioner being falsely charged. These witnesses presented false testimony that Petitioner was involved in this case. However, prior to the trial, these

-12-  Addendum 23

**12**

Case 3:07-cv-00030-TAV-CCS   Document 52-1   Filed 09/29/14   Page 14 of 105
PageID #: 492

witnesses in fact made oral and written statements indicating no knowledge of the facts. As a result, the State knowingly used this false testimony at Petitioner's trial which was secured as a result of promises and deals made to the above witnesses immediately prior to Petitioner's trial. The prosecution knew that these witnesses were testifying falsely and knew that these witnesses made prior statements which totally exonerate Petitioner of this offense. These witnesses were in fact solicited by the prosecution to appear at trial and provide false testimony against Petitioner during his trial. The prosecution was fully aware and knowingly used the false testimony of this witness, without which a conviction against Petitioner would have been impossible. Petitioner was therefore denied of due process and his right to a fair trial by the prosecution's knowing use of this perjured testimony.

Based upon the above, Petitioner was denied of his rights secured under the Constitution of the United States and the Constitution of the State of Tennessee. As a result, Petitioner's conviction and sentence in this cause are therefore void and must be set aside.

### H. Ineffective Assistance of Counsel

Petitioner respectfully submits to the Court that his counsel was ineffective in his representation of him in all pretrial, prehearing, post-trial, and appellate proceedings, and such representation deprived Petitioner of his rights under the Constitution of the United States and the Constitution of the State of Tennessee. Counsel's assistance to Petitioner was so defective as to require reversal of his conviction and sentence in this case. Counsel's performance was deficient and the deficient performance prejudiced Petitioner so as to deprive Petitioner of effective counsel. Petitioner avers that his

-13- Addendum 23

13

counsel was ineffective for the following non-exhaustive reasons:

(a) Petitioner was denied his right to effective assistance of counsel in violation of due process clause of the Fourteenth Amendment to the United States Constitution, the Sixth Amendment to the United States Constitution, and Article I, Sections 4, 6, 8, 9, and 10 of the Constitution of the State of Tennessee.

(b) Counsel failed to effectively and adequately represent Petitioner by failing to investigate and prepare for trial as requested by Petitioner.

(c) Counsel failed to effectively and adequately represent Petitioner by failing to formulate a defense for Petitioner, but instead merely assured Petitioner that trial counsel had "everything under control."

(d) Counsel failed to effectively and adequately represent Petitioner by failing to interview any witnesses.

(e) Petitioner's right to the effective assistance of counsel was denied by counsel's failure to raise, prepare, file and litigate all pertinent and significant issues with regard to Petitioner's case. Among others, Petitioner's counsel failed to raise and preserve the issue that Petitioner was never brought, after his arrest, before a magistrate without unnecessary delay. Petitioner was never taken before a magistrate for an initial appearance and was therefore denied the assistance of counsel during the lengthy interrogation of Petitioner by police, in violation of Rule 5(a), and (d), of the Tennessee Rules of Criminal Procedure. As a result, Petitioner was unduly interrogated by the State in order to obtain a conviction against him in this matter, in violation of Petitioner's rights under the Fifth and Fourteenth Amendments to the United States Constitution and the Constitution of the State of Tennessee. Consequently, Petitioner would not have been unduly interrogated and denied his right to counsel if he

-14-

14

Case 3:07-cv-00030-TAV-CCS

Document 52-1

Filed 09/29/14

had been properly and promptly brought without unnecessary delay before a magistrate in order for Petitioner to be properly advised of his constitutional rights and thereby provided with counsel. However, Petitioner's counsel failed to raise this issue and as a result, Petitioner's rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I § 4, 6, 8, 9, and 10 of the Tennessee Constitution, were violated.

(f) Petitioner was denied the adequate and effective assistance of counsel by the failure of said counsel to properly make requests for discovery.

(g) Petitioner was denied the adequate and effective assistance of counsel by the failure of said counsel to object to the intentional misrepresentation of the actual facts of the case by the prosecutor in reading the facts to the court. The prosecutor knowingly misrepresented to the court that facts existed concerning Petitioner's involvement in support of major elements of the offense for which Petitioner was convicted. Because Petitioner's counsel failed to object to the prosecutor's inaccurate and misleading facts, false and inadmissible evidence was presented against Petitioner by the prosecutor.

(h) Petitioner was denied the adequate and effective assistance of counsel in that counsel failed to file a motion to dismiss the indictment due to the void charges contained in the indictment.

(i) Petitioner was denied the adequate and effective assistance of counsel in that counsel failed to file a motion to dismiss the indictment based upon the fact that blacks and women were systemically and unconstitutionally excluded from serving as a foreman of the grand jury in Sevier County.

(j) Petitioner was denied the adequate and effective assistance of counsel in that counsel never investigated the background and personal and medical history of Petitioner in order to form a defense for the Petitioner

Addendum 23

15

Case 3:07-cv-00030-TAV-CCS Document 52-1 Filed 09/29/14 Page 17 of 105 PageID #: 495

(k) Petitioner was denied the adequate and effective assistance of counsel in that counsel failed to file a motion for adequate expert and investigative services in order to properly prepare an adequate defense.

(1) Petitioner was denied the adequate and effective assistance of counsel in that counsel lacked the experience and knowledge necessary for effective representation of Petitioner.

(m) Petitioner was denied the adequate and effective assistance of counsel in that counsel failed to consult and communicate with Petitioner at crucial stages prior to trial. Said counsel met with Petitioner only two (2) times very briefly.

(n) Petitioner was denied the adequate and effective assistance of counsel in that counsel failed to provide Petitioner with a copy of the indictment. Petitioner was never properly and timely advised of the charges against Petitioner.

(o) Petitioner was denied the adequate and effective assistance of counsel in that counsel failed to challenge the defective indictment against Petitioner which failed to allege an offense and failed to contain all of the necessary elements of the offense as required under T.C.A. 40-13-202. The indictment failed to state sufficient facts upon which to charge Petitioner with the offenses of arson and murder in the first degree, and also failed to properly put Petitioner on notice of the precise offense against which Petitioner would be called to defend. As a result, the court was without jurisdiction of this matter. Because the indictment in this cause is both factually and technically deficient, the indictment failed to allege an offense and Petitioner was not properly apprised of the alleged offenses in violation of his rights secured under the Constitution of the United States and the Constitution of the State of Tennessee.

-16- Addendum 23

**16**

Case 3:07-cv-00030-TAV-CCS   Document 52-1   Filed 09/29/14   Page 18 of 105   PageID #: 496

(p) Petitioner was denied the adequate and effective assistance of counsel by counsel's failure to ask the court for a competency evaluation of Petitioner despite counsel's knowledge that Petitioner was not competent to stand trial. As a result, Petitioner was incompetent and this was never disclosed to the court because of counsel's ineffectiveness.

(q) Petitioner was denied the adequate and effective assistance of counsel by counsel's failure to challenge the false representations made to the grand jury.

(r) Petitioner was denied the adequate and effective assistance of counsel by counsel's failure to properly challenge Petitioner's unlawful arrest.

(s) Petitioner was denied the adequate and effective assistance of counsel by counsel's failure to challenge the unconstitutional selection of the grand jury.

(t) Petitioner was denied the adequate and effective assistance of counsel by counsel's failure the State's unconstitutional constructive amendment of the indictment against Petitioner.

-17-

Addendum 23

**17**

16. IMPORTANT NOTICE REGARDING ADDITIONAL PETITIONS: TENN. CODE ANN. §40-30-102(c) LIMITS YOU TO ONLY ONE PETITION. §40-30-102 (c) PROVIDES:

This chapter contemplates the filing of only one (1) petition for post-conviction relief. In no event may more than one (1) petition for post-conviction relief be filed attacking a single judgment. If a prior petition has been filed which was resolved on the merits by a court of competent jurisdiction, any second or subsequent petition shall be summarily dismissed.

17. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?

Yes _____ No _X___

18. Give the name and address, if known, of each attorney who represented you at the following stages of the case that resulted in the judgment under attack:

(a) At preliminary hearing ___ED MILLER, SUSANNA L. THOMAS_____

(b) At arraignment and plea ___(SAME)_____

(c) At trial ___(SAME)_____

(d) At sentencing ___(SAME)_____

(e) On appeal ___(SAME)_____

(f) In any post-conviction proceeding ___N/A_____

(g) On appeal from adverse ruling in a post-conviction proceeding ___N/A_____

19. Are you currently represented by counsel?

Yes _____ No _X___

(A) If Yes, give name and address, if known, of the attorney representing you.

_____

_____

(B) If No, do you wish to have an attorney appointed?

Yes _X___ No_____

Case 3:07-cv-00030-TAV-CCS    Document 52-1    Filed 09/29/14    Page 20 of 105
PageID #: 498

18

20. In the judgment you are attacking, were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?

Yes __X__ No ____

21. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

Yes __X__ No ____

(a) If so, give name and location of court which imposed sentence to be served in the future: __BLOUNT COUNTY, TENNESSEE, CIRCUIT COURT__

(b) And give date and length of sentence to be served in the future: __SENTENCED TO DEATH ON__ 9 - 3 - 9 6

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?

Yes __X__ No ____

22. What date is this petition being mailed? __10 - 22 - 96__

Wherefore, petitioner prays that the court grant petitioner relief to which petitioner may be entitled in this proceeding.

### PETITIONER'S VERIFICATION UNDER OATH
### SUBJECT TO PENALTY FOR PERJURY

I swear (or affirm) under penalty of perjury that the foregoing is true and correct. Executed on __October 21, 1996__
(Date)

_James Dillinger_    ✗
Signature of Petitioner

STATE OF TENNESSEE
COUNTY OF __DAVIDSON__

SWORN TO AND SUBSCRIBED before me this the __21st__ day of __October__, 19__96__.

_Rowena Tanner_
Notary Public

My commission expires: __September 18, 1999__

Addendum 23

# APPENDIX B. PAUPERS OATH

I, _____JAMES DELLINGER_____, do solemnly swear (or affirm) that because of my poverty, I am not able to bear the expenses of the action which I am about to commence. I further swear (or affirm) that, to the best of my knowledge, I am justly entitled to the relief sought.

_James D ellinger_     ✗
Petitioner

20

Addendum 23

# IN THE CIRCUIT COURT FOR SEVIER COUNTY, TENNESSEE

**JAMES ANDERSON DELLINGER**

**VS.** NO. 96-1185-III

**STATE OF TENNESSEE**

CIRCUIT COURT
FILED
HOUR _____:_____ M
NOV :5 1996
DATE:
Janette Layman
CIRCUIT COURT CLERK
SEVIER COUNTY, TN

## ANSWER

Comes the State and answer to the Petition for Post-Conviction Relief, would State as follows:

(1) That, it is admitted this Petitioner is incarcerated in the Tennessee Department of Corrections;

(2) That, the averrments contained in numbered paragraphs one (1) thru fourteen (14) are admitted except as follows:

(i) This petitioner was tried and convicted only in Sevier County case #5035;

(ii) This petitioner was convicted of First Degree Murder and Setting Fire to Personal Property;

3. That any and all averrments, allegations, and/or claims raised in numbered paragraph fifteen (15) are denied, and strict proof of the same is demanded;

4. That, for further defense, the State would allege that this petitioner had to raise the following issues at trial and, by his failure to do so, has waived any post-conviction attack:

(i) "Insufficiency of the indictment";

(ii) "Unconstitutional selection of Grand and Petit Jury";

(iii) "Prosecuterial misconduct";

(iv) "Errors by the trial judge".

That, assuming any of these grounds to have had basis in law or in fact the same have been either previously determined, or waived by this defendant's failure to litigate these issues at trial or on direct appeal;

(5) That, it is specifically denied, and strict proof is demanded, as to the following allegations contained in the Petition:

21

Addendum 23

(i) "Failure to disclose exculpatory evidence";

(ii) "Knowing use of perjured testimony by the State";

(iii) "Ineffective assistance of counsel".

(6) That numbered paragraphs sixteen (16) thru twenty-two (22) are admitted based upon information and belief;

(7) That any and all averrments, allegations, claims, or prayers contained in the petition which have not been specifically denied are now generally denied as if done so item-by item, line-by-line.

**WHEREFORE**, having answered the Petition for Post-Conviction Relief, the State moves that the same be dismissed at the petitioner's cost.

Submitted this 5 day of Nov. 1996.

AL SCHMUTZER, JR.
DISTRICT ATTORNEY GENERAL

G. SCOTT GREEN
ASSISTANT DISTRICT ATTORNEY

## CERTIFICATE OF SERVICE

I, G. Scott Green, Assistant District Attorney General for the Fourth Judicial District, hereby certify that a true and exact copy of the foregoing Answer was mailed this the 5 day of Nov. , 1996 to the Circuit Court Clerk, Janette Layman-Ballard, 125 Court Avenue, Sevier County Courthouse, Sevierville, TN 37862, to Circuit Court Judge, Honorable Rex Henry Ogle, P. O. Box 4245, Sevierville, TN 37864, and to the Petitioner, James Anderson Dellinger, RMSI, Unit 2, 7475 Cockrill Bend Ind. Road, Nashville, TN 37209-1010.

G. SCOTT GREEN
ASSISTANT DISTRICT ATTORNEY

Addendum 23

# IN THE CIRCUIT COURT FOR SEVIER COUNTY, TENNESSEE

STATE OF TENNESSEE,

        Appellee,

vs.                        No. 96-1185-III

JAMES ANDERSON DELLINGER,

        Appellant.

                             2:10 M

                     DATE:   JUL 21 1999

## ORDER TO RELEASE RECORDS

Upon Motion of the Appellant, and for good cause shown, it is hereby

**ORDERED, ADJUDGED and DECREED,** as follows:

1. That the District Attorney General's Office for Blount County, Tennessee, shall allow Attorney Bryan E. Delius access to all records and/or files allowable by law they have in regard to James Anderson Dellinger and/or Gary Wayne Sutton for the purpose of amending the properly filed Petition for Post-Conviction Relief.

2. Further, that the Blount County Sheriff's Department shall allow Attorney Bryan E. Delius access to all records and/or files allowable by law they have in regard to James Anderson Dellinger and/or Gary Wayne Sutton.

3. The Appellant shall have until August 1, 1999, in which to file his Amended Petition for Post-Conviction Relief.

ENTER this 21 day of July, 1999.

                               REX HENRY OGLE, Circuit Court Judge

APPROVED FOR ENTRY:

BRYAN E. DELIUS
Attorney for Defendant
124 Court Avenue, Suite 201
Sevierville, TN 37862
(423) 428-3556

Addendum 23

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing has been served on the Office of the District Attorney General, 125 Court Avenue, Room 301-E, Sevierville, TN 37862, by hand-delivering same, this the 21st day of July, 1999.

BRYAN E. DELIUS

Addendum 23

23A

# IN THE CIRCUIT COURT FOR SEVIER COUNTY, TENNESSEE

**JAMES ANDERSON DELLINGER,**

      **Petitioner,**

**vs.**

**STATE OF TENNESSEE,**

      **Respondent.**



**No.: 96-1185-III**

**POST-CONVICTION**

## AMENDMENTS TO PETITION FOR POST-CONVICTION RELIEF

1. Petitioner James Dellinger, through undersigned counsel, submits this first set of amendments to his post-conviction petition seeking relief from his 1993 convictions of first-degree intentional murder and arson. Mr. Dellinger expressly adopts herein all claims asserted in his *Pro Se* Petition for Post-Conviction Relief from Conviction and Sentence filed on October 24, 1996.

2. Undersigned counsel has not been able to investigate this case fully because of Tennessee Supreme Court Rule 13 that precludes the authorization of investigative and expert services in non-capital post-conviction cases. This preclusion has prevented counsel from complying fully with his statutory, ethical and constitutional duties. Consequently, counsel presents herein on Mr. Dellinger's behalf only those claims currently known to him.

3. Because a full investigation of this matter would have given rise to other claims not asserted herein, Mr. Dellinger expressly does not waive any claims of relief which have not been identified or presented fully as a consequence of the limitations imposed upon counsel to date. The Post-Conviction Procedure Act permits Mr. Dellinger only one opportunity to raise

24

constitutional claims challenging the validity of his convictions and sentence. He reserves the right to amend this petition up until the point at which the taking of evidence in this matter has ceased.

4. Mr. Dellinger maintains that this Court's denial of the request to continue the hearing in this matter and to consolidate the proceedings in this case with the proceedings in the companion Blount County capital post-conviction case violates his constitutional rights assured by Article I, §§ 8, 9, 16, and 17, and Article XI, § 16 of the Tennessee Constitution, and Amendments V, VI, VIII, and XIV to the United States Constitution. In addition, this Court's denial of a continuance and consolidation of the Sevier County and Blount County post-conviction proceedings defies the intent of the Post-Conviction Procedure Act to provide a post-conviction petitioner with a "full and fair hearing."

**PROCEDURAL HISTORY**

5. Mr. Dellinger's capital trial began on February 16, 1993 in the Sevier County Criminal Court. He was tried along with his co-defendant, Gary Sutton. Both men were charged with the first-degree intentional murder of Connie Branam and with setting fire to her automobile. The jury returned a verdict of guilty on both counts as to both defendants on February 24, 1993, after just under three hours of deliberations.

6. The sentencing hearing took place that same day and lasted just under two hours. After half an hour of deliberations, the jury returned with a verdict of a life sentence for each defendant. Subsequently, this Court sentenced each man to an additional two-year sentence for the burning of the car. The Court ordered those sentences to run consecutive to the life sentence.

-2-

7. The Tennessee Court of Criminal Appeals affirmed the convictions and sentences of both Mr. Dellinger and Mr. Sutton. *State v. Sutton and Dellinger*, No. 03C01-9403-CR-0090 (CCA July 11, 1995)(permission to appeal denied Jan. 22, 1996).

8. Mr. Dellinger filed his pro se Petition for Post-Conviction Relief on October 24, 1996. This Court appointed undersigned counsel to represent Mr. Dellinger in these proceedings. The evidentiary hearing has been continued on more than one occasion to await the conclusion of the direct appeal in the companion case out of Blount County.

9. In particular, on July 21, 1999, this Court entered an order directing General Flynn to release all records and files pertaining to the Blount County case to undersigned counsel to assist him in the preparation of the post-conviction petition and hearing. General Flynn refused to turn over the materials and this Court issued a Show Cause Order directing General Flynn to appear and answer why he had not complied with the order. At the Show Cause hearing, the Office of the District Attorney General for Sevier County referred the Court to the decision in *C.C.R.C. v. Woodall*, No. 01-A-01-9104-CH-00150 (CCA January 19, 1992). As a result, the Court continued the hearing until direct appeal in the Blount County case was concluded.

10. The direct appeal in the Blount County case was not completed until the United States Supreme Court denied certiorari on December 16, 2002. *Dellinger v. Tennessee*, __U.S.__, 123 S.Ct. 695, 154 L.Ed.2d 635 (2002).

11. Undersigned counsel and counsel for the State have moved this Court jointly to continue the hearing because neither party is ready to proceed. Despite the joint request and the submission of an agreed proposed order to continue the hearing, the Court insists that this hearing go forth on June 30, 2003.

-3-

**25**

Addendum 23

Case 3:07-cv-00030-TAV-CCS    Document 52-1    Filed 09/29/14    Page 29 of 105
PageID #: 507

# CLAIMS FOR RELIEF

## CLAIM 1: INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL

12. In violation of Article I, §§ 8, 9, and 16 and Article XI, § 16 of the Tennessee Constitution, and Amendments VI, VIII, and XIV to the United States Constitution, trial counsel rendered ineffective assistance in their representation of Mr. Dellinger. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Cronic v. United States*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed. 2d 657 (1984); *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975).

13. Mr. Dellinger hereby incorporates into this claim for relief, by express reference, all other paragraphs contained in this amended petition, all pleadings filed in this case previously and to be filed subsequent to the filing of this petition, as well as all appellate briefing (including certiorari litigation), filed by Mr. Dellinger in connection with the above-referenced criminal case and the companion Blount County case Trial No. C-6669 and Post-Conviction No. C-14432, and any further amended motions or petitions to be filed by Mr. Dellinger at any time in the future.

14. The claim set forth herein is made in part based upon information and belief, and in part based upon investigations and facts known to Mr. Dellinger, through the exercise of due diligence, to date. Because the Court has denied counsel the time needed to meet his statutory, ethical and constitutional duties, however, Mr. Dellinger is incapable of alleging with more specificity and/or with more factual certainty all of the facts that may be available or that may exist in support of this claim. The facts in support of this claim, as well as the contours of the claim itself, are necessarily incomplete as a result.

15. Set forth herein is a statement of the constitutional/legal claims of which Mr.

-4-

<span>26</span>

Dellinger is aware at this time, and those facts which he knows or has reason to believe are true, despite the denial of sufficient resources and access to the relevant materials, documents, files, information and/or evidence. Mr. Dellinger reserves the right to amend this claim and/or add additional claims once he has had access to all relevant files, documents, information, material and/or evidence to which he is entitled, and thereafter sufficient time to investigate and develop facts and witnesses in support of this and/or other claims that may arise once he has had that access.

16. The facts below establish Mr. Dellinger's Ineffective Assistance of Counsel at Trial Claim.[1] Because of the constraints placed on counsel's representation, the deficiencies of counsel's performance and the prejudice resulting from such deficiencies as articulated in this section are representative, but not exhaustive, of counsel's deficient performance and the resulting prejudice suffered by Mr. Dellinger.

17. Mr. Miller and Mrs. Thomas failed to establish a proper working relationship with Mr. Dellinger. *ABA Def. Funct.* § 4-3.1; *1989 ABA Guidelines* 11.4.2. Trial counsel met with Mr. Dellinger only three times before the trial. As a result, counsel failed to elicit and follow-up on information Mr. Dellinger could have provided them. This information includes, but is not

---

[1] The United States Supreme Court has recognized no "particular set of detailed rules" exists for the regulation of counsel's performance but it does suggest that the "prevailing norms of practice as reflected in American Bar Association standards and the like, . . .are guides to determining what is reasonable,. . ." *Strickland v. Washington*, 466 U.S. at 688-689. The Tennessee Supreme Court has hld that "trial courts and defense counsel **should look to and be guided by the American Bar Associations's Standards relating to the Administration of Justice.**" *Baxter v. Rose*, 523 S.W.2d at 936 (emphasis added). Throughout this petition, Mr. Dellinger will cite to the *ABA Standards for Criminal Justice, "The Defense Function," 1980*, as the "*ABA Def. Funct.*" and the *ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases*, 1989, as the "*1989 ABA Guidelines*." Although Mr. Dellinger did not receive the death penalty in this matter, at the time trial counsel were representing Mr. Dellinger, they were handling a capital case. As such, they were bound by the standards of practice for capital cases. In addition, this case is inextricably linked with the Blount County capital companion case. Consequently, this post-conviction case must be viewed and treated as a capital case.

-5-

limited to, names of other suspects, among them Dennis "Hippie" Shular, Juan Sierra, Bobby Floyd, James Alexander, and Troy Turner. Had counsel established the necessary relationship and investigated these other individuals, Mr. Dellinger would not have been convicted of the murder of Connie Branam. Consequently, Mr. Dellinger would not be under a sentence of death, since the conviction in the Sevier County case was the only aggravating factor making Mr. Dellinger death-eligible in Blount County.

18. Mr. Miller and Mrs. Thomas used the services of their in-house investigator Van Helton. Counsel failed to direct her properly. As a result, the investigation in this case was insufficient. Counsel failed to investigate Mr. Dellinger's claim that he, his wife Lynda, his co-defendant Gary Sutton, and Carolyn Weaver went to eat at the Huddle House the night the State claims that Tommy Griffin was killed. Both Mrs. Dellinger and Ms. Weaver testified to this at Mr. Dellinger's Sevier County trial. Had trial counsel fulfilled this duty, they would have been able to present at trial unbiased evidence to corroborate the testimony of Mr. Dellinger's wife and friend.

19. Despite the need for two attorneys in a capital case (*see 1989 ABA Guidelines*), Mr. Miller failed to utilize co-counsel Susanna Thomas. As a result, Mr. Dellinger was denied his constitutionally guaranteed right to the assistance of counsel in this trial.

20. Counsel failed to prepare adequately for their representation of Mr. Dellinger. Counsel failed to investigate properly (*ABA Def. Funct.* 4-4.1; *1989 ABA Guidelines* 11.4.1), including, but not limited to the failure to identify and interview all witnesses.

21. Counsel failed to be aware of (through experience, training or research) the law applicable to Mr. Dellinger's case, as evidenced by the deficiencies in counsel's performance

-6-

outlined in this petition.

22. Counsel failed to maintain their workload at the level acceptable when handling capital murder case. *See 1989 ABA Standards* 6.1.

23. Trial counsel failed to engage in the motions and jury instruction practice necessary to protect Mr. Dellinger's rights. *See ABA Def. Funct.* 4-3.6; *1989 ABA Guidelines* 11.5.1(B).

24. Counsel filed a motion to prohibit the introduction of certain 404(b) evidence, specifically evidence concerning the burning of Tommy Griffin's trailer and his death. The trial court denied that motion. At that point, counsel was put on notice that facts and evidence connected to the Blount County case would be admitted in the Sevier County trial. Counsel had the responsibility to investigate the Blount County case (actually that responsibility existed already because the Blount County case was the motive for the Sevier County murder according to the State's theory). Proper investigation of the Blount County case includes challenging the State's evidence in that matter. Among the evidence to examine is the report of the autopsy conducted on Tommy Griffin. Review of the autopsy reports shows that a small amount of undigested food was found in Mr. Griffin's stomach. Had counsel fulfilled their obligation, they would have obtained the services of the a pathologist who could have explained to them and to the jury that the presence of this food in Mr. Griffin's stomach indicates that he ate within four hours of his death. This fact negates the State's version of the events of February 21, 1992 and serves to exculpate Mr. Dellinger.

25. Counsel for Mr. Dellinger failed to obtain expert services including, but not limited to, a ballistics expert, an arson expert, a forensic crime scene expert to examine the tire tracks found at the site where Connie Branam's car was recovered, a fingerprint expert, and a psychologist.

-7-

*Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). Had counsel availed themselves of expert services, they would have been able to present the jury with exculpatory evidence and viable alternate suspects.

26. Although counsel filed a pre-trial motion challenging on the grounds of relevance the introduction of Mr. Dellinger's statements to law enforcement, they failed to challenge their introduction on the basis of constitutional infirmities.

27. Trial counsel failed to file timely a motion to suppress the evidence obtained from the search of Mr. Dellinger's property. The search warrant that gave rise to that search was obtained as a result of state malfeasance. *See* Claim 2, *infra*. Had counsel filed their motion in a timely manner, the evidence would have been suppressed and Mr. Dellinger would not have been convicted of the murder of Connie Branam.

28. At no time prior to trial did counsel file any motions asserting Mr. Dellinger's rights under international law, including, but not limited to:

I. His rights under treaties ratified by the United States.

As such, these treaties are the supreme law of the land, and the rights guaranteed under them preempt any contradictory state laws. U. S. Const., art. VI, cl.2; *see, e.g., Breard v. Greene*, 118 S. Ct. 1352, 1355 (1998). Those treaties include:

a. International Covenant on Civil and Political Rights, Dec. 19, 1966, G.A. Res. 2200, U.N. GAOR, Supp. No. 16 at 52, U.N. Doc. A/6316 (1967), 999 U.N.T.S. 171, art. 24 [hereinafter ICCPR], which was ratified by the United States on June 8, 1992;

b. The International Convention on the Elimination of All Forms of Racial Discrimination, Mar. 7, 1966, G.A. Res. 2106A, U.N. GAOR, 20th Sess., Supp. No. 14 at 47, U.N. Doc. A/6014

-8-

Addendum 23

30

(1965) [hereinafter Race Convention], which was ratified by the United States on October 21, 1994; and

c. The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10 1984, G.A. Res. 39/46, U.N. GAOR, 39th Sess., Supp. No. 51, at 197, U.N. Doc. 39/51 (1984) [hereinafter Torture Convention], which was ratified by the United States on October 21, 1994.

II. His rights under treaties entered into and signed by the President of the United States.

The President's action in the area of foreign relations, including the rights guaranteed under these treaties, preempts any contradictory state law. *United States v. Belmont*, 301 U.S. 324 (1937). Those treaties include:

a. The American Convention on Human Rights, Nov. 22, 1969, O.A.S.T.S.No. 36, O.A.S. Off. Riec. OEA/Ser. L./V./II.23/Doc. 21 Rev. 6 [hereinafter American Convention] signed on June 1, 1977; and

b. The International Covenant on Economic, Social and Cultural Rights, Dec. 15, 1966, 1976, 999 U.N.T.S. 3 [hereinafter Economic Covenant], which was signed on October 5, 1977.

III. His rights under customary international law.

Customary international law and *jus cogens* norms are binding upon the courts as the law of the land. "The law of nations . . . is part of the law of the land." *The Paquete Habana*, 175 U.S. 677, 700 (1900). Evidence of customary international laws can be found, *inter alia*, in other treaties and international proclamations neither signed nor ratified by the United States, including, but not limited to:

a. The American Declaration of the Rights and Duties of Man, May 2, 1948, Res. XXX, at

-9-

38, Final Act, Ninth Int'l Conf. of American States, Bogata, Columbia, Mar. 30-May 2, 1948

(Pan-Am 1948), O.A.S. Off. Rec. OEA/Ser. L./V./ II.23/Doc. 21 Rev. 6 (1979), Art. XX

[hereinafter American Declaration] and

b. Universal Declaration of Human Rights, G.A. Res. 217, U.N. GAOR, 3d

Sess., pt.1, U.N. Doc. A/810 (1948) [hereinafter Universal Declaration].

29. Those rights guaranteed to Mr. Dellinger through treaties and customary international

law that counsel failed to raise, include, but are not limited to:

a. The right to be free from racial discrimination[2];

b. The right to be free from gender discrimination[3];

c. The right to be free from discrimination on the basis of economic status[4];

d. The right to a fair and impartial trial[5];

e. The right to be presumed innocent until proven guilty according to law[6];

f. The right to detailed notice of the charges against him[7];

---

[2] ICCPR, arts. 3, 14(1), 16, and 26; Universal Declaration, arts. 1, 2, 6, and 7; American Declaration, art. II; American Convention, arts. 3 and 24; Race Convention.

[3] ICCPR, arts. 3, 14(1), 16, and art. 26; Universal Declaration, arts. 1, 2, 6, and 7; American Declaration, art. II; American Convention, arts. 3 and 24; Women's Convention.

[4] ICCPR art. 26; *see* ICCPR, arts. 3, 14(1), and 16; Universal Declaration, arts. 1, 2, 6, and 7; American Declaration, art. II; American Convention, arts. 3 and 24; Economic Convention.

[5] ICCPR, art. 14; Universal Declaration, art. 10; American Declaration, art. XV, art. XVII; American Convention, art. 8.

[6] ICCPR, art. 14(2); Universal Declaration, art. 11(1); American Declaration, art. XXVI; American Convention, art. 8(2).

[7] ICCPR, art. 9(2); American Convention, art. 8(2).

-10-

Addendum 23

g. The right to adequate time and resources in which to prepare his defense[8];

h. The right to obtain the attendance of witnesses to testify in his defense[9];

i. The right to examine witnesses against him[10];

j. The right to be free of coercion to confess guilt[11];

k. The right to refrain from testifying against himself[12];

l. The right to be free from detention while awaiting trial[13];

m. The right to be tried without undue delay[14];

n. The right to be free from arbitrary searches[15];

o. The right to be free from arbitrary detention[16]; and

---

[8] ICCPR, art. 14(3); Universal Declaration art. 11(1); American Convention, art. 8(2); *see also* American Convention, art. 8(2)("the right . . . to obtain the appearance, as witnesses, of experts of other persons who may throw light on the facts.").

[9] ICCPR, art. 14(3)("To examine. . . the witnesses against him and to obtain the attendance and examination of witnesses on this behalf *under the same conditions as witnesses against him.*)(emphasis added); American Convention, art. 8(2); *see also* Universal Declaration, art. 11(1)(The right to "all the guarantees necessary for his defence.").

[10] ICCPR, art. 14(3)("To examine. . . the witnesses against him and to obtain the attendance and examination of witnesses on this behalf *under the same conditions as witnesses against him.*)(emphasis added); American Convention, art. 8(2); *see also* Universal Declaration, art. 11(1) (The right to "all the guarantees necessary for his defence.").

[11] ICCPR, art. 14(3); American Convention, art. 8, (2-3).

[12] ICCPR, art. 14(3); American Convention, art. 8 (2).

[13] ICCPR, art. 9.

[14] ICCPR art. 14(3); American Declaration, art. XXV; American Convention, art. 8(1).

[15] ICCPR, art. 17(1); Universal Declaration, art. 12; American Convention, art. 11(2); American Declaration, arts. IX-X.

[16] ICCPR, art. 9(1); Universal Declaration, art.9; American Declaration, art. XXV; American Convention, art. 7(3).

-11-

Addendum 23

**33**

p. The right to have his detention reviewed by a court without undue delay[17].

30. Counsel were ineffective in the *voir dire*[18] of prospective jurors in Mr. Dellinger's trial including, but not limited to, the following:

    i.    Counsel failed to conduct an adequate *voir dire* that would have exposed biases prejudicial to Mr. Dellinger held by some of the jurors. Examples of this failure include failure to discover jurors who were relatives and close friends of law enforcement officials and failing to discover jurors who had been victims of crime or were close to crime victims;

    ii.    Counsel failed to challenge, for cause, those jurors who held some kind of bias against Mr. Dellinger or any class or group to which he belongs. Had trial counsel fulfilled this duty, the jurors with biases against Mr. Dellinger would have been excluded and Mr. Miller and Mrs. Thomas could have applied their peremptory strikes more strategically; and

    iii.    Counsel failed to question adequately prospective jurors regarding what they had heard about the case from other prospective jurors in the *venire*, media reports and acquaintances. *See also, Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966).

31. Trial counsel were ineffective for failing to challenge the Court's ruling that evidence regarding Mr. Dellinger's alleged involvement in the burning of Mr. Griffin's trailer could be

---

[17] ICCPR, art. 9(3); Universal Declaration, art.9; American Declaration, art. XXV; American Convention art. 7(3).

[18] Counsel's failure to conduct a constitutionally sound *voir dire* of Mr. Dellinger's jury panel violates their professional duty to Mr. Dellinger. *See 1989 ABA Guidelines* 11.7.2.

-12-

Addendum 23

34

introduced in the State's case in chief pursuant to T. R. Ev. 404(b) where the Court had also

denied the State's motion to consolidate that arson case with the case involving Connie Branam.

32. Trial counsel were ineffective for failing to perfect the issue of the admission of

evidence seized pursuant to an unconstitutional search warrant. Counsel failed to inquire into the

nature of the "consent" allegedly given law enforcement by Lynda Dellinger or Angela Gray. Had

counsel properly presented the evidence, the Court would have learned that the alleged consent

was granted only after law enforcement personnel overbore Mrs. Dellinger's and Ms. Gray's

wills.

33. Mr. Miller argued in his opening statement at the guilt/innocence phase of the trial

that evidence introduced as regards Mr. Sutton is evidence introduced as regards Mr. Dellinger.

He made this argument despite the absence of any joint-defense agreement entered into by Mr.

Dellinger. During his case, Mr. Sutton introduced false evidence concerning a headlight. The

falsity of the evidence was discovered by a juror or jurors and was discussed by the jury before

and during their deliberations. Mr. Miller's opening statement belied his attempt during his

closing arguments to distance Mr. Dellinger from the catastrophic results of Mr. Sutton's

malfeasance. In addition, the need for severance, as perceived by the appellate court on direct

appeal, was put into question. Essentially, Mr. Dellinger's counsel abdicated their duty to

advocate for their client.

34. Counsel rendered ineffective assistance during the trial itself. Some examples follow.

Because counsel has been unable to review the record thoroughly, these examples are

demonstrative only and are by no means exhaustive.

35. Although no evidence was introduced to establish the gender, let alone the identity, of

-13-

Addendum 23

**35**

the individuals involved in the altercation at the side of the Alcoa Highway, trial counsel failed to bring this out during closing arguments. This was particularly devastating to Mr. Dellinger given the circumstantial nature of both cases, the introduction by Sutton of the headlight and the fact that the altercation alongside the Alcoa Highway occurred in Blount County and not in Sevier County.

36. Trial counsel made no objection to Sutton's introduction of the headlight. Counsel failed to move for a mistrial when the false nature of the evidence was revealed.

37. Mr. Dellinger never waived his right to testify on his own behalf. Trial counsel never consulted him about this right and the advantages and disadvantages of exercising it. Indeed, trial counsel advised Mr. Dellinger that everything was under control and his testimony would not be needed.

38. Mr. Dellinger's Ineffective Assistance of Counsel at Trial Claim is not waived because this post-conviction proceeding is the first proceeding in which that claim is available for presentation.

## CLAIM 2: ILLEGAL SEARCH CLAIM

39. Authorities violated Article I, §§ 7, 8, 9 and 16 and Article II,§ 16 of the Tennessee Constitution and Amendments IV, VIII, and XIV to the United States Constitution by searching Mr. Dellinger's home with a warrant obtained through the deception of an agent of the state.

40. Mr. Dellinger hereby incorporates into this claim for relief, by express reference, all other paragraphs contained in this amended petition, all pleadings filed in this case previously and to be filed subsequent to the filing of this petition, as well as all appellate briefing (including

-14-

Addendum 23

**36**

certiorari litigation), filed by Mr. Dellinger in connection with the above-referenced criminal case and the companion Blount County case Trial No. C-6669 and Post-Conviction No. C-14432, and any further amended motions or petitions to be filed by Mr. Dellinger at any time in the future.

41. The claim set forth herein is made in part based upon information and belief, and in part based upon investigations and facts known to Mr. Dellinger, through the exercise of due diligence, to date. Because the Court has denied counsel the time needed to meet his statutory, ethical and constitutional duties, however, Mr. Dellinger is incapable of alleging with more specificity and/or with more factual certainty all of the facts that may be available or that may exist in support of this claim. The facts in support of this claim, as well as the contours of the claim itself, are necessarily incomplete as a result.

42. Set forth herein is a statement of the constitutional/legal claims of which Mr. Dellinger is aware at this time, and those facts which he knows or has reason to believe are true, despite the denial of sufficient resources and access to the relevant materials, documents, files, information and/or evidence. Mr. Dellinger reserves the right to amend this claim and/or add additional claims once he has had access to all relevant files, documents, information, material and/or evidence to which he is entitled, and thereafter sufficient time to investigate and develop facts and witnesses in support of this and/or other claims that may arise once he has had that access.

43. Sevier County Judge Charles Sexton issued a search warrant for Mr. Dellinger's property based on the affidavit of Blount County detective James Widener. The morning the Sevier County trial began, counsel for Mr. Dellinger filed a motion to suppress the results of the search based on the fact that Mr. Widener had lied in his sworn affidavit. The trial court refuses

-15-

Addendum 23

37

Case 3:07-cv-00030-TAV-CCS    Document 52-1    Filed 09/29/14    Page 41 of 105
PageID #: 519

to hear the motion.

44. During cross-examination, Mr. Widener admitted that he had presented false information under oath in order to obtain the search warrant. Despite this admission that the basis for the search warrant was a lie. The trial court permitted the evidence of the search to come in and be considered.

45. Although the Court found that the search warrant was unconstitutional, the Court noted that because the State had proceeded on a theory of consent, the evidence discovered as a result of the search was admissible. The Court's ruling is erroneous in that any consent given by Lynda Dellinger or Angela Gray was the result of having their wills overborn by law enforcement. As a result, any "consent" was nonexistent.

46. Mr. Dellinger's Illegal Search Claim is not waived because trial and appellate counsel rendered ineffective assistance of counsel in violation of Article I, §§ 8, 9 and 16 and Article XI, § 16 of the Tennessee Constitution and Amendments VI, VIII, and XIV to the United States Constitution by failing to present this claim to the trial court in a timely fashion and by failing to present this claim on appeal.

## CLAIM 3: PROSECUTORIAL MISCONDUCT

47. The State of Tennessee failed to provide counsel for Mr. Dellinger with exculpatory material in violation of his rights guaranteed under Article I, §§ 8, 9, 16, and 17 and Article XI, § 16 of the Tennessee Constitution and Amendments VI, VIII and XIV to the United States Constitution. *See, Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1195, 10 L.Ed.2d 215 (1963).

48. The State of Tennessee indicted Mr. Dellinger for the arson burning of Tommy

-16-

Griffin's trailer. That case has yet to be resolved. That indictment was issued the same day as the indictment involving Connie Branam. By indicting Mr. Dellinger for the burning of Mr. Griffin's trailer, the State acted in bad faith, attempting to impute guilt for the death of Connie Branam in a backhand manner by linking her death with the burning of Mr. Griffin's trailer.

49. In addition to wrongly indicting Mr. Dellinger for the arson of Mr. Griffin's trailer as a means to ease its burden of proof in the case involving the death of Connie Branam, the State intentionally brought the Connie Branam matter to trial before the Blount County case. According to the State's theory, Mr. Griffin died the night Friday, February 21, 1992. Connie Branam died the following night, Saturday, February 22, 1992. Had the State tried Mr. Dellinger for the murder of Tommy Griffin first, he would not have been death eligible, for no aggravating circumstances existed. Only by trying Mr. Dellinger for the latter conduct in a case with much weaker evidence could the State have the chance of obtaining a death sentence for Mr. Dellinger. The conviction in this present case provided the State with the aggravating factor needed to kill Mr. Dellinger. *See* "Blount can't seek execution for brother's death," *The Mountain Press*, June 18, 1992 (attached). This calculated manipulation of the justice system perverts the underlying purpose of the death penalty to punish the "worst of the worse."

50. Mr. Dellinger hereby incorporates into this claim for relief, by express reference, all other paragraphs contained in this amended petition, all pleadings filed in this case previously and to be filed subsequent to the filing of this petition, as well as all appellate briefing (including certiorari litigation), filed by Mr. Dellinger in connection with the above-referenced criminal case and the companion Blount County case Trial No. C-6669 and Post-Conviction No. C-14432, and any further amended motions or petitions to be filed by Mr. Dellinger at any time in the future.

-17-

51. The claim set forth herein is made in part based upon information and belief, and in part based upon investigations and facts known to Mr. Dellinger, through the exercise of due diligence, to date. Because the Court has denied counsel the time needed to meet his statutory, ethical and constitutional duties, however, Mr. Dellinger is incapable of alleging with more specificity and/or with more factual certainty all of the facts that may be available or that may exist in support of this claim. The facts in support of this claim, as well as the contours of the claim itself, are necessarily incomplete as a result.

52. Set forth herein is a statement of the constitutional/legal claims of which Mr. Dellinger is aware at this time, and those facts which he knows or has reason to believe are true, despite the denial of sufficient resources and access to the relevant materials, documents, files, information and/or evidence. Mr. Dellinger reserves the right to amend this claim and/or add additional claims once he has had access to all relevant files, documents, information, material and/or evidence to which he is entitled, and thereafter sufficient time to investigate and develop facts and witnesses in support of this and/or other claims that may arise once he has had that access.

53. The facts supporting this claim include, but are not limited to, the failure of the Blount County Sheriff's Office to provide counsel for Mr. Dellinger with information regarding another possible suspect, Lester Johnson. Specifically, the State of Tennessee was in possession of information suggesting that Mr. Johnson had both the means and the motive to kill Tommy Griffin and Connie Branam.

54. In addition, the District Attorney General Al Schmutzer had in his possession letters from at least three federal inmates – Bobby Floyd, Troy Turner and Jim Alexander – who claimed



-18-

to have knowledge about the deaths of Connie Branam and Tommy Griffin. Mr. Schmutzer visited Mr. Floyd in Ashland, KY on at least one occasion. The meeting occurred and the letters were received in late 1992 through the early part of February 1993, immediately prior to Mr. Dellinger's trial. None of the letters were provided to Mr. Dellinger's trial counsel. As a result, they were prevented from investigating the claims made by these men.

56. The State's failure in providing Mr. Dellinger with this information impermissibly contaminates the original trial proceedings in this matter and requires the conviction and sentence be vacated.

57. The State failed to turn over audio recordings of wire taps involving other suspects, conversations and interviews made with Mr. Dellinger and recorded statements of witnesses.

58. Mr. Dellinger's Prosecutorial Misconduct Claim is not waived because the information was not available to Mr. Dellinger's trial or appellate counsel as a result of State malfeasance. As a result, these post-conviction proceedings provide Mr. Dellinger with the first opportunity to raise this issue.

## CLAIM 4: IMPROPER HANDLING OF EVIDENCE CLAIM

59. The State of Tennessee violated Mr. Dellinger's rights guaranteed by Article I, §§ 8, 9, and 16 and Article XI, § 16 to the Tennessee Constitution and Amendments VI, VIII, and XIV to the United States Constitution when law enforcement officers failed to maintain the integrity of the evidence collected – both that evidence used against him and that evidence that was collected, but not introduced at trial. This evidence includes, but is not limited to, cigarette butts beer and cans collected at the scene where Connie Branam's remains were found and various shell casings.


-19-

Addendum 23

**41**

Case 3:07-cv-00030-TAV-CCS    Document 52-1    Filed 09/29/14    Page 45 of 105
PageID #: 523

60. Mr. Dellinger hereby incorporates into this claim for relief, by express reference, all other paragraphs contained in this amended petition, all pleadings filed in this case previously and to be filed subsequent to the filing of this petition, as well as all appellate briefing (including certiorari litigation), filed by Mr. Dellinger in connection with the above-referenced criminal case and the companion Blount County case Trial No. C-6669 and Post-Conviction No. C-14432, and any further amended motions or petitions to be filed by Mr. Dellinger at any time in the future.

61. The claim set forth herein is made in part based upon information and belief, and in part based upon investigations and facts known to Mr. Dellinger, through the exercise of due diligence, to date. Because the Court has denied counsel the time needed to meet his statutory, ethical and constitutional duties, however, Mr. Dellinger is incapable of alleging with more specificity and/or with more factual certainty all of the facts that may be available or that may exist in support of this claim. The facts in support of this claim, as well as the contours of the claim itself, are necessarily incomplete as a result.

62. Set forth herein is a statement of the constitutional/legal claims of which Mr. Dellinger is aware at this time, and those facts which he knows or has reason to believe are true, despite the denial of sufficient resources and access to the relevant materials, documents, files, information and/or evidence. Mr. Dellinger reserves the right to amend this claim and/or add additional claims once he has had access to all relevant files, documents, information, material and/or evidence to which he is entitled, and thereafter sufficient time to investigate and develop facts and witnesses in support of this and/or other claims that may arise once he has had that access.

63. The State of Tennessee violated Mr. Dellinger's rights guaranteed by Article I, §§ 8,

-20-

9 and 16 and Article XI, § 16 of the Tennessee Constitution and Amendments VI, VIII and XIV to the United States Constitution when it misplaced/lost/destroyed evidence in this case, prior to Mr. Dellinger or his counsel being able to examine it. That evidence includes, but is not limited to, three beer cans with latent fingerprints recovered from the Connie Branam crime scene; numerous shell casings of varying calibers and manufacturers recovered from the Connie Branam and Tommy Griffin crime scenes, Mr. Dellinger's property, and other property in Gibson Hollow; cigarette butts recovered at the Connie Branam crime scene; and the audio recordings of statements made by Mr. Dellinger and other witnesses.

64. That portion of Mr. Dellinger's Improper Handling of Evidence Claim that relies on the Tennessee Constitution is not waived because *State v. Ferguson*, 2 S.W.3d 912 (199), establishing heightened review of Mr. Dellinger's claim, was decided after the conclusion of Mr. Dellinger's 1993 trial.

65. That portion of Mr. Dellinger's Improper Handling of Evidence Claim that relies on the United States Constitution is not waived because appellate counsel rendered ineffective assistance of counsel in violation of Article I, §§ 8, 9 and 16 and Article XI, § 16 of the Tennessee Constitution and Amendments VI, VIII, and XIV to the United States Constitution by failing to raise it on appeal.

**CLAIM 5: INSUFFICIENT EVIDENCE CLAIM**

66. Mr. Dellinger hereby incorporates into this claim for relief, by express reference, all other paragraphs contained in this amended petition, all pleadings filed in this case previously and to be filed subsequent to the filing of this petition, as well as all appellate briefing (including

-21-

Case 3:07-cv-00030-TAV-CCS    Document 52-1    Filed 09/29/14    Page 47 of 105
PageID #: 525

certiorari litigation), filed by Mr. Dellinger in connection with the above-referenced criminal case and the companion Blount County case Trial No. C-6669 and Post-Conviction No. C-14432, and any further amended motions or petitions to be filed by Mr. Dellinger at any time in the future.

67. The claim set forth herein is made in part based upon information and belief, and in part based upon investigations and facts known to Mr. Dellinger, through the exercise of due diligence, to date. Because the Court has denied counsel the time needed to meet his statutory, ethical and constitutional duties, however, Mr. Dellinger is incapable of alleging with more specificity and/or with more factual certainty all of the facts that may be available or that may exist in support of this claim. The facts in support of this claim, as well as the contours of the claim itself, are necessarily incomplete as a result.

68. Set forth herein is a statement of the constitutional/legal claims of which Mr. Dellinger is aware at this time, and those facts which he knows or has reason to believe are true, despite the denial of sufficient resources and access to the relevant materials, documents, files, information and/or evidence. Mr. Dellinger reserves the right to amend this claim and/or add additional claims once he has had access to all relevant files, documents, information, material and/or evidence to which he is entitled, and thereafter sufficient time to investigate and develop facts and witnesses in support of this and/or other claims that may arise once he has had that access.

69. Mr. Dellinger's conviction for the first-degree murder of Connie Branam violates Article I, §§ 8, 9 and 16 and Article XI, § 16 of the Tennessee Constitution and Amendments VI, VIII and XIV to the United States Constitution because the evidence is insufficient to support a finding that Mr. Dellinger committed premeditated, intentional, malicious murder.

-22-

Addendum 23

**44**

70. The State impermissibly relied on evidence of the death of Tommy Griffin to bolster its contention that Mr. Dellinger was responsible for Connie Branam's death. Without the use of that improper evidence, the State could not have met its burden of proving Mr. Dellinger's guilt beyond reasonable doubt.

71. Mr. Dellinger acknowledges that he presented his insufficient evidence claim on direct appeal and it is therefore "previously determined." This Court should nonetheless reconsider that claim because it entitles Mr. Dellinger to relief.

### CLAIM 6: JURY SEQUESTRATION CLAIM

72. The State of Tennessee violated Mr. Dellinger's rights to a fair trial and impartial jury guaranteed under Article I, §§ 8, 9 and 16 and Article XI, § 16 of the Tennessee Constitution and Amendments V, VI, VII, and XIV to the United States Constitution when the trial court failed to sequester prospective jurors during the jury selection process.

73. Mr. Dellinger's Jury Sequestration Claim is not waived because trial and appellate counsel rendered ineffective assistance of counsel in violation of Article I, §§ 8, 9 and 16 and Article XI, § 16 of the Tennessee Constitution and Amendments VI, VIII, and XIV to the United States Constitution by failing to present this claim to the trial court and on appeal.

### CLAIM 7: JUROR MISCONDUCT CLAIM

74. Mr. Dellinger hereby incorporates into this claim for relief, by express reference, all other paragraphs contained in this amended petition, all pleadings filed in this case previously and to be filed subsequent to the filing of this petition, as well as all appellate briefing (including certiorari litigation), filed by Mr. Dellinger in connection with the above-referenced criminal case

-23-

and the companion Blount County case Trial No. C-6669 and Post-Conviction No. C-14432, and any further amended motions or petitions to be filed by Mr. Dellinger at any time in the future.

75. The claim set forth herein is made in part based upon information and belief, and in part based upon investigations and facts known to Mr. Dellinger, through the exercise of due diligence, to date. Because the Court has denied counsel the time needed to meet his statutory, ethical and constitutional duties, however, Mr. Dellinger is incapable of alleging with more specificity and/or with more factual certainty all of the facts that may be available or that may exist in support of this claim. The facts in support of this claim, as well as the contours of the claim itself, are necessarily incomplete as a result.

76. Set forth herein is a statement of the constitutional/legal claims of which Mr. Dellinger is aware at this time, and those facts which he knows or has reason to believe are true, despite the denial of sufficient resources and access to the relevant materials, documents, files, information and/or evidence. Mr. Dellinger reserves the right to amend this claim and/or add additional claims once he has had access to all relevant files, documents, information, material and/or evidence to which he is entitled, and thereafter sufficient time to investigate and develop facts and witnesses in support of this and/or other claims that may arise once he has had that access.

77. Mr. Dellinger's jury began discussing the case amongst themselves before both defendants had closed their proof, before the State's rebuttal case, before closing arguments, and before their charge by the Court. The deliberations began when it was discovered that the manufacture date on a headlight entered into evidence by Mr. Sutton was inconsistent with the testimony presented. As a result, Mr. Dellinger was denied a right to a fair trial.

-24-

Addendum 23

46

78. Mr. Dellinger's Jury Misconduct Claim is not waived because trial and appellate counsel rendered ineffective assistance of counsel in violation of Article I, §§ 8, 9 and 16 and Article XI, § 16 of the Tennessee Constitution and Amendments VI, VIII, and XIV to the United States Constitution by failing to present this claim to the trial court and on appeal.

### CLAIM 8: INTERNATIONAL LAW CLAIM

79. Article VI, clause 2 of the United States Constitution, the Supremacy Clause, was violated when Mr. Dellinger's rights under treaties to which the United States is bound and customary international law were disregarded. Those rights include, but are not limited to, those rights discussed in paragraphs 28 and 29, *supra*, incorporated herein by reference, and the right to be represented by competent legal counsel during his defense.[19]

80. Mr. Dellinger's International Claim is not waived because trial and appellate counsel rendered ineffective assistance of counsel in violation of Article I, §§ 8, 9 and 16 and Article XI, § 16 of the Tennessee Constitution and Amendments VI, VIII, and XIV to the United States Constitution by failing to present this claim to the trial court and on appeal.

### CLAIM 9: *APPRENDI* CLAIM

81. The indictment against Mr. Dellinger did not allege any aggravating factors. This violates Article I, §§ 8, 9, 14, and 16 and Article XI, § 16 of the Tennessee Constitution and Amendments VI, VIII, and XIV to the United States Constitution.

82. Mr. Dellinger's *Apprendi* claim is not waived since *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 2362-63, 147 L.Ed.2d 435 (2000), the United States Supreme Court

---

[19] ICCPR, art. 14(3); American Convention, art. 8(2).

-25-

47

Addendum 23

that establishes this right, was not decided until after the Tennessee Court of Criminal Appeals decided Mr. Dellinger's direct appeal.

## CLAIM 10: INEFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL

83. Mr. Dellinger hereby incorporates into this claim for relief, by express reference, all other paragraphs contained in this amended petition, all pleadings filed in this case previously and to be filed subsequent to the filing of this petition, as well as all appellate briefing (including certiorari litigation), filed by Mr. Dellinger in connection with the above-referenced criminal case and the companion Blount County case Trial No. C-6669 and Post-Conviction No. C-14432, and any further amended motions or petitions to be filed by Mr. Dellinger at any time in the future.

84. The claim set forth herein is made in part based upon information and belief, and in part based upon investigations and facts known to Mr. Dellinger, through the exercise of due diligence, to date. Because the Court has denied counsel the time needed to meet his statutory, ethical and constitutional duties, however, Mr. Dellinger is incapable of alleging with more specificity and/or with more factual certainty all of the facts that may be available or that may exist in support of this claim. The facts in support of this claim, as well as the contours of the claim itself, are necessarily incomplete as a result.

85. Set forth herein is a statement of the constitutional/legal claims of which Mr. Dellinger is aware at this time, and those facts which he knows or has reason to believe are true, despite the denial of sufficient resources and access to the relevant materials, documents, files, information and/or evidence. Mr. Dellinger reserves the right to amend this claim and/or add additional claims once he has had access to all relevant files, documents, information, material

-26-

48

Addendum 23

Case 3:07-cv-00030-TAV-CCS    Document 52-1    Filed 09/29/14    Page 52 of 105
PageID #: 530

and/or evidence to which he is entitled, and thereafter sufficient time to investigate and develop facts and witnesses in support of this and/or other claims that may arise once he has had that access.

86. The facts below establish Mr. Dellinger's Ineffective Assistance of Counsel on Appeal Claim. The deficiencies of counsel's performance and the prejudice resulting from such deficiencies as articulated in this section are representative, but not exhaustive, of counsel's deficient performance and the resulting prejudice suffered by Mr. Dellinger.

87. Appellate counsel failed to designate a thorough appellate record. Because of appellate counsel's failure, the technical record in this case is incomplete. The lack of a complete record has severely constrained Mr. Dellinger's ability to ensure he raise all claims for relief.

88. Appellate counsel were ineffective for failing to raise the legal inconsistency in the trial court's ruling that evidence regarding Mr. Dellinger's alleged involvement in the burning of Mr. Griffin's trailer could be introduced in the State's case in chief pursuant to T. R. Ev. 404(b) where the Court had also denied the State's motion to consolidate that arson case with the case involving Connie Branam. The failure of counsel to raise the issue combined with the unexplained lack of resolution of that charge resulted in the appellate court finding that the inclusion of evidence about the Tommy Griffin trailer fire was not error. Had appellate counsel complied with their duty, the Court of Criminal Appeals would have vacated Mr. Dellinger's convictions.

89. Appellate counsel were ineffective for failing to raise on direct appeal the trial court's failure to order a mistrial following the headlight evidence debacle. Had appellate counsel complied with their duty and raised this issue, Mr. Dellinger's convictions and sentences would have been vacated.

-27-

90. Appellate counsel failed to raise on appeal Mr. Dellinger's Illegal Search Claim. Because that claim is meritorious, or at least arguably meritorious, appellate counsel's failure to present that claim renders deficient counsel's performance on direct appeal. Because that claim is meritorious, or at least arguably meritorious, a reasonable probability exists that had counsel raised that claim, the Court of Criminal Appeals, and perhaps the Tennessee Supreme Court, would have vacated Mr. Dellinger's convictions and/or sentences.

91. Appellate counsel did not present those portions of Mr. Dellinger's Prosecutorial Misconduct Claim known to them on direct appeal. Because that claim is meritorious, or at least arguably meritorious, appellate counsel's failure to present that claim renders deficient counsel's performance on direct appeal. Because that claim is meritorious, or at least arguably meritorious, a reasonable probability exists that had counsel raised that claim, the Court of Criminal Appeals, and perhaps the Tennessee Supreme Court, would have vacated Mr. Dellinger's convictions and/or sentences.

92. Appellate counsel did not present Mr. Dellinger's Improper Handling of Evidence Claim on direct appeal. Because that claim is meritorious, or at least arguably meritorious, appellate counsel's failure to present that claim renders deficient counsel's performance on direct appeal. Because that claim is meritorious, or at least arguably meritorious, a reasonable probability exists that had counsel raised that claim, the Court of Criminal Appeals, and perhaps the Tennessee Supreme Court, would have vacated Mr. Dellinger's convictions and/or sentences.

93. To the extent this Court concludes that Mr. Dellinger did not present any portion or all of Insufficient Evidence Claim on direct appeal, because any such portion and/or that claim in its entirety is meritorious, or at least arguably meritorious, a reasonable probability exists that had

-28-

counsel raised it properly, the Court of Criminal Appeals, and perhaps the Tennessee Supreme Court, would have vacated Mr. Dellinger's convictions and/or sentences.

94. Appellate counsel did not present Mr. Dellinger's Jury Sequestration Claim on direct appeal. Because that claim is meritorious, or at least arguably meritorious, appellate counsel's failure to present that claim renders deficient counsel's performance on direct appeal. Because that claim is meritorious, or at least arguably meritorious, a reasonable probability exists that had counsel raised that claim, the Court of Criminal Appeals, and perhaps the Tennessee Supreme Court, would have vacated Mr. Dellinger's convictions and/or sentences.

95. Appellate counsel did not present Mr. Dellinger's Juror Misconduct Claim on direct appeal. Because that claim is meritorious, or at least arguably meritorious, appellate counsel's failure to present that claim renders deficient counsel's performance on direct appeal. Because that claim is meritorious, or at least arguably meritorious, a reasonable probability exists that had counsel raised that claim, the Court of Criminal Appeals, and perhaps the Tennessee Supreme Court, would have vacated Mr. Dellinger's convictions and/or sentences.

96. Appellate counsel failed to assert on direct appeal the rights guaranteed Mr. Dellinger under International Law as identified in paragraphs 28 and 29, *supra*, incorporated herein by reference. Because those rights preclude Mr. Dellinger's conviction of first-degree murder, or at least arguably preclude it, appellate counsel's failure to present Mr. Dellinger's rights under International Law renders deficient counsel's performance on direct appeal. Because those rights preclude Mr. Dellinger's conviction of first-degree murder, or at least arguably preclude it a reasonable probability exists that had counsel raised those rights, the Court of Criminal Appeals, and perhaps the Tennessee Supreme Court, would have vacated Mr. Dellinger's convictions

-29-

Addendum 23

51

and/or sentences.

-30-

Addendum 23

52

Case 3:07-cv-00030-TAV-CCS    Document 52-1    Filed 09/29/14    Page 56 of 105
PageID #: 534

## STATEMENT REQUIRED BY TENN. CODE ANN. § 40-30-204(e)

As to any ground for relief for which authority for raising said ground is not contained contemporaneously with the above enumerated allegations supporting the ground, Mr. Dellinger asserts the following allegations of fact explaining why each ground for relief raised in this petition was not previously presented in any earlier proceedings.

1. The ineffective assistance of counsel claims could not have been presented for determination in any prior proceeding and are not waived. First, these claims assert a challenge to the effectiveness of the attorneys who were representing Mr. Dellinger in the only proceedings that preceded the present action. It would have been impossible for these attorneys to allege their own ineffectiveness due to an inherent conflict of interest. Second, while claims of ineffective assistance of counsel may be raised on direct appeal, Tennessee courts discourage that practice as one "fraught with peril." *Thompson v. State*, 958 S.W.2d 156, (Tenn. Crim. App. 1997)(citing *State v. Sluder*, No. 1236, slip op. at 16 (Tenn. Crim. App., March 14, 1990)). An appellant "runs the risk of having the issue resolved 'without an evidentiary hearing which, if held, might be the only way that harm could be shown – a prerequisite for relief in ineffective trial counsel claims.'" *Id.* (quoting *Jimmy Wayne Wilson v. State*, No. 909, slip op. at 10 (Tenn. Crim. App., May 29, 1991)). The Tennessee Court of Criminal Appeals has surmised that the Tennessee Supreme Court may refuse to consider, as premature, ineffective assistance of counsel claims raised on direct appeal. *Id.* For these reasons, claims of ineffective assistance of counsel are not waived. Tenn. Code Ann. § 40-30-

206(g).

2. To the extent that this Court concludes that any issue raised in this petition was not presented at a prior proceeding where that issue could have been presented, Mr. Dellinger did not personally, with knowledge and understanding, waive those issues. Contrary to the ruling of the Tennessee Supreme Court in *House v. State*, 911 S.W.2d 705 (Tenn. 1995), the absence of a personal, knowing and understanding waiver on the part of Mr. Dellinger precludes waiver of the claims raised in this petition.

   (a) Amendments VIII and XIV to the United States Constitution and Article I, §§ 8 and 16 and Article XI, § 16 of the Tennessee Constitution preclude application of the *House* waiver standard to claims involving fundamental rights, as do all the issues raised in this petition. Amendments VIII and XIV to the United States Constitution and Article I, §§ 8 and 16 and Article XI, § 16 of the Tennessee Constitution preclude a court from reaching a conclusion with respect to the waiver of claims from a silent record. For a waiver of fundamental rights to be effective, the record must affirmatively demonstrate a knowing and understanding waiver of such rights. The record contains no such demonstration, and therefore, Amendments VIII and XIV to the United States Constitution and Article I, §§ 8 and 16 and Article XI, § 16of the Tennessee Constitution preclude the Court from concluding that Mr. Dellinger waived the above claims.

   (b) Ineffective assistance of counsel excuses the failure of Mr.

Case 3:07-cv-00030-TAV-CCS   Document 52-1   Filed 09/29/14   Page 58 of 105
PageID #: 536

Dellinger's counsel to raise claims at trial and on direct appeal. Mr. Dellinger had a constitutionally protected right to effective assistance of counsel at his trials and on his direct appeals. Counsel provides ineffective assistance by failing to raise claims that have a reasonable probability that had they been raised, the result of a Mr. Dellinger's trial would have been different. For the reasons in the enumerated paragraphs of this petition, Mr. Dellinger's counsel's failure to raise these claims constitutes a deficient performance. Because Mr. Dellinger received ineffective assistance of counsel in violation Amendment VI to the United States Constitution and Article I, § 9 of the Tennessee Constitution, he is excused from any failure to present the above claims at his trials or on direct appeal.

3. This Court cannot apply the waiver statute to avoid addressing the merits of any claims raised in this petition. In prior cases, Tennessee courts have routinely addressed the merits of claims that were subject to the waiver defense. To address the merits of waived claims in those cases but not address the merits of potentially waived claims in this case would constitute a violation of Mr. Dellinger's right to equal treatment under the law as guaranteed by Amendment XIV to the United States Constitution and Article XI, § 8 of the Tennessee Constitution.

4. Certain grounds raised in this petition involve the constitutionality of the death penalty in this case. This is an area in which the law is constantly changing and thus many of the subparts are subject to new law exceptions

to waiver.

5. Article XI, § 16 of the Tennessee Constitution precludes the waiver of any right included in Tennessee's Declaration of Rights in Article I of the Tennessee Constitution because the rights "shall forever remain inviolate." Article XI, § 16. Consequently, any waiver doctrine cannot apply to claims Mr. Dellinger asserts based on violations of any right contained in Article I.

Addendum 23

**56**

# CONCLUSION

For the reasons presented above, both individually and cumulatively, Mr. Dellinger's

convictions and sentence are constitutionally infirm. Mr. Dellinger requests this Court to grant his

petition for post-conviction relief and enter and order vacating the convictions for first-degree

murder and arson and the resulting sentences.

Respectfully submitted,

Bryan E. Delius, BPR # 15800
124 Court Avenue, Suite 201
Sevierville, TN 37862
(423) 428-3556

Attorney for Petitioner James A. Dellinger

# CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing has been hand-delivered to Assistant Attorney General Steven R. Hawkins or his agent at 125 Court Avenue, Sevierville, Tennessee on this 30th day of June, 2003.

BRYAN E. DELIUS

57

## CERTIFICATE OF COUNSEL

I, Bryan E. Delius, certify that I have investigated possible constitutional violations alleged by Petitioner James A. Dellinger; however, that investigation is not complete. I have raised all non-frivolous claims known to me at this time. I am aware that any ground not raised shall be forever barred by application of Tenn. Code Ann. § 40-30-206(g). I understand the requirements of this certificate as set out in Supreme Court Rule 28 and respectfully submit that I cannot ethically sign the certificate as set out in the rule as I do not know whether I have raised all available non-frivolous issues and would assume that I have not done so, as the investigation into this case remains incomplete and ongoing.

BRYAN E. DELIUS

58

## PETITIONER'S VERIFICATION UNDER OATH
## SUBJECT TO PENALTY FOR PERJURY

I swear (or affirm) under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on ___6/27/03___.
       (Date)

_James Dellinger_
James A. Dellinger

SWORN TO AND SUBSCRIBED before me this the ___ day of June, 2003.

_____
Notary Public

My commission expires: ___5/22/04___

Addendum 23

**59**

Case 3:07-cv-00030-TAV-CCS   Document 52-1   Filed 09/29/14   Page 63 of 105 PageID #: 541

Page 64 of 105    Filed 09/29/14    Document 52-1    PageID #: 542    Case 3:07-cv-00030-TAV-CCS

60

# THE MOUNTAIN PRESS

35¢

County, Tennessee

Vol. 2-92, No. 170 • 10 Pages



## Blount can't seek execution for brother's death

### MORNING

**Today's Weather**

**Day forecast**
Cloudy with a 30 percent chance of thunderstorms. High in the mid 80s.
**Day night**
In the upper 60s to lower

Warm and humid with thundershowers. Between 85 and 90.

**In short**

By LESLIE WILSON
Staff Writer

The district attorney general in Maryville said he will work with Sevier County's district attorney general to try to get two Sevier County men sent to the electric chair.

Blount County District Attorney General Mike Flynn said Wednesday he will not seek the death penalty against Gary Wayne Sutton, 28, of Kodak and his uncle, James A. Dellinger, 41, of Seymour in connection with the February slaying of Tommy Griffin, 24. Griffin was shot in the

back of a head with a shotgun.

"Unfortunately, we don't have any of the enhancing factors that apply," Blount County District Attorney General Mike Flynn said. "Al (Sevier County District Attorney General Al Schmutzer Jr.) and I are just going to have to work together and try to get the same results in Sevier County."

Griffin, formerly of Bluff Heights Road in Sevier County, was found dead Feb. 24 near Little River off U.S. 321 in Walland.

Sutton and Dellinger were charged with first-degree murder in connection with the slaying and are also charged with murder in the slaying of Griffin's sister, Connie

Branam, 34, whose badly burned body was discovered in the burned-out shell of her car in Wears Valley Feb. 28.

Schmutzer said in May he will seek the death penalty in the Sevier County case. Authorities said they believe the two killed Branam as part of an attempt to hide Griffin's death.

The pair also faces two counts of arson each in Sevier County in connection with the blaze that destroyed Griffin's trailer Feb. 21 and the burning of Branam's car.

There are 12 enhancing factors the state takes into consideration when a murder case is presented. If none of the 12 factors are present, prosecutors cannot ask for

the death penalty.

"If any of (the enhancing factors) were present, we would be seeking the death penalty," Flynn said.

The death penalty was an automatic penalty in murder convictions in this state until the late 1970s, when that law was ruled unconstitutional. First-degree murder convictions are now punishable by life in prison or the death penalty. The sentence must now be determined by a jury in a separate hearing.

Sutton and Dellinger are scheduled for arraignment in Blount County Criminal Court Aug. 11 and have a Sept. 21 trial date.

**All aboard for fun**

# Limit may go

# IN THE SEVIER COUNTY CIRCUIT COURT

CIRCUIT COURT
FILED
HOUR _____ _____ M
JUN 3 0 2003
JANETTE LATHAM BALLARD
CIRCUIT COURT CLERK
SEVIER COUNTY, TN

STATE OF TENNESSEE,　　　　　)
　　　　　Respondent,　　　　　　)
　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　)　　Case No.: 96-1185-III[1]
　　　　　　　　　　　　　　　　)　　Post-Conviction
JAMES A. DELLINGER,　　　　　)
　　　　　Petitioner.　　　　　　)

## PETITIONER'S MOTION TO CONSOLIDATE CASES, TO CONTINUE THE JUNE 30, 2003 HEARING AND TO SUBSTITUTE COUNSEL

Petitioner, James A. Dellinger, by counsel, pursuant to Article I, §§ 8, 9, 16 and Article XI, §16 of the Tennessee Constitution, the Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and his rights to a full and fair hearing and due process, and for the reasons set forth below and in the attached affidavit of the Tennessee Post-Conviction Defender, moves for a continuance of his post-conviction hearing which is currently set to begin on June 30, 2003, consolidation of the Sevier County and Blount County cases, and substitution of the Office of the Post-Conviction Defender as counsel in this matter.

## I.　PROCEDURAL HISTORY

The instant case is the Sevier County portion of a double homicide in which the deceased, Connie Branam (Sevier County) and Tommy Griffin (Blount County), were sister and brother. James Dellinger and his co-defendant, Gary Sutton, were convicted of the murders of both deceased individuals. According to the State's theory used to gain the convictions and, in the Blount County case, the death penalty, the motive for killing Connie Branam was that she had

---

[1] This is a companion case to *Dellinger v. State*, Blount County Circuit Court Case No. C-14432, which is presently pending before the Hon. D. Kelly Thomas, Jr.

discovered that Mr. Dellinger and Mr. Sutton had killed her brother. As a result of the State's theory, extensive proof was presented in the Sevier County trial to prove that Mr. Dellinger and Mr. Sutton killed Tommy Griffin in Blount County. After gaining the conviction of both defendants in Sevier County, the State introduced substantial evidence of the killing of Connie Branam in the Blount County trial to prove that Mr. Dellinger and Mr. Sutton had killed Tommy Griffin. In addition, the Sevier County conviction was used as the only aggravating factor that made James Dellinger eligible for a sentence of death. In fact, had both killings occurred in the same jurisdiction, they could have been joined in a single indictment and tried together under *T.R.Crim.P.* 8. Although they had not yet been tried for the killing of Tommy Griffin, the Sevier County court admitted the evidence of the alleged killing in Blount County under T.R.E. 404(b) to show motive, intent, and possibly a common scheme or plan. This reason for admitting the evidence was affirmed on appeal. *State v. Sutton and Dellinger*, No. 03C01-9403-CR-0090 (CCA July 11, 1995) (Permission to Appeal Denied Jan. 22, 1996). Further evidence of the interconnectedness of these cases includes the use of the same evidence in the trials in both counties and that on at least one occasion the Blount County District Attorney General was present for a pretrial hearing in Sevier County. (*See* November 13, 1992 Pretrial Motions, R. Vol. XXIX, p. 2, *lines* 6-9.)

The direct appeal was completed in the instant case on January 22, 1996, when the Tennessee Supreme Court denied permission to appeal. *State v. Sutton and Dellinger*, No. 03C01-9403-CR-0090 (CCA July 11, 1995) (Permission to Appeal Denied Jan. 22, 1996). The direct appeal in the Blount County case was not completed until the United States Supreme Court denied certiorari on December 16, 2002. *Dellinger v. Tennessee*, __U.S.__, 123 S.Ct. 695, 154

Addendum 23

Case 3:07-cv-00030-TAV-CCS    Document 52-1    Filed 09/29/14    Page 66 of 105
PageID #: 544

L.Ed.2d 635 (2002).  The Blount County judgment and sentence had been affirmed by the Court of Criminal Appeals on March 7, 2001, *State v. Dellinger,* No. E1997-00196-CCA-R3-DD, March 7,2001, and by the Tennessee Supreme Court on May 7, 2002, *State v. Dellinger*, 79 S.W.3d 458 (Tenn. 2002).

*Tenn. Code Ann.* § 40-30-202(2) establishes a statute of limitations for the filing of a post-conviction petition of one year from the final action of the highest state appellate court to which an appeal is taken.  As this Court has recognized through its previous orders granting continuances and extensions in this case, the above referenced statute of limitations required the filing of the post-conviction petition in the instant case on or before January 22, 1997 – one year from the date of the denial of permission to appeal by the Tennessee Supreme Court, at a time at which the direct appeal in the Blount County case was still pending.  As this Court has noted, the interconnected nature of the cases required that counsel for Mr. Dellinger, in order to represent his client properly in this Court, must have access to materials concerning the trial in Blount County which were not available until after the conclusion of the direct appeal in that case.  Mr. Dellinger's petition for post-conviction relief in the Blount County case was filed on or about February 28, 2003, approximately two-and-a- half months after the direct appeal became final.

**II.    THE SEVIER COUNTY CASE IS FUNCTIONALLY A CAPITAL CASE.  MR. DELLINGER'S CONSTITUTIONALLY GUARANTEED RIGHTS TO DUE PROCESS AND EQUAL PROTECTION UNDER THE LAW DEMAND THAT THE SEVIER COUNTY POST-CONVICTION BE TREATED AS A CAPITAL CASE, T.C.A. § 40-30-201 *et seq.* NOTWITHSTANDING.**

Mr. Dellinger submits that in order to protect his due process rights under the state and federal constitutions this case must be treated as a capital case regarding the qualifications of counsel and provision of resources.  As noted above, under the theories advanced by the State,

-3-

the charges in Blount County and in this county constituted two separate cases only because they were in two jurisdictions. With the exception of separate jurisdictions, under the theory advanced by the State, both murder charges qualify for joinder under *T.R.Crim. P.* 8(a) and (b). Offenses must be joined under Rule 8(a) if they arise out of the same conduct or the same criminal episode and are known to the prosecuting authority at the time of the indictment. Offenses can be permissibly joined under Rule 8(b) if they "constitute parts of a common scheme or plan or if they are of the same or similar character." It is simply an accident of geography that these cases are not combined before a single court and that Mr. Dellinger consequently has not been afforded the full panoply of protection which Tennessee has provided by statute in the post-conviction of a capital case. As has often been recognized in this matter, representation in either county requires full knowledge of the facts in the other county.

The Tennessee Supreme Court has stated that due process requires the "opportunity to be heard 'at a meaningful time in a meaningful manner.'" *House v. State*, 911 S.W.2d 705, 711 (Tenn. 1995) (citing *Burford v. State*, 845 S.W.2d 204 (Tenn. 1992)). By requiring the appointment of counsel in post-conviction, the Tennessee legislature has recognized the importance of counsel in ensuring the petitioner's right to a meaningful hearing. *See Tenn. Code Ann.* § 40-30-207(b)(1). The Tennessee Supreme Court implements this legislative understanding of the need for counsel through *Tenn. S.Ct. R.* 13. If counsel is important and necessary in post-conviction then the obvious question becomes, what is the scope of counsel's necessary duties? The United States Supreme Court has grappled with this question and has concluded that "the right to counsel necessarily includes a right for that counsel meaningfully to research and present a defendant's claims." *McFarland v. Scott*, 512 U.S. 849, 858, 114 S.Ct.

-4-

Addendum 23

**64**

Case 3:07-cv-00030-TAV-CCS    Document 52-1    Filed 09/29/14    Page 68 of 105
PageID #: 546

2568, 2573, 129 L.Ed.2d 666 (1994).

Meaningful ability to research and present claims necessarily involves the use of investigative and expert resources that have, thus far, been denied to Mr. Dellinger in the instant case through the application of the legal fiction that it is a non-capital case. As noted by the Court in *McFarland*, "[t]he services of investigators and other experts may be critical in the preapplication phase of a habeas corpus proceeding, when possible claims and their factual bases are researched and identified." 512 U.S. at 855, 114 S.Ct. at 2572. Not only has Mr. Dellinger been denied essential investigative and expert resources, his appointed counsel has been placed in the untenable position of being required to provide much of his time pro bono – thus, having either to jeopardize his representation of Mr. Dellinger or sacrifice his and his law practice's well-being. Under *Tenn.S.Ct. R.* 13, § 2(c), attorney fees are set at $40.00 per hour out of court and $50.00 per hour in court. These fees are then capped under subsection (d)(2)(E) at $1000.00 or a total of 25 hours of paid work before counsel is working pro bono. Under subsection (e)(2), the cap can be raised to $2000.00 or 50 hours out of court before counsel is working pro bono. In this complex case requiring the reading of the record of both trials (some 60+ volumes), the review of the trial attorney, district attorney and law enforcement files from both judicial districts and investigation in both Sevier and Blount counties even the most conscientious lawyer cannot be expected to devote the necessary time to preparation without expert and investigative services. The application of Tenn. Code Ann. § 40-30-201 *et seq.* to the instant matter violates Mr. Dellinger's right to due process because it creates a situation in which the State of Tennessee on the one hand mandates qualified representation in post-conviction and on the other denies Mr. Dellinger the tools needed to obtain that representation. The preclusion of providing services in

-5-

this case because it is wrongly viewed as a non-capital matter renders meaningless any recognition by the State that Mr. Dellinger be provided competent representation in these proceedings.

In addition to violating any notion of due process, the current application of the statute denies Mr. Dellinger the equal protection of the law. Indigent defendants in capital cases and in non-capital complex felony cases are entitled to services pre-trial to assist in their defense. Capital post-conviction petitioners are entitled to services to assist them in vindicating their constitutional rights. Because of the designation of the Sevier County case being "non-capital," Mr. Dellinger is not afforded the ability to vindicate his rights. The discrimination lies not only in the difference between a capital and non-capital petitioner, but also in the difference between an indigent and non-indigent petitioner in a non-capital post-conviction case. As a result of his poverty, Mr. Dellinger cannot pursue the effectuation of his constitutional rights. Were he not indigent in the same situation, he would not be forced to forfeit meaningful review of the constitutionality of his conviction and sentence. This difference in treatment between an indigent non-capital petitioner and a similarly placed non-indigent petitioner defies the equal protection of the law guaranteed all Tennesseans by the state and federal constitutions. This Court must cure that failing by continuing this matter and substituting the Office of the Post-Conviction Defender as counsel.

In addition to the problems stated above, currently appointed counsel in this matter may not be qualified to represent Mr. Dellinger even under the non-capital post-conviction standards of Rule 13[2]; he most certainly is not qualified to represent a death-sentenced individual in post-

---

[2] Rule 13 § 2(a) requires the court appointing counsel to "be satisfied that the attorney to be appointed is capable of providing the defendant ... with effective assistance of counsel." Mr. Dellinger submits that Mr. Delius, although undoubtedly a well-qualified criminal trial lawyer,

-6-

conviction. Under Rule 13, § 3(h)

> Counsel eligible to be appointed as post-conviction counsel in capital cases must have the same qualifications as new appellate counsel [*inter alia*, at least six hours of specialized training in the trial and appeal of capital cases (subsections (f) and (g))]; or have trial and appellate experience as counsel of record in state post-conviction proceedings in three felony cases, two homicide cases, or one capital case. They must also have a working knowledge of federal habeas corpus practice ....

Since this case is inextricably connected to the capital post-conviction now under way in Blount County, due process and fundamental fairness mandate that Mr. Dellinger be represented by counsel who meet the higher standards for post-conviction in capital cases. Since, the undersigned counsel of record does not have a working knowledge of federal habeas corpus practice, has not attended capital case training and is not experienced in post-conviction practice, he cannot adequately and competently represent Mr. Dellinger in this matter.

## III. DUTIES OF COUNSEL IN POST-CONVICTION

Representation in a post-conviction case requires counsel to "interview relevant witnesses, including petitioner and prior counsel, and diligently investigate and present all reasonable claims." *Tenn.Sup.Ct.R.* 28 § 6(C)(2). The sweeping assignment issued to post-conviction counsel by Rule 28 § 6(C)(2) is accompanied by counsel's ethical obligations under the Rules of Professional Conduct. *Tenn.Sup.Ct.R.* 8 [Effective March 1, 2003]. Rule 1.1 Comment [5] regarding competence states:

> Competent handling of a particular matter includes inquiry into and

---

lacks the necessary training, experience and knowledge of post-conviction practice to be qualified to represent a petitioner in post-conviction.

-7-

> analysis of the factual and legal elements of the problem, and the use of methods and procedures meeting the standards of competent practitioners. **It also includes adequate preparation.** The required attention and preparation are determined by what is at stake; major litigation and complex transactions ordinarily require more elaborate treatment than matters of lesser consequence.

(Emphasis added.) The instant case clearly meets any description of major and complex litigation. *See* Affidavit of Donald E. Dawson, attached. As noted above, this matter is an inextricable half of the trial that lead to Mr. Dellinger's death sentence in Blount County. What is at stake is Mr. Dellinger's life. There can be no conclusion but that this case requires as much "attention and preparation" as any legal matter could possibly require.

The American Bar Association's *Standards for Criminal Justice: The Defense Function*, and the *ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases* (revised 2003)[3](hereinafter 2003 ABA Guidelines) impose upon post-conviction counsel the duties that attend the representation of defendants at trial. *The Defense Function* § 4-8.5; *2003 ABA Guidelines* 10.7. Specifically, counsel must establish a relationship with his or her client. *The Defense Function* § 4-3.1; *2003 ABA Guidelines* 10.7. Counsel must interview his or her client. *The Defense Function* § 4-3.2; *2003 ABA Guidelines* 10.7. Counsel must promptly pursue available procedure and engage in a motions practice to protect his or her client's rights. *The Defense Function* § 4-3.6; *2003 ABA Guidelines* 10.7. Counsel must conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to the merits of the case and the penalty, including efforts to secure information in the possession of the prosecution and law enforcement authorities. *The Defense Function* § 4-4.1; *2003 ABA*

---

[3] While the *2003 ABA Guidelines* directly apply only to death penalty cases, they are instructive as to the requirements for post-conviction representation in any case.



-8-

Addendum 23

68

*Guidelines* 10.7.

Counsel's statutory and ethical obligations are heightened in this case due to the fact that Mr. Dellinger was sentenced to death in the inextricably intertwined case in Blount County. *See e.g. Gardner v. Florida*, 430 U.S. 349, 357-358, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393, 402 (1977)("Death is a different kind of punishment.")(plurality opinion); *Reid v. Covert*, 354 U.S. 1, 45,46, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957)("The taking of life is irrevocable.")(concurring opinion, Frankfurter, J.). The Tennessee Supreme Court has recognized that capital representation is a comprehensive, complicated and specialized effort for which ordinary professional qualifications and ordinary efforts are inadequate. *Tenn.Sup.Ct.R.* 13 seeks to accommodate for this distinction by establishing a separate and higher set of standards for qualification of counsel in capital cases. *Tenn.Sup.Ct.R.* 13 § 3.

In the instant case, many of these required functions have not been done due both to the undersigned counsel's unfamiliarity with post-conviction practice and procedure and the failure of Tennessee to provide adequate services to indigents in post-conviction. Mr. Dellinger submits that he should not be forced to file his amended petition or be required to go forward with his hearing until such time as an adequate investigation of all issues can be conducted by counsel experienced in post-conviction practice and supported by the necessary services. At present, he is represented by the Office of the Post-Conviction Defender in the Blount County case and that office will, of necessity be investigating all issues in both this and the Blount County cases.

The goals both of judicial economy and finality of decisions are served in this matter by a short delay while this investigation is completed. The Office of the Post-Conviction Defender will be able either to take over this representation or to coordinate with undersigned counsel in the

-9-

Addendum 23

69

The goals both of judicial economy and finality of decisions are served in this matter by a short delay while this investigation is completed. The Office of the Post-Conviction Defender will be able either to take over this representation or to coordinate with undersigned counsel in the preparation of this matter for hearing. Going forward at this time places a cloud over this hearing that may result in reversal either by the Tennessee appellate courts requiring the hearing to be conducted again or by the federal courts authorizing a hearing during federal habeas corpus. Either event will result in further delays in this case.

## IV. DUE PROCESS REQUIRES THE CONSOLIDATION OF THE SEVIER COUNTY AND BLOUNT COUNTY CASES

The interconnectedness of the Sevier and Blount County cases also raises the serious problem that the failure to raise issues in the Sevier County case or the failure to prove issues raised due to the lack of services in the Sevier County case may serve as a collateral estoppel of the issues in the Blount County case. Mr. Dellinger observes that the State has already unfairly benefitted by trying the second in time alleged murder in Sevier County before the first in time alleged murder in Blount County. Had the Blount County case been tried first there would not have been an aggravating factor as the only aggravating factor in Blount County was the conviction in the Sevier County case of a violent felony. Thus, the State was allowed to take advantage of the anomaly in the Tennessee death penalty machinery that permits an offense which was committed after the offense for which the death penalty is given to be considered a prior violent felony constituting the requisite aggravating factor - *i.e.* Tennessee allows conduct that is neither committed nor charged at the time of the commission of the death eligible offense to be

-10-

70

considered prior conduct. Now, if this Court forces this case forward without providing the necessary qualified counsel and investigative and expert services, the State may again reap the windfall of an anomalous procedure by preventing serious and worthy issues from being raised and litigated in Blount County because the petitioner is collaterally estopped from bringing issues he could have brought in Sevier County but did not due to the refusal to grant services and the denial of a full and fair hearing. *See, Gibson v. Trant*, 58 S.W.3d 103 (Tenn. 2001).

As discussed in Section II, *supra*, the Sevier County and Blount County cases are essentially one case freakishly divided only as a consequence of geography. The actions of the State, this Court, and the attorneys have demonstrates clearly that all the parties have viewed the deaths of Connie Branam and Tommy Griffin as part of one criminal event. The following excerpts from the Sevier County transcript of evidence are examples of this unified approach:

> MR. MILLER: You Honor, I have filed a motion for the return of certain personal property, and Mr. Green responded to it.
> THE COURT: Okay.
> MR. MILLER: I believe some boots, and various guns that were seized from Mr. Dellinger's trailer that were not used as evidence in this case, and as far as I can tell, will not be used in Blount County.
> GENERAL GREEN: Obviously, Your Honor, I spoke when I got Mr. Miller's motion -- I think Mr. Webb had filed the same motion some time later. I spoke with Ed Bailey of the district attorney's office in Blount County, and he respectfully requested that they be allowed to keep all the evidence until such time as that matter is concluded, and obviously, that which is not used and is properly returnable would be returned at that time. But there is another pending homicide case in Blount County, and I think it would not be prudent at this time to start giving back evidence.
> THE COURT: Inasmuch as that evidence is not within the confines of the Circuit Court of Sevier County, Tennessee, I will defer ruling on that. I don't believe I'll tell Judge Thomas what evidence to turn loose; he might not appreciate that. (T.R., Vol. XXVIII, p.6.)

* * * * * * * * * * * *

-11-

Addendum 23

71

MR. WEBB: On February 28th [Sutton] was mirandized. And as General Schmutzer stated, at some point during that interview process, Mr. Sutton did not invoke his right to counsel. There will be some more proof offered as to what else happened, and I want the Court to listen to that. There was also a statement apparently made -- let me strike, and back up just a little bit on the February 25th and 28th statement, Your Honor.
THE COURT: Okay.
MR. WEBB: Those statements were taken by Blount County authorities at Sevier County Sheriff's Department and they were tape recorded, and counsel has been provided with a transcript of the tape recordings, and certainly have the right to listen to those. I think it's important for the Court to know that those two were tape recorded. (*Id.*, p.13.)

During one court appearance set for hearing pre-trial motion, District Attorney Michael

Flynn from Blount County was in attendance:

THE COURT: General, I see you have a guest there at your counsel table there with you this morning. General Flynn, we're glad to have you from Blount County.
GENERAL FLYNN: Thank you, Your Honor.

T.R., Vol. XXIX, p.2. Not only did the District Attorney Generals of the two counties work

together; so, too, did law enforcement. James William Widener, detective with Blount County

Sheriff's Department, testified in Sevier County at the hearing on the motion to suppress

statements. (*See* T.R., Vol. XXIX, beginning at p.17.) During cross examination, Mr. Sutton's

attorney Mr. Webb initiated the following exchange:

Q: At that time [2/25/92], had you -- did you have other suspects?
A: At that time sir, just about everybody in Blount County and Sevier County were suspects. It was immediately after -- we found Mr. Griffin at 4:35 the afternoon of the day before these interview [sic], so we really hadn't had time to establish suspects. (*Id.*, p.28.)

-12-

Addendum 23

72

Detective Captain Larry McMahan with the Sevier County Sheriff's Office also testified at the

Sevier County hearing on the motion to suppress the statement. His testimony begins at page 49.

The involvement of these two officers in both the investigation and in the State's case

demonstrate that the State and the Court treated the two killings a **one case**.

At the beginning of the motions hearing, Mr. Greenlee, attorney for Mr. Dellinger's co-

defendant Gary Sutton, argued the following:

> We will get into those motions and it's a little convoluted in the
> sense that they were indicted separately, and the State filed a
> motion to consolidate. Usually, it's a motion to sever that the
> Court considers, and that's how most of the books have been
> written, but we'll have to reverse our thinking a little bit.

*Id.*, page 7. At the close of the hearing proof, Mr. Greenlee stated the following:

> Secondly, although we are objecting to the use of Mr. Sutton's
> statements on these two dates because they do not deal with the
> investigation of Connie Branum's [sic] death. They deal with --
> they were not taken by Sevier County authorities, and we suggest
> to the Court that they are not relevant, do not tend to prove any
> fact or consequence, or any material fact that is pending before this
> court [sic] in the trial concerning the death of Connie Branum [sic].
> (*Id.*, p.51.)

In its ruling, the Court declared

> But in regards to the statement of February 25th, 1992, the Court
> finds that that statement, the first statement given to Officer
> Widener was totally and completely in a non-custodial environment,
> and was initiated at the request of, or at least first of all by Mr.
> Dellinger. Both of the defendants appeared at the Sevier County
> Sheriff's Department, and voluntarily gave statements. Officer
> Widener [from Blount County] testified that at that point he was
> there solely in response to the invitation of these defendants as

-13-

Addendum 23

73

witnesses, people who had information about this case[4], or about the case in Blount County. That statements must be held legally admissible. (*Id.*, p.57.)

The transcript is rife with other instances confirming that all involved looked at these two deaths as part of the same case. From the beginning, the State has treated this as one case: the Blount and Sevier County authorities worked together and the District Attorney Generals from both counties were involved in the proceedings. This Court's actions, statements and rulings during the trial proceedings also demonstrate that the Court perceived this as all part of one case. Due process and basic notions of fairness dictate that the Court cannot now claim that these are two separate matters.

Mr. Dellinger asks this Court to consolidate the Sevier and Blount County cases as to the taking of proof only. Through an interchange agreement, Judge Thomas in the Blount County Criminal Court can hear the evidence on both petitions for post-conviction relief. The witnesses and the evidence will be the same or similar in both hearings because the deaths of Tommy Griffin and Connie Branam are the result of one case.

---

[4] The Court is wrong to find that the statements are made by Messrs. Dellinger and Sutton as "people who had information about this case" because at the time these statements were made, **the body of the deceased in the Sevier County case – Connie Branam – had yet to be found**.

-14-

Addendum 23

**74**

## CONCLUSION

For the reasons set forth above, Petitioner James Dellinger moves this Honorable Court to continue the hearing in this case, to consolidate the two cases and to substitute the Office of the Post-Conviction Defender for present counsel.

Respectfully submitted,

DONALD E. DAWSON, BPR # 10723
Post-Conviction Defender

_____
Catherine Y. Brockenborough, BPR #18340
Assistant Post-Conviction Defender
530 Church Street, Suite 600
Nashville, TN 37243
(615) 741-9331
(615) 741-9430, *fax*

Counsel for Petitioner James A. Dellinger

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing motion has been hand delivered to Assistant District Attorney General Steven R. Hawkins or his agent at 125 Court Avenue, Sevierville, Tennessee, on this 30th day of June, 2003.

_____
Catherine Y. Brockenborough

-15-

# IN THE CIRCUIT COURT FOR SEVIER COUNTY, TENNESSEE

**STATE OF TENNESSEE,**

      **Appellee,**

vs.                                    **No.: 96-1185-III**

**JAMES ANDERSON DELLINGER,**

      **Appellant.**

CIRCUIT COURT
FILED
HOUR _____ M

JUN 3 0 2003

JANE LEE LAYMAN BALLARD
CIRCUIT COURT CLERK
SEVIER COUNTY, TN

## AFFIDAVIT OF DONALD E. DAWSON

The affiant, Donald E. Dawson, having been duly sworn states as follows:

1. I am an attorney duly licensed to practice in the State of Tennessee. Since April 1, 1996, I have been employed as the Post-Conviction Defender for the State of Tennessee. In that capacity, I am responsible for the management of the Office of the Post-Conviction Defender.

2. The Office of the Post-Conviction Defender was established by the Tennessee legislature in 1995 to represent death sentenced inmates in collateral actions challenging their convictions and sentences.

3. Since April 1996, I have practiced exclusively in the area of post-conviction. I have attended and taught at legal seminars on post-conviction practice and have read extensively on the subject.

4. At the present time I am counsel with Assistance Post-Conviction Defender Catherine Brockenborough representing James Dellinger in the post-conviction proceedings in his Blount County conviction and death sentence.

5. A post-conviction proceeding, unlike a direct appeal, requires a full investigation of the case to determine what, if any, investigation was not performed by the original trial counsel. In order to prove a claim of ineffective assistance of counsel, it is necessary to demonstrate that the performance of counsel fell below that required by Article I, Sec. 9 of the Tennessee Constitution and the Sixth Amendment to the United States Constitution. In addition, the petitioner must demonstrate that the substandard performance by counsel was prejudicial. In order to meet this burden it is necessary to investigate the case to learn what could have been developed had the trial attorneys conducted the investigation.

**76**

Addendum 23

6. Any post-conviction investigation requires a careful analysis of all evidence introduced or collected relating to the case in post-conviction and the possibility of seeking expert services to examine the evidence.

7. Based upon my training and experience, the development of a case for post-conviction requires both the services of a trained investigator to investigate the case and the use of expert witnesses to assist in developing and presenting the evidence.

8. It is further my opinion that in the post-conviction case in Sevier County, Bryan Delius has been unable to prepare to represent Mr. Dellinger due to the limitations of Tenn. Code Ann. 40-14-207(b) and Tenn. S.Ct. R. 13 which do not permit the authorization of investigative or expert services in post-conviction in cases which did not result in a death penalty.

9. It is further my opinion that the ability of Mr. Delius to provide the level of assistance of counsel demanded by the due process clauses of the state and federal constitutions is frustrated by the limitation in the appointment of one attorney in non-capital case post-conviction and the limitation on the hourly rate of attorney fees which are undoubtedly below Mr. Delius' hourly overhead. In addition to the low hourly rate, counsel in a non-capital post-conviction is further limited by the statutory cap on attorney fees.

10. The instant case is inextricably linked to the capital case in Blount County. There is little, if any, direct evidence of Mr. Dellinger's guilt in either case. Essentially, to prove that Mr. Dellinger was involved in the murder in Sevier County the State relied heavily on circumstantial evidence that he was involved in the murder in Blount County. Under the State's theory Dellinger and his co-defendant, Sutton, killed Connie Branham in Sevier County because she had learned that they had been involved in killing her brother, Tommy Griffin, in Blount County. In the Blount County case, the State's theory was that Dellinger and Sutton killed Tommy Griffin because only the individuals who killed Tommy Griffin would have a motive to kill Connie Branham.

11. The unique connection of the facts in this case dictates that any counsel representing Mr. Dellinger in Sevier County must thoroughly investigate the case in Blount County and, conversely, any attorney representing Mr. Dellinger in Blount County must thoroughly investigate the Sevier County case.

12. Any court reviewing the performance of counsel in the Sevier County case must be presented all the evidence concerning the Blount County case and vice versa.

13. Therefore, the most economic manner in which to handle these cases would be to have the same counsel on both cases and to consolidate them for hearing.

14. It is further my opinion that if Mr. Dellinger's hearing were to go forward on Monday, June 30, 2003, Mr. Dellinger would be denied his right to a full and fair hearing and due process.

77

Addendum 23

15. Finally, a delay at this time in the Sevier County case will not delay the ultimate conclusion of these cases for either the Petitioners or the families of the victims, nor can it have any prejudice upon the State. Constitutional error will be proven by the same evidence in both cases. Ultimate delay in this case is more likely to be caused by pushing the Sevier County case to hearing without an adequate investigation which would open the door for reversal by either the State Appellate Courts or the Federal Courts.

Further the affiant sayeth not.

Donald E. Dawson, Affiant

Sworn to and subscribed by me
This 26 day of June, 2003.

Notary Public

My Commission Expires: 8/12/03

IN THE SEVIER COUNTY CIRCUIT COURT

CIRCUIT COURT
FILED
HOUR _____ M
JUN 3 0 2003
JANETTE DAY_____ARD
CIRCUIT COURT CLERK
SEVIER COUNTY, TN

STATE OF TENNESSEE,         )
    Respondent,            )
                   )
                   )     Case No.: 96-1185-III
v.                     )     Post-Conviction
                   )
JAMES A. DELLINGER,         )
    Petitioner.            )

## NOTICE OF APPEARANCE

Undersigned counsel, having been appointed to represent Petitioner James Dellinger

pursuant to Tenn. Code Ann. § 40-30-306 in Blount County Case No. C-14432, hereby gives

notice of appearance in this matter for the purpose of arguing the following motions: Petitioner's

Motion to Consolidate Cases, Continue the June 30, 2003 Hearing and Substitute Counsel and

Petitioner's Motion to Disqualify the Honorable Rex Henry Ogle From Serving as Judge in This

Case.

                              Respectfully submitted,

                              DONALD E. DAWSON, BPR # 10723
                              Post-Conviction Defender

                              Catherine Y. Brockenborough, BPR# 18340
                              Assistant Post-Conviction Defender
                              530 Church Street, Suite 600
                              Nashville, TN 37243
                              (615) 741-9331

                              Counsel for Petitioner James A. Dellinger

Addendum 23              **79**

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing motion has been hand delivered to Assistant District Attorney General Steven R. Hawkins or his agent at 125 Court Avenue, Sevierville, Tennessee, on this 30th day of June, 2003.

Catherine Y. Brockenborough

-2-

Addendum 23

80

**IN THE SEVIER COUNTY CIRCUIT COURT**

CIRCUIT COURT
FILED

JUN 3 0 2003

JA... ...
CIRCUIT COURT CLERK
SEVIER COUNTY, TN

| | |
|---|---|
| **STATE OF TENNESSEE,** | ) |
| **Respondent,** | ) |
| | ) |
| | ) |
| **v.** | )    **Case No.: 96-1185-III** |
| | )    **Post-Conviction** |
| **JAMES A. DELLINGER,** | ) |
| **Petitioner.** | ) |

### PETITIONER'S MOTION TO DISQUALIFY THE HONORABLE REX HENRY OGLE FROM SERVING AS JUDGE IN THIS CASE

Petitioner, James A. Dellinger, by undersigned counsel, moves the Honorable Rex Henry Ogle to recuse himself from sitting as judge and fact-finder in this case. Mr. Dellinger makes this motion pursuant to Article I, §§ 8, 9, 16, 17 and Article XI, § 16 of the Tennessee Constitution and the Fifth, Eighth and Fourteenth Amendments to the United States Constitution and presents the following as grounds for this motion.

**I. THE HONORABLE REX HENRY OGLE IS NEEDED AS A WITNESS IN THIS CASE.**

At trial, Mr. Dellinger's co-defendant, Gary Sutton, entered into evidence a car headlight to support his contention that both his car's headlights had been operational on February 21, 1992. Subsequent to its entry into evidence, members of the jury examined the headlight. One juror discovered that the manufacture date on the headlight was inconsistent with the time frame presented by Mr. Sutton. Apparently, that information was made known to the Court and counsel for all the parties.

The day following the discovery of this information, the Court declared

> For the record, the Court was advised of this situation last evening after we had concluded our activities in court. When it was

brought to the Court's attention, the Court advised that it be brought to all counsel's attention, if it had not, in fact, already been done.

This is a grave, grave matter, as grave as any I've ever seen as a lawyer or a judge. It is devastating, or could be, depending on what the jury determined the facts to be.

Counsel for the defendant has properly and duly brought it to the Court's attention, brought it to their clients' attention. Because of what has transpired this morning, I know that it has been further explained to the defendants. They choose to go on. That is their option. That is their peril.

`This Court, as stated by General Schmutzer, and I think correctly, this Court is not aware of any instruction that it can give in regards to how the jury may consider the credibility of any witness. That is -- it is contained in the general charge that all of you have heard this Court give before. That is what the Court will do.

If evidence was offered by anyone in this Court that turns out to be purjury [sic] -- that is a peril anyone runs when they swear under oath to testify truthfully, and I have no control over that other than I will charge the law as I understand it. If perjury has been committed by anyone who's testified, that, as I say, is their problem. That is their peril.

It may work to the detriment of either or both of these defendants. That has been explained to you, gentlemen. The decision as to whether to proceed is yours. But that -- if, in fact, that testimony turns out to be in error to the jury's satisfaction, it could be devastating to you. So I've said all I have to say.

T.R., Vol. XXI, pp. 2014-2015.

The record is silent as to the events that led to the discovery of the manufacture date, the identity of the individual(s) who made the discovery, the procedures that took place to inform the Court, counsel, and Messrs. Dellinger and Sutton. More importantly, the record is absolutely silent as to the procedures taken to ensure that Mr. Dellinger was informed of what had happened, what the possible consequences could be to him of Mr. Sutton's actions, what his options were, and that he knowingly and intelligently waived his right to ask for a mistrial. Based

-2-

Addendum 23

82

on the above statements, this Court has knowledge about these issues, knowledge that Mr. Dellinger has a right to obtain and to present during these post-conviction proceedings. In order to present this information, Mr. Dellinger must call the Hon. Rex Ogle as a witness in this hearing. As a result, the Hon. Rex Ogle must disqualify himself from hearing the evidence.

## II    THIS COURT HAS ALREADY MADE FINDINGS ON THE ULTIMATE ISSUE IN THIS CASE

This Court has previously and prematurely commented on the record concerning the performance of counsel in this case. At the hearing on the motion for new trial, this Court made several comments that indicated that trial counsel did a "good job." By these comments, Judge Ogle has passed judgment on the central issue raised by Mr. Dellinger in his post-conviction petition which is now before the Court.

In order to establish ineffective assistance of counsel, a petitioner must prove (1) that trial counsel's performance fell below the standard of reasonableness and (2) that trial counsel's deficient performance prejudiced petitioner so that confidence in the outcome of the proceeding is undermined. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This Court has already made a factual determination as to the first prong of the *Strickland* test. In the manner in which this Court has made a judicial determination regarding the performance prong of the test for ineffective assistance of counsel in Mr. Dellinger's case, the Court has denied Mr. Dellinger his right to a full and fair hearing on this issue which refuses him the right to due process in the matter presently before the Court and creates at a minimum an appearance of impropriety if this Court should remain the fact-finder in the present proceeding. *See*, Article I, §§ 8, 16 and Article XI, § 16;

-3-

83

Tenn. S. Ct. R. 10, Canons 1, 2 and 3. In addition, the Court has created a vested interest in affirming its own prior conclusion and thus has created an interest in the outcome of the pending proceeding and is incompetent to hear further proceedings in this matter pursuant to Tenn. Code Ann. §17-2-101.

During the motion for new trial, the Court stated on the record:

> Counsel for both defendants have done, at least in the Court's judgment, . . . an excellent job in raising all the issues in a very tough case, and I can well appreciate the labors that you all undertook, and you did a very good job for your client, but the bottom line was that they were overwhelmingly guilty.

T.R. Vol. XXVII (Motion for New Trial; July 23, 1993); p. 5. Later, this Court noted,

> I say again, the Court appreciates the way you all, as members of our profession, have handled our [sic] case. You have done a very good job, and you've, I think, done everything you can do, and you've represented our profession well.

*Id.* at p. 8.

In addition to rendering an opinion on the performance of counsel, this Court has also previously rendered an opinion on the prejudice prong of the test of ineffective assistance of counsel. Again, during the hearing on the motion for a new trial this Court stated

> The issue on the headlight, granted, may, as it turned out, have hurt Mr. Dellinger worse, or it may have impaired what little defense he had, but the uncontradicted proof is that these gentlemen were together throughout the entire criminal enterprise, and it was an enterprise that they killed two innocent people.

*Id.* at p. 5.

The only information known to the Court when these conclusions were made was that counsel filed what appeared to be appropriate motions, appeared in court appropriately dressed and

-4-

performed in a lawyer-like fashion in the courtroom. The Court had no way to know (1) what investigation was or was not done, (2) whether the attorneys had effectively utilized the services the Court had authorized, (3) whether additional services were necessary for counsel to perform their function as required under the state and federal constitutions, (4) whether counsel had formed a working relationship with Mr. Dellinger, and (5) what defenses were available that were not presented.

A trial judge should recuse himself whenever he has any doubt as to his ability to preside impartially in a criminal case or whenever his impartiality can reasonably be questioned. *State v. Hines*, 919 S.W.2d 573, 578 (Tenn.1995)(citations omitted); *State v. Cash*, 867 S.W.2d 741, 749 (Tenn.Crim.App.1993). This is an objective standard. *Alley v. State*, 882 S.W.2d 810, 820 (Tenn.Crim.App.1994).

> Thus, while a trial judge should grant a recusal whenever the judge has any doubts about his or her ability to preside impartially, recusal is also warranted when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.

*Alley*, 882 S.W.2d at 820 (citations omitted). Generally, the trial judge retains discretion over his recusal. *State v. Smith*, 906 S.W.2d 6, 11 (Tenn.Crim.App.1995). Appellate courts will not interfere unless there is an abuse of this discretion in failing to recuse. *See e.g., Caruthers v. State*, 814 S.W.2d 64, 67 (Tenn.Crim.App.1991).

The plain language of Tenn. S. Ct. R. 10, Canon 3E(1)(a),(b),(c), and (d) is that it is not limited to the specific instances listed but rather "Under this rule, a judge is disqualified whenever the judge's impartiality might reasonably be questioned, regardless whether any of the specific rules in Section 3E(1) apply." Tenn. Sup.Ct. R. 10, Canon 3E, Commentary. "Every litigant is entitled to the

Case 3:07-cv-00030-TAV-CCS    Document 52-1    Filed 09/29/14    Page 89 of 105
PageID #: 567

cold neutrality of an impartial judge and should be able to feel that his cause has been tried by a judge who is wholly free, disinterested, impartial and independent." *Wells v. Walter*, 501 S.W.2d 259, 260 (Ky.1973); *see also Leighton v. Henderson*, 220 Tenn. 91, 414 S.W.2d 419, 421 (1967).

## CONCLUSION

Mr. Dellinger's need for the Hon. Rex Henry Ogle to be a witness in this matter and the fact that this Court has previously and prematurely ruled on the issues that are presented in the instant petition for post-conviction relief create, at a minimum, an appearance of impropriety. Therefore, James A. Dellinger requests that the Hon. Rex Henry Ogle recuse himself from this case.

Respectfully submitted,

DONALD E. DAWSON, BPR # 10723
Post-Conviction Defender

Catherine Y. Brockenborough, BPR# 18340
Assistant Post-Conviction Defender
530 Church Street, Suite 600
Nashville, TN 37243
(615) 741-9331

Counsel for Petitioner James A. Dellinger

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing motion has been hand delivered to Assistant District Attorney General Steven R. Hawkins or his agent at 125 Court Avenue, Sevierville, Tennessee, on this 30th day of June, 2003.

Catherine Y. Brockenborough

-6-

**86**

Addendum 23

Case 3:07-cv-00030-TAV-CCS     Document 52-1     Filed 09/29/14     Page 90 of 105
PageID #: 568

# IN THE SEVIER COUNTY CIRCUIT COURT

STATE OF TENNESSEE, )
    Respondent, )
       )
v. )    **Case No.: 96-1185-III**
       )    **Post-Conviction**
JAMES A. DELLINGER, )
    Petitioner. )

CIRCUIT COURT
FILED
HOUR 9:55 A. M
JUL 0 1 2003
JANETTE LAMME ?????
CIRCUIT COURT CLERK
SEVIER COUNTY, TN

## ORDER GRANTING PETITIONER PERMISSION TO FILE INTERLOCUTORY APPEAL

This matter was set on June 30, 2003 for an evidentiary hearing on the petitions for post-conviction relief filed by Petitioner James A. Dellinger and his co-defendant, Gary Sutton. Before Mr. Dellinger presented any evidence on his petition he, through counsel, moved the Court to consolidate for purposes of proof this post-conviction matter with the companion capital post-conviction case now pending in Blount County. Mr. Dellinger asserted that the issues in the instant case are parallel or the same as the issues in the Blount County capital post-conviction case. Mr. Dellinger argued that since the start of the investigation in this case in late February 1992, the State, the Court, and counsel for the parties have treated these matters as a single criminal episode. Only an "accident of geography" has caused these matters to be tried in separate judicial districts. Mr. Dellinger maintains that to now treat these matters as separate cases denies him his rights to due process of law.

In addition, Mr. Dellinger claims that the instant case should be treated as a capital case because of the interconnectedness with the Blount County matter. As a result, Mr. Dellinger asserts that he has the right to competent counsel as contemplated by Tennessee Supreme Court Rule 13 and to the investigative and expert services provided pursuant to that Rule. He requests that the Office of the Post-Conviction Defender – which represents him in the Blount County post-conviction proceedings – be substituted for present counsel and that the trial court be

Addendum 23

87

Case 3:07-cv-00030-TAV-CCS    Document 52-1    Filed 09/29/14    Page 91 of 105
PageID #: 569

allowed to authorize expert and investigative services as needed.

The Court finds that Supreme Court Rule 13 precludes the authorization of expert and investigative services in non-capital post-conviction cases. The Court also recognizes that the instant matter is somewhat more complex than many other first-degree murder post-conviction cases not involving the death penalty. In addition, the Court is aware that the proof in the Sevier County trial involved extensive proof related to the Blount County matter. The Court has ruled that because of the limitations of Rule 13, expert and investigative services are not available to Mr. Dellinger. Further, counsel Bryan E. Delius is limited to compensation of $40.00 per hour in court and $50.00 per hour out of court, with a cap of $1,000.00 total. He can petition this Court to increase the cap to $2,000.00 because of the complexity of the case. To date, Mr. Delius has spent approximately 225 hours ($9,000) out of court and 8 hours ($500) in court in this matter. In addition, he has expended $3,400.00 in expenses.

While the Court has no question that the Blount County Court could hear and evaluate proof on this matter, the Court also has ruled that the cases should not be consolidated at this time. However, it does appear to the Court that these issues could result in protracted litigation as they concern central questions regarding Mr. Dellinger's representation and the application of post-conviction statutes and rules.

88

**WHEREBY, IT IS ORDERED, ADJUDGED and DECREED** that Mr. Dellinger be granted leave to apply for permission to the appeal to the Tennessee Court of Criminal Appeals, pursuant to Rule 9 of the Rules of Appellate Procedure, the issues of consolidation and the constitutionality of post-conviction procedure as it applies in this case, particularly as to compensation of counsel and access to services.

ENTER this __1__ day of __July__, 2003.

_____
JUDGE REX HENRY OGLE
Sevier County Circuit Court

APPROVED FOR ENTRY:

_____
Bryan E. Delius, BPR #15800
124 Court Avenue
Sevierville, TN 37862
(865) 428-3556

_____
Catherine Y. Brockenborough, BPR #18300
Assistant Post-Conviction Defender
530 Church Street, Suite 600
Nashville, TN 37243
(615) 741-9336

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing motion has been hand delivered to Assistant District Attorney General Steven R. Hawkins or his agent at 125 Court Avenue, Sevierville, Tennessee, on this __2nd__ day of __July__, 2003.

_____
Bryan E. Delius

89

Addendum 23

<u>**IN THE CIRCUIT COURT FOR SEVIER COUNTY, TENNESSEE**</u>

**JAMES ANDERSON DELLINGER,**

      **Petitioner,**

**vs.**

**STATE OF TENNESSEE**

      **Respondent.**



CIRCUIT COURT
FILED
HOUR 4:30 m

DEC 0 8 2003

JANETTE LAYMAN-BALLARD
CIRCUIT COURT CLERK
SEVIER COUNTY, TN

**No.: 96-1185-III**

**POST-CONVICTION**

## SUPPLEMENT TO AMENDED PETITION FOR POST-CONVICTION RELIEF

Petitioner James Dellinger, through undersigned counsel, submits this supplement to his post-conviction petition seeking relief from his 1993 convictions of first-degree intentional murder and arson. Mr. Dellinger expressly adopts herein all claims asserted in his *Pro Se* Petition for Post-Conviction Relief from Conviction and Sentence filed on October 24, 1996 and in his Amendments to Petition for Post-Conviction Relief filed on June 30, 2003.

### AMENDMENTS TO CLAIM 1: INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL

1. Mr. Dellinger amends Ground One, paragraph 36 to include the following:

During the trial, Mr. Miller and Mrs. Thomas rendered ineffective assistance when they failed to examine the headlight introduced by counsel for co-defendant Gary Sutton. Their failure to examine the headlight prevented them from discovering that the manufacture date was subsequent to the arrest date of Mr. Dellinger and Mr. Sutton. Had they examined the headlight, they could have objected to its introduction. This failure was detrimental to Mr. Dellinger

because of the devastating effect of the headlight's admission to the outcome of the trial.

2. James Dellinger hereby amends Ground One, to add the following:

Trial counsel Mr. Miller and Mrs. Thomas failed to file a pre-trial motion to suppress the identification of the vehicle observed driving away from the area in which Connie Branam's car and remains were discovered. They failed to obtain the services of an expert in the field of eyewitness identification to assist with their impeachment of the witness' identification at both the motion hearing and at trial. Had counsel obtained these services, they would have been able to keep out the identification or successfully impeach the witness who claimed to see the truck.

### AMENDMENT TO CLAIM 6: JURY SEQUESTRATION CLAIM

James Dellinger hereby amends Ground Six, to add the following:

The sequestration of the jury was violated during the course of the trial when jurors were permitted a "family night" during which they met with family members. The content of any discussions between jurors and their visitors was not monitored by court personnel. The jurors were impermissibly exposed to information and opinions outside the scope of the evidence admitted at trial.

### AMENDMENT TO CLAIM 7: JUROR MISCONDUCT CLAIM

James Dellinger hereby amends Ground Seven, to add the following:

The jury relied improperly on information not introduced into evidence when one juror interpreted for the others the meaning of the date code on the headlight admitted into evidence by counsel for Mr. Sutton. This information was not part of the proof entered into evidence. The information was also improperly shared with the prosecution, resulting in the State calling William

Case 3:07-cv-00030-TAV-CCS   Document 52-1   Filed 09/29/14   Page 95 of 105
PageID #: 573

Barnes as a rebuttal witness.

During guilt/innocence phase deliberations, one juror read his Bible and discussed various passages with another juror to assist him in reaching his verdict.

## CONCLUSION

For the reasons set forth in his *Pro Se* Post-Conviction Petition, his First Amended Post-Conviction Petition and those set forth above, Petitioner James Dellinger submits that he is entitled to have his 1993 convictions and sentences for first degree intentional murder and arson vacated and/or set aside.

Respectfully submitted,

Bryan E. Delius, BPR # 15800
124 Court Avenue, Suite 201
Sevierville, TN 37862
(423) 428-3556

Attorney for Petitioner James A. Dellinger

92

Addendum 23

# CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing has been hand-delivered to Assistant Attorney General Steven R. Hawkins or his agent at 125 Court Avenue, Sevierville, Tennessee on this _07_ day of _Dec._ , 20_23_.

_[signature]_

## PETITIONER'S VERIFICATION UNDER OATH
## SUBJECT TO PENALTY FOR PERJURY

I swear (or affirm) under penalty of perjury that the foregoing is true and correct. Executed on _____.
        (Date)

_____
James Dellinger, Petitioner

SWORN TO AND SUBSCRIBED before me this the
_____ day of_____, 20___.


_____
Notary Public

My commission expires: _____

93

Addendum 23

Addendum 23

# IN THE CIRCUIT COURT FOR SEVIER COUNTY, TENNESSEE

CIRCUIT COURT
FILED
HOUR _____ m
FEB 1 7 2004
JAMES _____
CIRCUIT _____
SEVIER _____, TN

JAMES ANDERSON DELLINGER,  )
                                     )

                                     )

VS.  ) NO.: 96-1185-III

                                     )

                                     )

STATE OF TENNESSEE  )                         ENTERED

## ANSWER TO AMENDMENTS TO PETITION FOR POST-CONVICTION RELIEF AND SUPPLEMENT TO PETITION FOR POST-CONVICTION RELIEF

Now comes the State of Tennessee by and through the District Attorney General's Office for the Fourth Judicial District and hereby answers amendments to Petition for Post-Conviction Relief and says:

1. State of Tennessee has setout in its original answer and again denies that Petitioner's counsel was ineffective in any way and demands strict proof thereof.

2. That Petitioner's claims regarding any illegal search has previously been determined by a court of competent jurisdiction and therefore cannot be made a part of this Post-Conviction hearing.

3. That the search conducted was legal and therefore cannot be made a part of this Post-Conviction hearing.

4. That any search conducted was legal and that such search was given by consent and as stated above this issue has been previously determined.

5. State of Tennessee denies that any prosecutorial misconduct occurred.

6. The allegation that there was an improper handling of evidence should have already been raised in direct appeal

Addendum 23                                    **94**

7. That any allegations of improper handling of evidence does not give rise to any constitutional violation.

8. That Mr. Dellinger's claim of insufficient evidence has been previously decided by a court of competent jurisdiction.

9. The State of Tennessee denies that the jury was improperly sequestered and that there was any misconduct and demands strict proof thereof.

10. The State of Tennessee denies that appellant counsel was in any way ineffective.

11. The State of Tennessee denies any and all other allegations made and demands strict proof thereof.

**RESPECTFULLY SUBMITTED THIS** \_\_\_\_ day of February 2004.

STEVEN R. HAWKINS
**ASSISTANT DISTRICT ATTORNEY GENERAL**
**125 COURT AVENUE, SUITE 301E**
**SEVIERVILLE, TENNESSEE 37862**
**PHONE: (865) 429-7021 EXT. 106**

## CERTIFICATE OF SERVICE

I, Steven R. Hawkins, Assistant District Attorney General for the Fourth Judicial District of the State of Tennessee, do hereby certify that a true and exact copy of the foregoing Answer was mailed to Bryan Delis, Attorney at Law, at 124 Court Avenue, Sevierville, Tennessee 37862-3541, this \_\_\_\_ day of February 2004.

STEVEN R. HAWKINS
**ASSISTANT DISTRICT ATTORNEY GENERAL**
**125 COURT AVENUE, SUITE 301E**
**SEVIERVILLE, TENNESSEE 37862**
**PHONE: (865) 429-7021 EXT. 106**

**95**

# IN THE CIRCUIT COURT FOR SEVIER COUNTY, TENNESSEE

**GARY WAYNE SUTTON**

**NO: 97-75-III**
**POST-CONVICTION**

**JAMES ANDERSON DELLINGER**

**NO: 96-1185-III**
**POST-CONVICTION**

**VS.**

**STATE OF TENNESSEE**



CIRCUIT COURT
FILED
HOUR_____ m

AUG 3 0 2004

JANETTE LAYMAN-BALLARD
CIRCUIT COURT CLERK
SEVIER COUNTY, TN

## ORDER OVERRULING PETITION FOR POST-CONVICTION RELIEF

This cause came on to be heard upon the petitions filed by James Dellinger and Gary Sutton for post-conviction relief from their convictions in this court. Based upon the testimony, exhibits, and arguments of counsel from all of which the court finds as follows:

1. That the actions of all counsel regarding the investigation, trial, and appeals of the defendants was consistent with the standards of the Sixth Amendment of the United States Constitution.

2. That the evidence in this case was overwhelming as to the guilt of the defendants and that counsel were diligent and effective in their representation of these defendants.

3. That the court issued a memorandum opinion at the conclusion of the hearings.

**96**

Addendum 23

FROM ALL OF WHICH, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1. That the petitions for post-conviction relief are hereby denied.

2. That the memorandum opinion rendered by the court at the conclusion of the hearing in this matter is hereby incorporated hereby by reference as part of the findings and judgment of this court.

This the 30 day of August, 2004.

REX HENRY OGLE
**CIRCUIT COURT JUDGE**

### CERTIFICATE OF SERVICE

I, Rex Henry Ogle, Circuit Court Judge, certify that a true and correct copy of the foregoing Order has been forwarded this date by placing a copy of same in the United States Post Office, postage prepaid, to the following:

Mr. Tim Moore
Attorney at Law
396 Moore Brand Way
Newport, TN 37821-9408
Attorney for Gary Wayne Sutton

Mr. Bryan Delius
Attorney at Law
124 Court Avenue, Suite 101
Sevierville, TN 37862
Attorney for James Anderson Dellinger

Mr. Al Schmutzer, Jr.
District Attorney Genera
125 Court Avenue, Suite 301
Sevier County Courthouse
Sevierville, TN 37862

This the 30 day of August, 2004.

**97**

Addendum 22

REX HENRY OGLE
CIRCUIT COURT JUDGE

# IN THE CIRCUIT COURT FOR SEVIER COUNTY, TENNESSEE

JAMES DELLINGER,
And, GARY SUTTON,

   Petitioners,

-vs-

STATE OF TENNESSEE,

   Respondent.

)
)
)
)
)
)
)
)
)
)
)

**96-1185-III**
**Judge Ogle**

Post Conviction

---

## NOTICE OF APPEAL

NOTICE is hereby given that **James Dellinger**, Petitioner, hereby appeals to the Tennessee Court of Criminal Appeals from the written Order entered on August 30, 2004 by the Sevier County Circuit Court overruling his Petition for Post Conviction Relief in the above referenced matter.

RESPECTFULLY SUBMITTED,
JAMES DELLINGER

RICHARD L. BURNETTE (018571)
Appointed Counsel for the Petitioner
Law Offices of Richard L. Burnette
Post Office Box 1948
Knoxville, Tennessee 37901
Phone: (865) 637-8946

CIRCUIT COURT
FILED
HOUR_____M

SEP 2 2 2004

JANETTE LAYMAN-BALLARD
CIRCUIT COURT CLERK
SEVIER COUNTY, TN

Addendum 23

98

Case 3:07-cv-00030-TAV-CCS Document 52-1 Filed 09/29/14 Page 102 of 105 PageID #: 580

# IN THE CIRCUIT COURT FOR SEVIER COUNTY, TENNESSEE

| | | |
|---|---|---|
| **JAMES DELLINGER,** And, **GARY SUTTON,** | ) ) ) | |
| *Petitioners,* | ) ) ) | |
| -vs- | ) ) | **96-1185-III** **Judge Ogle** |
| **STATE OF TENNESSEE,** | ) ) ) | Post Conviction |
| *Respondent.* | ) ) | |

## CERTIFICATE OF SERVICE

I hereby certify that pursuant to Rule 5(a) and Rule 20(e) of the *Tennessee Rules of Appellate Procedure,* a true and correct copy of the **NOTICE OF APPEAL** has been served upon the following parties by placing copy of the same in the U.S. Mail, postage prepaid, properly addressed to counsel at office:

Steven R. Hawkins, Esq.
Assistant District Attorney
4th Judicial District
125 Court Avenue, Room 301-E
Sevierville, Tennessee 37862

Paul G. Summers, Esq.
Office of the Attorney General
Post Office Box 20207
Nashville, Tennessee 37202

Tim S. Moore, Esq.
Attorney for Gary Sutton
129 West Depot Street, Suite 1
Greeneville, Tennessee 37743

Office of the Post Conviction Defender
Counsel of Record for the James Dellinger (Blount County proceedings)
530 Church Street, Suite 600
Nashville, Tennessee 37243

CIRCUIT COURT
FILED
HOUR_____M

SEP 2 2 2004

JANETTE LAYMAN-BALLARD
CIRCUIT COURT CLERK
SEVIER COUNTY, TN

Addendum 23

THIS 20th day of September, 2004

RICHARD L. BURNETTE, 018571
Attorney for the Defendant
P.O. Box 1948
Knoxville, Tennessee 37901
(865) 637-8946


cc:     James Dellinger
        Inmate Number:  213865
        Riverbend Maximum Security Institution
        Unit # 2
        7475 Cockrill Bend Road
        Nashville, Tennessee 37209

100

Addendum 23

## CERTIFICATE OF APPELLATE RECORD

I, Janette L.Ballard, Clerk of the Circuit Court of Sevier County, Tennessee, do hereby certify that the following items herewith transmitted to the Court of Appeals are originals or true and correct copies of all or of the designated papers on file in my office in the captioned case.

1.  Technical record attached to the certificate and consisting of 101 pages contained in one volume.

2.  One volume of Transcript filed in my office on December 17, 2004 and authenticated by the Trail Judge or automatically authenticated under T.R.A.P. Rule 24(f).

3.  Exhibits filed in my office on December 17, 2004 and authenticated by the Trial Judge or a provided by T.R.A.P. Rule 24(f) and described as follows:

    Exhibit 1, consisting of Collective Sevier County Record (not filed).
    Exhibit 2, consisting of Collective Blount County Record (not filed).
    Exhibit 3, consisting of photo of burned vehicle.

This 20th day of December 2004.

Janette L. Ballard
Clerk of the Circuit Court
Sevier County, Tennessee

Addendum 23