**ORIGINAL**

IN THE COURT OF CRIMINAL APPEALS FOR THE STATE OF TENNESSEE
AT KNOXVILLE

GARY W. SUTTON,
And, JAMES A. DELLINGER.

　　　　　*Appellants*

vs.

STATE OF TENNESSEE,

　　　　　*Appelleet.*

)
)
)
)
)
)
)
)
)
)
)

**FILED**
JUL 1 3 2005
Clerk of the Appellate Court
**DROP BOX**

TCCA No.:　E2004-01068-CCA-R#-PC
　　　　　SEVIER COUNTY #: 96-1185-III

---

## BRIEF OF APPELLANT JAMES A. DELLINGER

---

ON APPEAL AS OF RIGHT FROM THE JUDGMENT OF
THE CIRCUIT COURT FOR SEVIER COUNTY, TENNESSEE

POST-CONVICTION

APPOINTED ATTORNEY
FOR THE APPELLANT

RICHARD L. BURNETTE
Law Offices of Richard Burnette
Post Office Box 1948
Knoxville, Tennessee 37901
Telephone: (865) 637-8946
B.P.R. No.: 018571

ORAL ARGUMENT REQUESTED

Addendum 24

Case 3:07-cv-00030-TAV-CCS　　Document 52-2　　Filed 09/29/14　　Page 1 of 38
PageID #: 584

# IN THE COURT OF CRIMINAL APPEALS FOR THE STATE OF TENNESSEE
## AT KNOXVILLE

GARY W. SUTTON,
And, JAMES A. DELLINGER,                )
                                        )
                                        )
        *Appellants*                    )
                                        )
                                        )
vs.                                     )   TCCA No.:   E2004-01068-CCA-R#-PC
                                        )             SEVIER COUNTY #: 96-1185-III
                                        )
STATE OF TENNESSEE,                     )
                                        )
        *Appelleet.*                    )

## BRIEF OF APPELLANT JAMES A. DELLINGER

### ON APPEAL AS OF RIGHT FROM THE JUDGMENT OF
### THE CIRCUIT COURT FOR SEVIER COUNTY, TENNESSEE

### POST-CONVICTION

APPOINTED ATTORNEY
FOR THE APPELLANT

RICHARD L. BURNETTE
Law Offices of Richard Burnette
Post Office Box 1948
Knoxville, Tennessee 37901
Telephone: (865) 637-8946
B.P.R. No.:  018571

### ORAL ARGUMENT REQUESTED

Addendum 24

Case 3:07-cv-00030-TAV-CCS     Document 52-2     Filed 09/29/14     Page 2 of 38
PageID #: 585

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . 1

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    I.    PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE
OF COUNSEL AT TRIAL AND ON DIRECT APPEAL.. . . . . . . . . . . 8

    II.    PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT
TO TESTIFY AT TRIAL BY HIS ATTORNEYS INADEQUATE
PREPARATION OF THIS CASE. . . . . . . . . . . . . . . 13

    III.    THE JURY DELIBERATIONS WERE TAINTED BY IMPERMISSIBLE
OUTSIDE INFLUENCE, REQUIRING A NEW TRIAL . . . . . . . . . . 14

    IV.    THE STATE FAILED TO PROVIDE THE DEFENDANTS
WITH CERTAIN BRADY MATERIALS, VIOLATING HIS
DUE PROCESS RIGHTS. . . . . . . . . . . . . . . 15

    V.    THE PETITIONER WAS DENIED DUE PROCESS AND HIS
CONSTIUTIONAL RIGHT TO A FAIR TRIAL BASED UPON
THE CUMULATIVE EFFET OF THE ERRORS AT TRIAL
AND ON APPEAL. . . . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

i

Addendum 24

# TABLE OF AUTHORITIES

**CASES:**

Douglas v. California, 372 U.S. 353, 83 S.Ct. 814 (1963) . . . . . . . . . . . . . . . .  11

Strickland v. Washington, 466  U.S. 668, 104 S.Ct. 2052 (1984) . . . . . . . . . . .  12

Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194 (1963); . . . . . . . . . . . . . . . .  12

**State Cases:**

Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975) . . . . . . . . . . . . . . . . . . . . .  12

Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1991) . . . . . . . . . . . . . . . . . . . .  12

Butler v. State, 789 S.W.2d 898 (Tenn. 1990)  . . . . . . . . . . . . . . . . . . . .  12

Campbell v. State, 904 S.W.2d 594, (Tenn. 1995)       . . . . . . . . . . . . . . . .  11

Cauthern v. State, 145 S.W.3d 571 (Tenn. Crim. App. 2004) . . . . . . . . . . . . . .  15

Momon v. State, 18 S.W.3d 152 (Tenn. 1995)       . . . . . . . . . . . . . . . .  14, 16

Powers v. State, 942 S.W.2d 551 (Tenn. Crim. App. 1996) . . . . . . . . . . . . . . .  12

State v. Benson, 973 S.W.2d 202 (Tenn. 1998). . . . . . . . . . . . . . . . . . . . .  14

State v. Dellinger, 79 S.W.3d 458 (Tenn. 2002);       . . . . . . . . . . . . . . . .  3

State v. Sutton, 1995 WL 406953 (Tenn.Crim.App. 1995) . . . . . . . . . . .  3, 4, 6, 11

State v. Taylor, 968 S.W.2d 900 (Tenn. Crim. App. 1997) . . . . . . . . . . . . . . .  16

Walsh v. State, __ S.W.3d ___, 2005 WL 1491138 (Tenn. 2005)  . . . . . . . . . . .  15

**STATUTES**

*Tenn. Code Ann.* § 40-30-201 . . . . . . . . . . . . . . . . . . . . . . . . . .  16

Addendum 24

Case 3:07-cv-00030-TAV-CCS     Document 52-2     Filed 09/29/14     Page 4 of 38
PageID #: 587

# STATEMENT OF THE ISSUES

1.  WHETHER OR NOT THE PETITIONER RECEIVED EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL AND ON DIRECT APPEAL?

2.  WHETHER OR NOT THE PETITIONER WAS EFFECTIVELY DENIED HIS RIGHT TO TESTIFY AT TRIAL BY HIS COUNSEL'S LACK OF TRIAL PREPARATION?

3.  WHETHER OR NOT THE JURY DELIBERATIONS WERE TAINTED BY IMPERMISSIBLE OUTSIDE INFLUENCE, REQUIRING A NEW TRIAL?

4.  WHETHER OR NOT THE STATE'S FAILURE TO PROVIDE CERTAIN <u>BRADY</u> MATERIALS VIOLATED THE PETITIONER'S DUE PROCESS RIGHTS TO A FAIR TRIAL, REQUIRING A NEW TRIAL.

5.  WHETHER OR NOT THE PETITIONER WAS DENIED DUE PROCESS AND HIS RIGHT TO A FAIR TRIAL BASED UPON CUMULATIVE ERRORS IN THE TRIAL AND APPELLATE COURT?

Addendum 24

## PRELIMINARY STATEMENT

### Record on Appeal

The Record on Appeal results from a consolidation of this case and Gary Sutton's appeal, and collectively it appears to represent the entire record from the post-conviction proceedings in the trial court. As such there are two separate technical records. Appellant Dellinger shall reference the Technical Record as particular to his case "(T.R., p. ___)". Any references to the Sutton technical record shall be so noted in the specific cite.

Appellant Dellinger shall reference the transcripts as follows:

| Hearing Date | Cite |
|---|---|
| Volume One:  Hearing of June 30, 2003. | "Vol. 1" |
| Volume Two:  Hearing of February 24, 2004. | "Vol. 2" |
| Volume Three:  Hearing of Feb. 24, 2004 – continued | "Vol. 3" |
| Volume Four:  Memorandum Opinion | "Vol. 4" |

There are Sixteen (16) Exhibits. References to the Exhibits shall be by exhibit number. "(Exhibit ___)."

In accordance with T.R.A.P. 27(f), the parties shall be referred to as they were in the trial court below.

# STATEMENT OF THE CASE

On October 24, 1996, the petitioner, acting *pro se,* filed his post-conviction Petition for Relief from Sentence or Conviction in these consolidated case. (TR. I, p. 1). The trial court later appointed counsel to represent the Petitioner. (See, Trans. 6/30/03, pp. 64-5).

On June 30, 2003, this matter came on for a consolidated evidentiary hearing on the Appellants' Amended Petitions for Post Conviction Relief, before the Honorable Rex Henry Ogle, Circuit Court Judge for Sevier County, Tennessee. (Vol., p. 1). The Trial Court also heard arguments on Petitioner's Motion to Consolidate and Substitute Counsel, and Motion to Disqaulify Judge Ogle from presiding over the post conviction hearings. (TR., p. 61 - 81).

In the interim of the June 30, 2003 and February 24, 2004 hearing dates, appellate review of certain issues were sought by way of interlocutory appeal. (TR., p. 87). This Court denied Petitioner Dellinger's application for appellate review on those issues.

On February 24, 2004, the evidentiary hearing resumed and was concluded on that date. (Vols. I, II). On that date, the trial court stated its reasons for denying relief in a memorandum opinion issued from the bench. (Vol. IV).

On August 30, 2004, the trial court entered a written Order Overruling Petition For Post-Conviction Releif. (TR, p. 96).

On September 22, 2004, the petitioner filed a timely Notice of Appeal to this Court. (TR., p. 98).

On January 26, 2005, this Court consolidated this appeal with that of the appeal of co-defendant Gary Wayne Sutton.

## STATEMENT OF THE FACTS[1]

### Background

This is a post conviction case, seeking relief from a murder conviction entered upon a jury verdict in Sevier County Circuit Court, the Honorable Rex Henry Ogle presiding judge. (See, TR.) This Sevier County case is intertwined with a related Blount County case, in which Petitioners James Dellinger and Gary Sutton were also convicted of murder. State v. Dellinger, 79 S.W.3d 458 (Tenn. 2002); State v. Sutton, 03C01-9403-CR-0090, 1995 WL 406953 (Tenn.Crim.App. 1995)(copy attached as Appendix One).. As a result of the Sevier County conviction, each of the Petitioners received a life sentence. Sutton, supra. In the Blount County case, the Petitioners were sentenced to death. Dellinger, supra. The Sevier County conviction was the primary aggravating factor used by the State as a basis for seeking the death sentence in Blount County. See, Dellinger, at 471.

A concise statement of the facts charged by the State in each of these cases are found in the appellate court's statement of facts in each opinion. Dellinger; Sutton, supra. A reading of this Court's decision from the direct appeal demonstrates how intertwined these two cases were treated at trial. Sutton At the post conviction hearing, the Sevier County trial was described as two trials in one; involving the facts of the Sevier County murder charge, and the Blount County murder charge. (E.g., Vol. 1, p. 37).

Petitioner Dellinger was represented in the Sevier County trial by Mr. Ed Miller, District Public Defender for the 4th Judicial District, and attorney Susanna Thomas (Webb), an assistant public defender in Mr. Miller's office at the time of this trial. (Vol. II, p. 13). These attorneys also represented Mr. Dellinger on his direct appeal to this Court. Sutton, supra.

---

[1] Petitioner Dellinger agrees with the Statement of Facts set out in Sutton's Brief, but provides this additional statement of facts relevant to Dellinger's arguments for relief.

## The Post Conviction Hearing Evidence

Just prior to closing the proof at trial, trial counsel for Sutton introduced a number of headlights that counsel asserted were from Sutton's camaro – the vehicle owned by Sutton at the time of his arrest in this case. (E.g., Vol II, p. 88-9). The headlights were introduced by Sutton's counsel in an attempt to show the jury that Sutton's vehicle could not have been the camaro at issue in the Blount County case because Sutton's camaro, did not have a burned out headlight. See, Sutton, supra; (Vol. I, p. 38, 47); (Vol II, p. 88-9). After introducing the headlights into evidence, Sutton's counsel published the headlights to the jury; at which time one of the juror's noticed a manufacture's date stamped on one of the headlights that was subsequent to the dates the victims were killed. (E.g., Vol. I, p. 50).

No care was taken in extracting the lights from the vehicle. (See, Vol. II, pp. 95-6). The headlights were published to the jury in a manner in which it was impossible to even identify the position of the headlights from the vehicle – that is, which headlight was supposedly burned out. (Vol. II, 95). Sutton's counsel testified that it was possible that the headlight with the recent manufactured date was from the opposite side of the vehicle. (Vol. II, pp. 95-6).

Counsel for Petitioner Dellinger did not investigate the matters pertaining to the headlight, and allowed the evidence to come in and be published to the jury unchecked. (Vol II., p. 165).

Throughout the post conviction proceedings, the headlight evidence was consistently referred to by the Court and witnesses as "devastating." (Vol. 1, p. 28, 83)(Vol. II, p. 15, 17). Counsel for Dellinger testified that the headlight evidence "destroyed" any credibility they had with the jury. (Vol. II, p. 17).

Counsel for Dellinger put on no testimony or other evidence in an attempt to counter the damage done to the case by the headlight evidence. (Vol. III, pp. 182-83). Counsel did not meet with Mr. Dellinger that evening, or otherwise discuss the possibility of Dellinger testifying about the devastating evidence. (Vol. III, pp. 182-83; 205). Counsel did not seek a mistrial on this issue, or request a continuance to have time to investigate the headlight. (Vol. III., pp. 182, 186). The headlight issue was not specifically addressed on direct appeal. Sutton, supra.

At no point, did counsel meet with Mr. Dellinger and prepare his testimony for trial. (Vol. III, pp. 179, 244).

The facts and circumstance related to the Blount County events were never investigated in any manner. (Vol. III, p. 208).

At trial in Sevier County, Barbara Gordon testified that she saw a truck that matched the description of Dellinger's truck traveling on a road leading away from the site where the victim's body had been discovered. Sutton. Ms. Gordon's testimony was described as "very damaging." (Vol. I, p. 46).

At the post conviction hearing, Johnny McCarter, Ms. Gordon's foster child and one of the persons that discovered the victim's body in her vehicle, testified that Ms. Gordon's identification and description of the truck was the result of her being coached by law enforcement, as she had initially described the truck she saw as a bronco or blazer, not a pick up. (Vol. III, p. 215-16). Further, Mr. McCarter testified that Ms. Gordon's trial testimony was inconsistent with the roadway layout, as one could not access that road from the area in which Ms. Branum's body was discovered. (Vol. III, p. 227). Counsel for Defendant Dellinger failed to secure Mr. McCarter as a witness to contradict or rebut Ms. Gordon's testimony. (See, Vol. III, p. 231).

Addendum 24

Among the evidence the state gathered at the crime scene, there were casts of tire tracks that did not match Dellinger's truck, and beer cans that bore fingerprints of persons other than Dellinger and Sutton. (Vol. II, pp. 148-49). Dellinger's counsel confirmed that these items were not obtained from the State and utilized in the preparation of Dellinger's defense. (Vol. II., p. 149).

Proof was introduced at various stages of the post conviction proceedings regarding the fact that the State had in its possession information regarding other individuals that had both motive and opportunity to kill both of the victims in these cases. (Vol. II, p. 53, 145); (Vol. III, p. 206). Also, the proof showed that the State did not inform the defense about some potential witnesses that District Attorney General Al Schmutzer had met with at a federal prison facility regarding this case. (Vol. II., pp. 57-8). These inmates had contacted General Schmutzer and member of the Sevier County Sheriff's office, stating that they had information pertaining to this case. (Vol. II., p. 57).

At least one juror read from the Bible in the jury room during the deliberation process of the guilty or innocence phase. (Vol. II, p. 104).

Counsel for Dellinger failed to pursue certain issues on appeal that had been contested in the trial court, including the validity of the search of Dellinger's property. Sutton, supra. Counsel failed to secure the testimony of Linda Dellinger, who would have testified at the appropriate time that she did not give consent for officers to search her property. (Vol. III, p. 240). The issue relating to a change of venue was not pursued on appeal. Sutton.

Mr. Dellinger testified that his attorneys met with him only three times at the jail in preparation of his trial, and that he was not kept informed of the status of his case. (Vol. III, p.

242-45). Mr. Dellinger testified that at no time did his attorneys prepare his testimony for trial. (Vol. III, p. 244).

In the Sevier County case, Mr. Dellinger and Mr. Sutton had also been charged with arson related to the burning of Tommy Griffin's trailer, the murder victim in the Blount County case. That charge was severed and never prosecuted. (Vol. II, p. 68). Evidence of the burning of the trailer was however admitted at trial in the Sevier County case. Sutton.

## ARGUMENT

I.  **PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL AND ON DIRECT APPEAL.**

   A.  **Petitioner was denied the effective assistance of counsel when his attorney's failed in their duty to adequately investigate and prepare for trial.**

The Petitioner received ineffective assistance of counsel, because his attorneys failed in their duty to investigate and prepare for trial. Most importantly, the Petitioner's trial counsel failed to investigate the facts related to the Blount County murder of Tommy Griffen, despite knowing that those issues would be used by the State at trial in the Sevier County case. Nothing pertaining to the Blount County case was investigated, and relevant reports and information were ignored. (Vol. III, pp. 206-208, and 212-235).

Additionally, the Sevier County case was not properly investigated. Among the evidence the state gathered at the crime scene, there were casts of tire tracks that did not match Dellinger's truck, and beer cans that bore fingerprints of persons other than Dellinger and Sutton. (Vol. II, pp. 148-49). Dellinger's counsel confirmed that these items were not obtained from the State and utilized in the preparation of Dellinger's defense. (Vol. II., p. 149). Certainly, evidence of other people being at the remote scene where the victim's body was discovered would be

relevant to show that someone other than Mr. Dellinger committed the murder. Counsel failed in his obligation to present this evidence to the jury.

Next, trial counsel failed to secure the testimony of Johnny McCarter to contradict and rebut the damaging testimony given at trial by Ms. Gordon. If called at trial, Mr. McCarter would have testified that Ms. Gordon's identification and description of the truck was the result of her being coached by law enforcement, as she had initially described the truck she saw as a bronco or blazer, not a pick up. (Vol. III, p. 215-16). Further, Mr. McCarter testified that Ms. Gordon's trial testimony was inconsistent with the roadway layout, as one could not access that road from the area in which Ms. Branum's body was discovered. (Vol. III, p. 227). Obviously, Mr. McCarter was extremely familiar with the layout of the crime scene area, as he discovered the body of the victim at the scene. Counsel for Defendant Dellinger failed to secure Mr. McCarter as a witness to contradict or rebut Ms. Gordon's testimony, because they failed to adequately investigate this case and prepare for trial. (See, Vol. III, p. 231). Ms. Gordon was the only witness that could even remotely place Mr. Dellinger at or near the scene. Mr. McCarter's testimony would not have only contradict her testimony regarding the layout of the roadways leading to the crime scene, but he would have testified that Ms. Gordon only identified the pick up truck only after speaking with law enforcement and thereupon changing her account of what she saw. (Vol. III, p. 215-16). Under these circumstances, there are no reasonable explanations for defense counsel failing to have Mr. McCarter at trial for testimony on this issue.

Lastly, trial counsel allowed devastating evidence to be brought to the jury, when even the slightest effort to investigate and check the circumstances of the headlight would have prevented what defense counsel described as an act that destroyed their case. (Vol. 1, p. 28, 83)(Vol. II, p. 15, 17). That, of course, was introduction of the headlight by Sutton's attorneys.

Inasmuch as a juror easily recognized the manufacture date on the headlight, Petitioner submits that even the most basic examination of the headlights should have revealed the problem to counsel and avoided the devastation to the case caused by its introduction into evidence.

Dellinger's counsel testified that a reasonable investigation would have easily revealed the problem with the headlight exhibit. (Vol. II, p. 18). On this point, counsel testified:

> It was a date of manufacture that was actually stamped on the item, itself. I mean, it was – it was right there, you know. It didn't take a lot of imagination to determine what it was.

(Vol. II, p. 18).

Moreover, in spite of the events at trial, counsel for Dellinger put on no testimony or other evidence in an attempt to counter the damage done to the case by the headlight evidence. (Vol. III, pp. 182-83). Counsel did not meet with Mr. Dellinger that evening, or otherwise discuss the possibility of Dellinger testifying about the devastating evidence. (Vol. III, pp. 182-83; 205). Counsel did not seek a mistrial on this issue, or request a continuance to have time to investigate the headlight. (Vol. III., pp. 182, 186). Trial counsel did nothing at all in attempt to mitigate the damage caused by the headlight.

At the close of the post conviction hearing, in issuing his memorandum opinion, the trial judge struggled with this issue – that is, was it reasonable for Dellinger's attorneys to do nothing and rely upon Sutton's attorneys to competently handle evidence. (Vol. IV, p.10). In declining to grant the petition, the trial judge erroneously found this to be a joint defense case. (Vol. IV, p. 10). As such, the trial judge stated that he could not find error. The trial court's reasoning erroneously overlooks the fact that the attorneys for these defendants testified that this was no joint defense agreement. (Vol. II, p. 46). Further, and more compelling, these defendants sought a severence of trials both in the trial court, and also assigned it as error on appeal. Sutton. It

plainly was not reasonable for counsel to fail to conduct a separate investigation of all the evidence on behalf of Mr. Dellinger in this murder trial.

**B.      Petitioner was denied effective assistance of counsel on appeal**

The Petitioner was denied the effective assistance of counsel on appeal as well. Counsel failed to raise and seek appellate review of issues relating to introduction of the head light into evidence. Sutton, supra.

Despite the pre-trial publicity, as evidenced at the jury selection when at least one juror spoke about the defendants' known criminal conduct in the community (Vol. I, 20-1), the change of venue issue was abandoned and not pursued on appeal. Sutton.

Additionally, appellate counsel failed to seek appellate review of the trial court's denial of the Dellinger's Motion to Suppress Evidence that had been obtained from his property in Sevier County. Sutton, supra. In Sevier County, the State relied upon consent as a basis for the search, not the search warrant. (Vol. II, p. 72). Counsel failed to secure the testimony of Linda Dellinger, who would have testified at the appropriate time that she did not give consent for officers to search her property. (Vol. III, p. 240). This issue was abandoned by trial counsel and not presented for review on appeal.

Accordingly, Petitioner was denied effective assistance of counsel on appeal. See, Campbell v. State, 904 S.W.2d 594, 595 (Tenn. 1995) citing, Douglas v. California, 372 U.S. 353, 83 S.Ct. 814 (1963)(Fourteenth Amendment guarantees a criminal defendant the right to assistance of counsel on his first tier appeal).

**C.      General Principles and Law Regarding Ineffective Assistance Claim**

Generally, when a claim of ineffective assistance of counsel is raised, the appellant-petitioner has the burden of showing that (a) the services rendered by trial counsel were

deficient; and, (b) the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984); Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990).

Concerning the deficient performance, the court must decide whether or not counsel's performance was within the range of competence demanded of attorneys in criminal case of like circumstances. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To satisfy the prejudice prong of the test, the appellant must show a reasonable probability that, but for the ineffective performance, the result of the proceeding would have been different. Strickland, 466 U.S. at 694; Powers v. State, 942 S.W.2d 551, 557 (Tenn. Crim. App. 1996). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1991), citing, Strickland, 466 U.S. at 694.

The Tennessee Supreme Court has made clear that defense "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Burns, at 461. In so holding, the Tennessee Supreme Court has cited with approval the ABA Standards for the Defense Function, which provide in relevant part:

> Counsel must conduct appropriate investigations, both factual and legal, to determine what matters of defense can be developed. The Supreme Court has noted that the adversary system requires that "all available defenses are raised" so that the government is put to its proof. This means that in most cases a defense attorney, or his agent, should interview not only his own witnesses but also those that the government intends to call, when they are accessible. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. And, of course, the duty to investigate also requires adequate legal research.

Burns, 6 S.W.3d at 461, *citing*, Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975).

There is no doubt that Dellinger's counsel failed to appropriately investigate this case. In fact, the uncontroverted proof is that no investigation whatsoever took place in this case of the

Addendum 24

facts and circumstances of the Blount County murder. (Vol. III, p. 208). Attorney for Sutton, David Webb, testified that between one-half to two-thirds of the State's proof involved the Blount County murder. (Vol. II, p. 118). The Sevier County trial was described as being like a proceeding with two full trials. (Vol. I, p37). Dellinger's attorney did nothing to prepare. The record reveals a number of facts and witness that would have been discovered by defense counsel, if even a minimal investigation would have been undertaken. (Vol. III, 212-35).

In relation to the Sevier County murder, defense counsel failed to secure a vital witness, Mr. McCarter. Defense counsel failed to secure and use favorable evidence from the State – the tire track impressions, and the beer cans recovered at the scene. Defense counsel failed to investigate the circumstances of the headlight that ultimately "devastated" and "destroyed" the defense. Thereafter, defense counsel failed to even attempt to mitigate the damage to the case.

Undoubtedly, defense counsel's actions in this case fell below the expected performance of counsel defending a murder case. And, no conclusion can be drawn other than these deficiencies undermine the confidence that can be placed in the outcome of the trial.

Accordingly, this Court should order a new trial in this case.

## II. PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT TO TESTIFY AT TRIAL BY HIS ATTORNEYS INADEQUATE PREPARATION OF THIS CASE.

The Petitioner's attorneys never prepared the Petitioner to testify at trial. (Vol. III, p. 179, 244). This fact is further aggravated by Petitioner's attorneys failing to meet with him and prepare his testimony after the devastating incident involving the headlight, in which defense counsel believed the case had been destroyed at that time. Petitioner's testimony is among the potentially corrective action that could have been taken. At minimum, the defense counsel had a duty to meet with Petitioner and discuss the possibility of his testifying. Defense counsel took no such course. (Vol. III, pp. 182-83; 205, 244).

### Addendum 24

Petitioner James Dellinger testified that his right to testify at trial was never discussed with him by trial counsel. (Vol. III, p. 244). Trial counsel could not document any specific conversations with Mr. Dellinger about testifying. (Vol. III, p. 179).

On these facts, it plainly cannot be held that petitioner voluntarily and personally waived his fundamental constitutional right to testify at his trial. *See,* Momon v. State, 18 S.W.3d 152 (Tenn. 1999). It now well-settled that, under both the U.S. and Tennessee Constitution, a criminal defendant has a fundamental constitutional right to testify on his own behalf, and that this right can only be waived by the criminal defendant himself. Momon v. State, 18 S.W.3d 152 (Tenn. 1999).[2]

Moreover, even if trial strategy dictated that the Petitioner likely would not testify, Petitioner asserts that counsel's failure to prepare his trial testimony in the event it became necessary in this capital murder prosecution evidences the fact that his attorneys did not adequately prepare this case for trial and he received ineffective assistance of counsel at trial.

Accordingly, the Petitioner should be granted a new trial.

## III.   THE JURY DELIBERATIONS WERE TAINTED BY IMPERMISSIBLE OUTSIDE INFLUENCE, REQUIRING A NEW TRIAL

It is undisputed that at least one juror used a Bible in the jury room during the deliberation process of the guilt or innocence phase of this trial. (Vol. II, pp. 103-05). Petitioner submits that this amounts to an impermissible outside influence during the jury deliberations for which the same requires the granting of a new trial.

---

[2] In relying upon Momon, the petitioner recognizes that the procedural requirements set forth in that case are not applicable to the instant, as the Supreme Court expressly held that those procedural requirements were not retroactive. Momon, supra, 18 S.W.3d at 162-63. However, petitioner notes that the Momon Court recognized that a defendant's fundamental constitutional right to testify at trial as a long standing right, and therefore a finding that the petitioner was denied this right would constitute constitutional error in the instant case.

In an opinion that has not yet been released for publication, the Tennessee Supreme Court recently held that once it has been shown that such outside influence occurred during jury deliberations then the burden shifts to the State to prove that such influence was harmless. Walsh v. State, __ S.W.3d ___, 2005 WL 1491138 (Tenn. 2005)(copy attached as Appendix Two). Here, the State cannot overcome this presumption, and a new trial should be granted.

## IV. THE STATE FAILED TO PROVIDE THE DEFENDANTS WITH CERTAIN BRADY MATERIALS, VIOLATING HIS DUE PROCESS RIGHTS.

Proof was introduced at various stages of the post conviction proceedings regarding the fact that the State had in its possession information regarding other individuals that had both motive and opportunity to kill both of the victims in these cases. (Vol. II, p. 53, 145); (Vol. III, p. 206). Also, the proof showed that the State did not inform the defense about some potential witnesses that District Attorney General Al Schmutzer had met with at a federal prison facility regarding this case. (Vol. II., pp. 57-8). These inmates had contacted General Schmutzer and member of the Sevier County Sheriff's office, stating that they had information pertaining to this case. (Vol. II., p. 57).

The information withheld by the State would have been useful in presenting the defense that these defendants were not responsible for the murder, by providing other suspects that may have motive and opportunity to commit the crime. (See, Vol. II, p. 53).

Accordingly, under these circumstances this Court should vacate the conviction. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194 (1963); Cauthern v. State, 145 S.W.3d 571 (Tenn. Crim. App. 2004).

## V. THE PETITIONER WAS DENIED DUE PROCESS AND HIS CONSTIUTIONAL RIGHT TO A FAIR TRIAL BASED UPON THE CUMULATIVE EFFET OF THE ERRORS AT TRIAL AND ON APPEAL.

It is well established that a criminal defendant has the fundamental constitutional right to a fair trial, under both the U.S. and Tennessee Constitution. *E.g.,* State v. Benson, 973 S.W.2d 202 (Tenn. 1998).

A cumulative effect of the errors and omissions discussed above, and others documented in the post conviction record establish that Petitioner was denied Due Process and his fundamental right to a fair trial, as guaranteed by the U.S. and Tennessee Constitutions. See, State v. Taylor, 968 S.W.2d 900, 912 (Tenn. Crim. App. 1997).

It is upon the petitioner to prove his factual allegations for post-conviction relief by clear and convincing evidence. *Tenn. Code Ann.* § 40-30-201(f); Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). The petitioner has carried his burden in this case. As such, the judgment of the post conviction court denying relief in this case should be vacated and the petitioner should be granted a new trial.

## CONCLUSION

For the reasons stated herein, the petitioner respectfully requests that this Honorable Court vacate the Judgment of the post-conviction court overruling Petitioner Dellinger's Petition for Post Conviction Relief, and thereupon, enter an Order granting him a new trial.

RESPECTFULLY SUBMITTED,
JAMES DELLINGER, Petitioner

RICHARD L. BURNETTE (018571)
Attorney for the Petitioner
Post Office Box 1948
Knoxville, Tennessee 37901
Phone: (865) 637-8946

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing BRIEF OF THE APPELLANT has been served on the State of Tennessee by forwarding the same to the Office of the Attorney General, 425 Fifth Ave. N., Nashville, Tennessee 37201 by placing the same in the U.S. Mail, postage prepaid, properly addressed to counsel at office.

Further, a true and exact copy of this Brief has been provided to Tim S. Moore, attorney for Gary Sutton, 396 Moore Brand Way, Newport, Tennessee 37821, by U.S. Mail, postage prepaid.

THIS 13 day of July, 2005.

RICHARD L. BURNETTE

# APPENDIX ONE

## State v. Sutton
1995 WL 406953 (Tenn.Crim.App. 1995).

Addendum 24

Case 3:07-cv-00030-TAV-CCS    Document 52-2    Filed 09/29/14    Page 22 of 38
PageID #: 605

Only the Westlaw citation is currently available.

SEE RULE 19 OF THE RULES OF THE COURT OF CRIMINAL APPEALS RELATING TO PUBLICATION OF OPINIONS AND CITATION OF UNPUBLISHED OPINIONS.

Court of Criminal Appeals of Tennessee, at Knoxville
STATE of Tennessee, Appellee,
v.
Gary Wayne SUTTON and James Anderson Dellinger, Appellants.
No. 03C01-9403-CR-0090.

July 11, 1995.
Permission to Appeal Denied, Concurring in Results Only,
Jan. 22, 1996.
Charles W. Burson, W. Zane Daniel, Darian B. Taylor, Knoxville, TN, David W. Webb, Nashville, TN, Alfred C. Schmutzer, Jr. Sevierville, TN.

G. Scott Green, Ed Miller, Sevierville, TN.

OPINION

SUMMERS

*1 The appellants, Gary Wayne Sutton and James Anderson Dellinger, were convicted by a Sevier County jury of first degree murder and burning of personal property. The victim was Connie Branum. The appellants each received a life sentence for first degree murder and a two year sentence for burning of personal property. The appellants' sentences were set to run consecutively. Sutton and Dellinger now appeal, presenting the following issues for our review: (1) whether the evidence was sufficient to convict the appellants of first degree murder; (2) whether the trial court erred in consolidating the appellants' trials and thereby admitting certain evidence; (3) whether the trial court erred in admitting proof of collateral criminal activity in the state's case-in-chief; (4) whether the trial court erred in refusing to grant Dellinger a mistrial; (5) whether the trial court erred in denying Dellinger's *Brady* request for statements made by his wife; and (6) whether the trial court erred in imposing consecutive sentencing. We find these issues to be without merit and affirm the judgment of the trial court.

FACTS

Because the appellants have raised primarily evidentiary issues, a rather detailed narration of the facts will be necessary for our analysis. The record shows that during the Christmas season of 1991, Sutton was involved in a fight with Bill Griffin. Sutton repeatedly stomped on Bill Griffin's head and injured him. Dellinger was present during the fight, but he apparently did not participate. As a result of this incident, Bill Griffin was hospitalized.

On February 15, 1992, an officer from the Sevier County Sheriff's Department responded to a complaint involving Dellinger. When the officer arrived, Dellinger showed him a storage building adjacent to his trailer. Someone had fired several shots into the storage building. When the officer asked Dellinger who had shot into the building, he opined that one of the Griffins was responsible. He stated that the Griffins had done it before and that if he had to, he would wipe out the whole hill of Griffins.

Both of the appellants and Tommy Griffin were out drinking in Blount County on February 21, 1992. They were driving Sutton's dark colored Camaro, which only had one headlight burning. The three stopped at a bar called Howie's Hideaway. They stayed there until approximately 7:00 p.m., at which time they all left together.

A short period of time later, witnesses saw a dark colored Camaro with one headlight parked on the side of the road near the Hunt Road overpass. An individual outside the car was scuffling with someone inside the car. Another witness passing through the same area later saw a stumbling man with no shirt. When an officer arrived to investigate a report concerning the fight, he found Tommy Griffin sitting in the back of a pickup truck. Griffin had no shirt on, and he had scrapes and scratches on his ribs, abdomen, and face. Griffin had a strong odor of alcoholic beverage about him. He told the officer that he had been in a fight with his friends and that he "got put out of the car." When the officer asked Griffin to identify his friends, Griffin refused, saying that they weren't good friends and that he didn't know their names. The officer then asked Griffin what the fight was about. Griffin became upset and, close to tears, repeatedly said, "I just can't tell you." The officer arrested Griffin for public intoxication and put him in the Blount County Jail.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Addendum 24

*2 At approximately 9:00 p.m. that same evening, a neighbor living between Tommy Griffin's trailer and Dellinger's trailer saw a white truck at Tommy Griffin's trailer. The truck's headlights were on and the passenger side door was open. Someone closed the passenger door. The truck left Griffin's trailer and drove to Dellinger's trailer. As the truck passed, the neighbor was able to identify it as Dellinger's white Dodge truck. Moments later, the neighbor saw fire coming from Tommy Griffin's trailer and had his wife call 911. An investigator later determined that the fire at the Griffin trailer was the result of arson.

Jennifer Branum testified that when she saw Tommy Griffin's trailer burning, she ran to Linda and James Dellinger's trailer to tell them about the fire. Linda Dellinger opened the door, and Branum saw the appellants coming down the hallway of the trailer toward the door. The appellants had their jackets on and they appeared to be out of breath. Their pants were wet almost to the knees.

Branum told the appellants that Tommy Griffin's trailer was on fire, and appellant Dellinger stated that they couldn't go down there because they were already in enough trouble. Branum asked the appellants if Tommy might be in the burning trailer. Sutton replied that he was not because he was with a girl in Blount County. Later, Jennifer Branum's older sister, Sandy, called the Dellinger residence to ask if Tommy Griffin had been in the trailer when it burned. Appellant Dellinger told her not to worry, because Tommy was in the Blount County Jail and he and Sutton were going to get him out. Jennifer Branum saw appellant Dellinger remove a long object wrapped in a sheet from behind the seat of his truck and place it in the front seat of Linda Dellinger's car. The appellants then left the Dellinger residence in the car. The next day, she saw both appellants remove the same object from the car and place it under Dellinger's trailer.

At approximately 11:25 p.m., the appellants arrived at the Blount County Jail. Dellinger posted a cash bond, and Tommy Griffin left the jail with the appellants. Thirty minutes later, a witness some nine miles away from the jail heard two shots fired near his home. The witness testified that the sound of the shots came from the direction of Manning Lane. These events transpired on a Friday night. The following Monday, Tommy Griffin's body was discovered near Manning Lane. Griffin had been shot in the head with "00" buckshot. Officers found two spent Remington Peters 12 gauge shotgun shells near

Griffin's body. A forensics expert from the Tennessee Bureau of Investigation determined that the spent shells were fired from the same shotgun as spent shells recovered from near Dellinger's trailer.

When Sutton and Dellinger returned from the jail without Tommy Griffin, Griffin's sister Connie Branum became concerned. When Griffin still had not returned the next day, she went to look for him. She left her two children with a friend and took a picture of Tommy Griffin with her. She stopped at the Townsend Shopping Center and asked an employee if Griffin had been there the previous day. She met the appellants there at the shopping center and left with them.

*3 Connie Branum and the appellants went to Howie's Hideaway. A waitress testified that Connie Branum was upset when they first arrived. Branum asked her if she had seen with whom her brother had left the bar the previous day. The waitress became confused, and when she attempted to answer, Dellinger told her to go and get their beers. Another waitress heard Dellinger say:

> The last time we seen [Griffin] was up the road a piece, and he was with a short, fat, dark haired girl, and she was real ugly.... Well, we figured that he'd come back here because yesterday we picked him up from jail and come here and had a drink, and he doesn't know the area, so we thought he'd come back here."

Connie Branum left the bar with the appellants at approximately 7:00 p.m. Witnesses said that by the time the three left, Branum was intoxicated and boisterous. A waitress asked Branum if she was going to be driving and told her that she didn't need anything else to drink. The appellants told the waitress not to worry and that they would take care of Branum.

A couple living in the Clear Fork area heard a high-pitched, whistling noise coming from the woods near their house and saw a large fire burning there sometime between 8:00 and 8:30 p.m. that same evening. The next morning, the wife saw a white truck leaving the woods. There were two people in the truck. She later identified this truck as appellant Dellinger's.

A week later, after hearing reports of Connie Branum's disappearance, the husband and the couple's son went to investigate the fire. They discovered a burned out car. They did not investigate further, because they were concerned that if they approached

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## Addendum 24

the car and examined it more closely, they would destroy evidence. Investigators found the body of Connie Branum in the driver's seat of her burned car.

The state arson examiner determined that the car fire was the result of arson. He concluded that an accelerant was poured on both the body and the interior of the car because of the extreme temperature required to produce the amount of damage present. Burn patterns on the floor of the vehicle also indicated that a liquid accelerant had run under the seats and burned there. He specifically eliminated the possibility that a cigarette or other smoldering ignitor had initiated the fire. While samples taken from the interior of the vehicle revealed no accelerant when tested, the examiner testified that accelerants are sometimes completely consumed in a fire. Accelerants may also evaporate when exposed to the elements.

A forensic anthropologist who examined the remains in the car was able to identify the body as Connie Branum. The intense heat of the fire had partially cremated the body and "cooked" the internal organs to the point that it was impossible to determine the cause of death. Investigators discovered a spent .303 British shell casing inside the car. A forensics expert later determined that this shell casing was fired from a rifle seized from appellant Dellinger's residence.

### SUFFICIENCY OF THE EVIDENCE

*4 Where an appellant challenges the sufficiency of the convicting evidence, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307 (1979); *State v. Duncan*, 698 S.W.2d 63 (Tenn.1985); T.R.A.P. 13(e). The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the triers of fact. *State v. Sheffield*, 676 S.W.2d 542 (Tenn.1984); *Byrge v. State*, 575 S.W.2d 292 (Tenn.Crim.App.1978). On appeal, we refuse to invade the province of the jury by reweighing the evidence or by substituting our own judgement as to the credibility of witnesses' testimony.

It is well established that circumstantial evidence alone may be sufficient to support a conviction. *State v. Buttrey*, 756 S.W.2d 718, 721 (Tenn.Crim.App.1988). For this to occur, however, the circumstantial evidence must not only be consistent with guilt, but it must also exclude every

other reasonable theory or hypothesis except that of guilt. *State v. Tharpe*, 726 S.W.2d 896, 900 (Tenn.1987). Additionally, "it must establish such a certainty of guilt of the accused as to convince the mind beyond a reasonable doubt that [the defendant] is the one who committed the crime." *Id.*

Appellant Sutton maintains that the evidence does not establish that he was present at the time of Connie Branum's death or that he participated in causing her death. The record shows that Sutton was with Branum less than two hours before witnesses sighted the car fire. There were two people in Dellinger's truck the next morning when a witness saw the truck leaving the area where the car burned.

In a statement given to the authorities, Sutton stated that he was with Dellinger the whole weekend. He failed to mention that he was with Connie Branum at Howie's Hideaway on the evening of her death. He stated that he had been there with her before, but that this was two or three weeks prior to her disappearance. Sutton also concealed from Connie Branum that he and Dellinger were the last people to be seen with Tommy Griffin. He shared Dellinger's motive to prevent Branum from discovering and revealing that the appellants killed her brother, Tommy Griffin. The circumstantial evidence is sufficient to establish that Sutton was present at the time of Connie Branum's death and that he participated in causing her death.

Sutton also contends that the evidence is insufficient to establish that he intended to kill Connie Branum or shared Dellinger's intent to kill her. He proposes an alternate scenario in which Dellinger forced him at gunpoint to assist in concealing both murders. This theory is simply not reasonable. Sutton had the opportunity to reveal Dellinger's crimes and exonerate himself, but he did not. He "stuck to his story." Based on the evidence introduced at trial, the only reasonable hypothesis is that the appellants acted in concert and with a common intent.

*5 Both appellants argue that the state failed to prove the *corpus delicti* for murder because the evidence was insufficient to show that Connie Branum's death resulted from a criminal instrumentality. *Corpus delicti* means the body of the crime. The *corpus delicti* must be proven beyond a reasonable doubt to sustain a conviction. In a homicide case, the *corpus delicti* consists of: (1) the death of a human being; and (2) criminal agency in producing that death. *State v. Shepherd*, 862 S.W.2d 557, 564

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

### Addendum 24

(Tenn.Crim.App.1992); *State v. Driver*, 634 S.W.2d 601, 605 (Tenn.Crim.App.1981); *Kyle v. State*, 344 S.W.2d 537 (Tenn.1961).

Specifically, the appellants assert that neither suicide nor accidental death were conclusively ruled out by the evidence introduced at trial because the state did not prove the cause of death. While it is true that Connie Branum's remains were so completely burned that it was impossible to determine whether she was shot or burned to death, the exact method or cause of death is not part of the state's burden of proof. As we noted in *State v. Shepherd:*

> [A]lthough submitting direct evidence of the cause of death, as a practical matter, may be the best way to show involvement of criminal agency, it is not always necessary, and such agency may be shown by circumstantial evidence even if the exact cause of death remains unproven.

862 S.W.2d 557, 564 (Tenn.Crim.App.1992) (citations omitted).

At trial, the state introduced uncontradicted testimony that some type of liquid accelerant was applied to the body and to the interior of the car. The fire was not started by a cigarette or other smoldering initiator. Accidental death is therefore not a reasonable possibility. Furthermore, while Connie Branum had previously attempted suicide, it is unreasonable to suppose that she abandoned her search for her missing brother, drove to a remote location, doused herself and the interior of her car with an accelerant, somehow disposed of the container that she used to transport the accelerant, and then immolated herself. This is particularly true in light of the other evidence presented at trial. A witness saw Dellinger's truck leaving the area the next morning with two people inside. Both Sutton and Dellinger initially gave statements to the police in which neither admitted to having been with Connie Branum at Howie's Hideaway that evening. They later claimed that they had not mentioned going to the Hideaway with Branum because she had asked them not to tell anyone and they did not think that it was important anyway.

Finally, the appellants allege that the evidence does not show the criminal intent, premeditation, or deliberation required to sustain their convictions for murder. First-degree murder is "an intentional, premeditated and deliberate killing of another." T.C.A. § 39-13-202(a)(1) (1991). Once a homicide is proven it is presumed to be second degree murder and the state bears the burden of proving

premeditation and deliberation. *State v. Brown*, 836 S.W.2d 530, 543 (Tenn.1992).

*6 Premeditation requires a previously formed design or intent to kill. *State v. West*, 844 S.W.2d 144, 147 (Tenn.1992); *McGill v. State*, 475 S.W.2d 223, 227 (Tenn.Crim.App.1971). *See also* T.C.A. § 39-13- 201(b)(2) (1991). Deliberation requires a cool purpose; the killing must be without passion or provocation. *West*, 844 S.W.2d at 147; *Brown*, 836 S.W.2d at 543. *See also* T.C.A. § 39-13-201(b)(1) (1991). Although no specific amount of time is required, deliberation cannot be formed in an instant. *West*, 844 S.W.2d at 147. The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing. *Taylor v. State*, 506 S.W.2d 175, 178 (Tenn.Crim.App.1973).

In the instant case, the evidence indicates that the appellants killed Connie Branum to prevent her from discovering that they were responsible for the murder of her brother, Tommy Griffin. The appellants "ran into" Branum while she was searching for her brother. They did not tell her that they had left the Hideaway with Griffin the night before. Witnesses established that the fire which consumed Branum's body and her car started a short period of time after the three left the bar. Branum's car was concealed in a remote location. Finally, the appellants voluntarily gave statements during the investigation of the Griffin murder in which they neglected to mention that they had been with Connie Branum the day after Griffin's disappearance. The existence and execution of a plan to kill Connie Branum establishes the required intent, premeditation, and deliberation. This issue is without merit. The evidence adduced at trial is sufficient to support the appellants' convictions for first degree murder.

JOINDER OF THE APPELLANTS

Both appellants maintain that the trial court erred in joining their trials. They argue that as a result of the joint trial, certain evidence was improperly admitted against each of them. Finally, they contend that limiting instructions given by the trial court were insufficient.

The Tennessee Rules of Criminal Procedure allow for the joinder of defendants if "each of the defendants is charged with accountability for each offense included." Tenn. R.Crim. P. 8(c)(3)(i). The Rules also provide for severance of the defendants if "it is deemed appropriate to promote a fair determination of the guilt or innocence of one or

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Addendum 24

more defendants." Tenn. R.Crim. P. 14(c)(2)(i),(ii). The decision of whether to grant a motion for severance is addressed to the sound discretion of the trial judge. His or her exercise of this discretion will not be reversed unless it appears that the appellant was prejudiced by such a denial. *State v. Coleman,* 619 S.W.2d 112 (Tenn.1981); *State v. Lunati,* 665 S.W.2d 739 (Tenn.Crim.App.1983).

When evidence is introduced against one defendant but not another, the jury should be instructed accordingly in order to prevent prejudice. *State v. Kyger,* 787 S.W.2d 13, 28 (Tenn.Crim.App.1989). Here, the trial court gave cautionary instructions throughout the trial and provided a comprehensive final instruction as to how the jury should consider the evidence relating to each defendant. This instruction reads, in pertinent part, as follows:

*7 You are trying two separate cases which have been consolidated for trial.

* * *

In consideration of all cases, it is your duty to carefully weigh the evidence as it applies to each case. If there be evidence which sheds light upon the guilt or innocence in one case, but is immaterial or irrelevant as to others, be certain that you do not permit the evidence to receive any consideration, or have any bearing on your verdict in cases to which it cannot apply.

* * *

Any evidence which was limited to one defendant should not be considered by you as to any other defendant. In other words, you must confine you (sic) attention to that evidence which bears on the guilt or innocence of a particular defendant on a particular charge, and you may convict the defendants of different grades of the same offense.

The jury is presumed to have followed the trial court's instructions. *State v. Newsome,* 744 S.W.2d 911, 915 (Tenn.Crim.App.1987). The appellants have not shown, nor is there anything in the record to suggest, that the jury disregarded the trial court's limiting instructions. Thus, the appellants have not shown prejudice and this issue is without merit.

Appellant Sutton asserts that, aside from the evidence limited to appellant Dellinger, there is no evidence that he committed any crime. The record simply does not support this assertion.

Sutton also contends that admission of the statement of appellant Dellinger, who did not testify, that he would "wipe out" the Griffins violated his constitutional right to confront witnesses against him and contravened the rule announced by the United States Supreme Court in *Bruton v. United States,* 391 U.S. 123 (1968). In *Bruton,* the Court held that admission of a non-testifying codefendant's statement implicating the defendant is a violation of the latter's right to confrontation. *Id.* In the instant case, there is no *Bruton* problem because the statement in question does not implicate Sutton in any way. Sutton was implicated by his own statements that he was with Dellinger continuously during the relevant time periods. Thus, admission of Dellinger's statement did not violate Sutton's constitutional right of confrontation.

## EVIDENCE OF COLLATERAL CRIMINAL ACTIVITY

Regarding proof of other crimes, wrongs, or acts, the Tennessee Rules of Evidence provide:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:

(1) The court upon request must hold a hearing outside the jury's presence;

(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and

(3) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

*8 T.R.E. 404(b).

The appellants allege that the trial court failed to conduct the required "jury out" hearing before allowing proof of other crimes, wrongs, or acts. They also assert that the trial court failed to state on the record its reasons for admitting evidence of other crimes, wrongs, or acts.

The record does not support the appellants' allegations. At a pre-trial motions hearing, the trial court allowed the state to submit a proffer of proof as to the appellants' prior crimes. This was necessary, as some twenty-five (25) to thirty (30) witnesses were expected to testify at trial as to the prior crimes. To have each witness present at the hearing or to repeatedly interrupt the trial to hold individual

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Addendum 24

hearings at the time of each witness's testimony would have been extremely impractical and unnecessary. The trial court, finding the proffered evidence more probative than prejudicial, accepted the state's proffer with the caution that if evidence was introduced of crimes which were not ultimately proven by clear and convincing evidence, *see State v. Parton,* 694 S.W.2d 299 (Tenn.1985), remedial measures would include a mistrial if necessary. We find that the procedure employed by the trial court in admitting the evidence in question was adequate and proper. Neither statute nor precedent dictates the exact form that the hearing must take or what evidence must be heard. The trial court stated on the record that the evidence was relevant to show motive, intent, and possibly a common scheme or plan.

The appellants also contend that the trial court erred in denying their motions for a mistrial at the conclusion of the state's evidence because the state failed to prove the other crimes by clear and convincing evidence as required by *State v. Parton,* 694 S.W.2d 299, 303 (Tenn.1985). We find no error in the trial court's conclusion that the evidence presented over the course of the trial clearly and convincingly establishes the following prior crimes, wrongs, or acts: (1) Sutton fired a weapon at street lights; (2) Dellinger stated that he would wipe the Griffins out; (3) Sutton assaulted Tommy Griffin's brother, Bill; (4) Sutton and Dellinger assaulted Tommy Griffin on the night of his death; (5) Sutton and Dellinger set fire to Tommy Griffin's trailer on the night of his death; and (5) Sutton and Dellinger murdered Tommy Griffin. This issue is without merit.

## APPELLANTS' BRADY REQUEST

Dellinger argues that the trial court erred in denying the appellants' request pursuant to Rule 16(a) of the Tennessee Rules of Criminal Procedure and *Brady v. Maryland,* 373 U.S. 83 (1963), to obtain the entire statement of appellant Dellinger's wife, Linda Dellinger. Rule 16(a) is inapplicable, as it addresses only statements made by the defendant. Tenn. R.Crim. P. 16(a). In *Brady,* the United States Supreme Court held that the prosecution has a compelling duty to furnish the accused any evidence which is favorable to the accused and material to his guilt or punishment. 373 U.S. at 87; *State v. Marshall,* 845 S.W.2d 228, 232 (Tenn.Crim.App.1992). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United*

*States v. Bagley,* 473 U.S. 667 (1985). Impeachment evidence, as well as exculpatory evidence, falls under the *Brady* rule. *Bagley,* 473 U.S. at 676.

*9 While the state may not suppress evidence which is favorable to the defendant, the prosecution has no duty to disclose information that the accused already possesses or is able to obtain. *State v. Caldwell,* 656 S.W.2d 894, 897 (Tenn.Crim.App.1983); *Banks v. State,* 556 S.W.2d 88, 90 (Tenn.Crim.App.1977). Linda Dellinger was listed as a witness for both Sutton and Dellinger. This issue is without merit.

## CONSECUTIVE SENTENCING

Appellants assert that the trial court erred in ordering that their sentences run consecutively. When a defendant challenges the length, range, or manner of service of his sentence, we conduct a *de novo* review on the record with a presumption that the determinations made by the trial court are correct. T.C.A. § 40-35-401(d). Where the trial court fails to follow the statutory guidelines, however, the presumption of correctness no longer applies and our review is completely *de novo. State v. Shelton,* 854 S.W.2d 116, 123 (Tenn.Crim.App.1992).

A defendant convicted of more than one offense may be ordered to serve his sentences consecutively if the trial court finds that he "is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." T.C.A. § 40-35-115(4) (1990). The trial court made such a finding with regard to both appellants. The trial court did not, however, address the additional factors this Court discussed in *State v. Woods,* 814 S.W.2d 378 (Tenn.Crim.App.1991). In *Woods,* we held that before consecutive sentencing can be upheld based solely on the dangerous offender factor, the following criteria must also be satisfied:

> (b) the circumstances surrounding the commission of the offense are aggravated;
> (c) confinement for an extended period of time is necessary to protect society from the defendant's unwillingness to "lead a productive life and his resort to criminal activity in furtherance of his anti-societal lifestyle";
> (d) the aggregate length of the sentences, if consecutive sentencing is ordered, reasonably relates to the offenses of which the defendant stands convicted.

*Id.* at 380 (citations omitted).

Although the trial court did not cite the *Woods*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## Addendum 24

criteria, our review of the record leads us to conclude that consecutive sentencing is appropriate for both appellants. [FN1] We agree with the trial court that the appellants' conduct in committing a murder in order to conceal another murder evinces little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high. The circumstances of the offense are certainly aggravated. The appellants pretended to sympathize with Connie Branum and offered to assist her in searching for her brother whom they had murdered. Then, when they had sufficiently raised her spirits with alcohol and succeeded in getting her drunk enough to drop her guard, they murdered her as well and cremated her remains. Both appellants have lengthy criminal records which indicate that society needs to be protected from their anti-societal lifestyle. Finally, given the nature of the crimes involved, the aggregate length of the sentences imposed is not disproportionate.

FN1. We note that our Court has recently been divided in applying the *Woods* criteria.

and the issue of applying the additional *Woods* factors is on review before our Supreme Court. *See State v. Wilkerson,* Dyer County, C.C.A. No. 02C01-9210-CC-00244, opinion filed February 2, 1994, at Jackson, permission to appeal granted July 26, 1994. Even applying *Woods* to the present case, the sentences should run consecutively.

## CONCLUSION

*10 Having thoroughly considered the issues presented by the appellants, we find them to be without merit. The judgment of the trial court is therefore:

AFFIRMED.

HAYES and BARKER, JJ., concur.

1995 WL 406953 (Tenn.Crim.App.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Addendum 24

# APPENDIX TWO

## <u>Walsh v. State</u>
2005 WL 1491138 (Tenn. Crim. App. 2005)

Briefs and Other Related Documents

Only the Westlaw citation is currently available.

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION IN THE PERMANENT LAW REPORTS. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

Supreme Court of Tennessee,
at Jackson.
Robert D. WALSH
v.
STATE of Tennessee.
No. W2003-02040-SC-R11-PC.

April 2005 Session.
June 24, 2005.

**Background:** Following affirmance of his conviction for aggravated sexual battery on direct appeal, defendant filed petition for post-conviction relief. The Criminal Court, Shelby County, Arthur T. Bennett, J., denied petition. Defendant appealed. The Court of Criminal Appeals affirmed. Defendant filed application for permission to appeal.

**Holdings:** Upon grant of petition, the Supreme Court, William M. Barker, J., held that:

(1) trial court's consideration of juror's testimony regarding effect that a court officer's statement to jury during deliberations had on her decision making process violated rule prohibiting jurors from testifying as to matters or statements occurring during course of deliberations, and, thus, was erroneous; abrogating, *State v. Parchman,* 973 S.W.2d 607, *Cavalier Metal Corp. v. Johnson Metal Controls,* 124 S.W.3d 122;

(2) trial court's consideration of juror's testimony that court officer had made statement to jury during deliberations was proper and raised presumption of prejudice to defendant; and

(3) state failed to rebut presumption of prejudice to defendant, and thus he was entitled to new trial.

Reversed and remanded.

[1] Criminal Law 1044.2(1)

110k1044.2(1)
Issues not addressed in the post-conviction court will generally not be addressed on appeal.

[2] Criminal Law 1044.2(1)
110k1044.2(1)
State waived on appeal issue of whether defendant had waived issue of improper influence on jury, as state failed to assert defense of waiver at post-conviction hearing, and, by raising issue for first time on appeal, state denied defendant an opportunity to rebut the presumption that issue of improper influence on jury had been waived. West's T.C.A. § 40-30-110(f).

[3] Criminal Law 957(1)
110k957(1)
Rule prohibiting jurors from testifying as to matters or statements occurring
during course of deliberations is grounded in the common-law rule against admission of jury testimony to impeach a verdict and the exception for juror testimony relating to extraneous influences. Rules of Evid., Rule 606(b).

[4] Criminal Law 957(1)
110k957(1)
Rule prohibiting jurors from testifying as to matters or statements occurring during course of deliberations promotes full and frank discussion in the privacy of the jury room and protects jurors from harassment by the losing party who might seek to impeach the verdict. Rules of Evid., Rule 606(b).

[5] Criminal Law 957(1)
110k957(1)
Overarching purpose of both the federal and state rule of evidence prohibiting jurors from testifying as to matters or statements occurring during course of deliberations is to protect the integrity of the jury's deliberative process. Fed.Rules Evid.Rule 606(b), 28 U.S.C.A.; Rules of Evid., Rule 606(b).

[6] Criminal Law 957(1)
110k957(1)
A juror is not permitted to testify about anything occurring during deliberations, including the juror's own internal thoughts, motivations, or emotions. Rules of Evid., Rule 606(b).

[7] Criminal Law 957(2)
110k957(2)

[7] Criminal Law 957(5)
110k957(5)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## Addendum 24

[7] Criminal Law ⚖957(6)
110k957(6)
Rule prohibiting jurors from testifying as to matters or statements occurring during course of deliberations makes an exception in three circumstances, allowing juror testimony if there has been: (1) extraneous prejudicial information, (2) outside influence, or (3) an antecedent agreement to be bound by a quotient or majority result. Rules of Evid., Rule 606(b).

[8] Criminal Law ⚖1163(6)
110k1163(6)
When it has been shown that a juror was exposed to extraneous prejudicial information or subjected to improper influence, a rebuttable presumption of prejudice arises, and the burden shifts to the state to explain the conduct or demonstrate that it was harmless. Rules of Evid., Rule 606(b).

[9] Courts ⚖97(1)
106k97(1)
Because federal rule prohibiting jurors from testifying as to matters or statements occurring during course of deliberations is virtually identical to state rule, the federal court's interpretation of the federal rule provides helpful guidance to state court in its analysis of state rule. Fed.Rules Evid.Rule 606(b), 28 U.S.C.A.; Rules of Evid., Rule 606(b).

[10] Criminal Law ⚖868
110k868
In determining whether improper statement has been made to jury, proper procedure is for judge to limit questions posed to jurors to whether communication was made and what it contained, and then, having determined that communication took place and what exactly it said, to determine, without asking jurors anything further and emphatically without asking them what role communication played in their thoughts or discussion, whether there is reasonable possibility that communication altered their verdict. Rules of Evid., Rule 606(b).

[11] Criminal Law ⚖957(1)
110k957(1)
Prohibiting inquiry into jurors' thought processes and motivations during deliberations pursuant to rule secures the proper relationship of the jury to the judge and the law. Rules of Evid., Rule 606(b).

[12] Jury ⚖21.1
230k21.1
The right to a trial in which a jury serves as the ultimate finder of fact and arbiter of guilt or innocence is no mere procedural formality, but a fundamental reservation of power in the constitutional structure.

[13] Jury ⚖21.1
230k21.1
Just as suffrage ensures the people's ultimate control in the legislative and executive branches, jury trial is meant to ensure their control in the judiciary.

[14] Criminal Law ⚖1614
110k1614
Trial court's consideration of juror's testimony regarding effect that a court officer's statement to jury during deliberations had on her decision making process violated rule prohibiting jurors from testifying as to matters or statements occurring during course of deliberations, and, thus, was erroneous, in post-conviction proceeding in which defendant had alleged that jury had been improperly influenced; abrogating, *State v. Parchman*, 973 S.W.2d 607, *Cavalier Metal Corp. v. Johnson Metal Controls*, 124 S.W.3d 122. Rules of Evid., Rule 606(b).

[15] Criminal Law ⚖1163(6)
110k1163(6)

[15] Criminal Law ⚖1614
110k1614
Trial court's consideration of juror's testimony that court officer had made statement to jury during deliberations was proper and raised presumption of prejudice to defendant, in post-conviction proceeding in which defendant alleged that jury had been improperly influenced. Rules of Evid., Rule 606(b).

[16] Criminal Law ⚖1163(6)
110k1163(6)
State failed to rebut presumption of prejudice to defendant, arising from juror's testimony that court officer had made statement to jury during deliberations, in post-conviction proceeding in which defendant had alleged that jury had been improperly influenced, and thus defendant was entitled to a new trial; state could have called court officer to testify as to whether he actually made the statement, or other members of jury could have been asked whether they heard statement, but only evidence presented by state to rebut presumption was inadmissible cross-examination testimony of juror. Rules of Evid., Rule 606(b).

[17] Criminal Law ⚖957(5)
110k957(5)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Addendum 24

Rule prohibiting jurors from testifying as to matters or statements occurring during course of deliberations permits juror testimony to establish the fact of extraneous information or improper influence on the juror; however, juror testimony concerning the effect of such information or influence on the juror's deliberative processes is inadmissible. Rules of Evid., Rule 606(b).

Appeal by permission from the Court of Criminal Appeals, Shelby County Criminal Court, No. P-26520; Arthur T. Bennett, Judge.

C. Michael Robbins, Memphis, Tennessee, for the appellant, Robert D. Walsh.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; and Elizabeth T. Ryan, Assistant Attorney General, for the appellee, State of Tennessee.

WILLIAM M. BARKER, J., delivered the opinion of the court in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, Jr., and JANICE M. HOLDER, JJ., joined.

OPINION

WILLIAM M. BARKER, J.

*1 This case comes before us on appeal from a denial of post-conviction relief. The petitioner sought relief from his conviction for aggravated sexual battery, raising several claims including that he was denied his right to a fair and impartial jury trial because of an improper communication by a court officer to the jury during deliberations. During the hearing on the post-conviction petition, the court heard testimony from a juror regarding the content of the communication and also the subjective effect of the officer's statement upon the juror. At the close of the hearing, the trial court found that the improper communication had not influenced the verdict and therefore denied the petition for post-conviction relief. Upon review, the Court of Criminal Appeals affirmed. In this Court, the petitioner challenges admission of the juror's testimony relating to the effect of the court officer's statement on the juror. After thorough consideration, we reverse the Court of Criminal Appeals. We hold that Tennessee Rule of Evidence 606(b) prohibits introduction of juror testimony concerning the effect on the juror of an improper communication by a court officer during jury deliberations.

*Facts*

In 1998, the petitioner was indicted in Shelby County on charges of aggravated sexual battery and rape of a child. A criminal court jury found the petitioner guilty of aggravated sexual battery, but not guilty of rape. The trial court sentenced the petitioner to a term of ten years imprisonment. Upon appeal, the Court of Criminal Appeals affirmed the conviction, but modified the sentence to allow the petitioner to be eligible for release after serving thirty percent of his sentence, rather than one-hundred percent as ordered by the trial court. *See State v. Robert D. Walsh,* W1999-01473-CCA-R3-CD, 2001 WL 91949 (Tenn.Crim.App. Jan.30, 2001). The petitioner was denied permission to appeal the conviction in this Court.

In June 2002 the petitioner filed a petition for post-conviction relief, alleging, among other things, that he had been denied his right to a fair and impartial jury trial due to an improper communication to the jury by a deputy sheriff who was acting as a court officer. At a hearing on the petition on May 2, 2003, one of the witnesses called to testify was Linda Busby, who had been one of the jurors in the petitioner's trial.

Ms. Busby testified that at one point during deliberations, she and the other jurors had voted unanimously to find the petitioner not guilty of rape of a child. However, the vote on the charge of aggravated sexual battery had been divided, with eleven jurors voting guilty and one voting not guilty. Ms. Busby was the lone dissenting vote.

Sometime after this vote was taken, a court officer entered the jury room and was told by one of the other jurors that the jury could not reach a decision on one of the charges. Then, according to Ms. Busby, the court officer made a statement to the effect that the jury was required to make a decision. Although Ms. Busby could not recall the officer's exact words, she testified that he "almost jokingly or kind of laughed [and] said, 'you have to' or 'you must' or something to that effect. 'You have to reach a decision.' " Ms. Busby was convinced that the other members of the jury also heard the officer's remark. After this exchange with the court officer, another ballot was taken, and the jury returned a unanimous verdict of guilty on the charge of aggravated sexual battery.

*2 On cross-examination, the State asked Ms. Busby a series of questions touching upon the effect of the officer's statement upon her deliberations. Pertinent

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Addendum 24

portions of this cross-examination were as follows:

Q (by the State): This motion that's pending before Judge Bennett right now indicates that because of what this deputy said that you, Ms. Busby, changed your vote from not guilty to guilty.

A (by Ms. Busby): It was not because of what he said. I mean, it made me realize that I did have to make a decision. But, I made the decision to change my vote, I believe, because I'm obviously not a very self-confident person. And, I felt that if eleven other people felt he was guilty, I thought it was something wrong with me that I couldn't see that.

Q: This motion says that you felt that you were required---

A: No.

Q: To reach a verdict and find him guilty?

A: No, I have been on other juries and I'm sorry, that's not true.

Q: This motion also says that you felt that you had, and I'm going to quote this directly. "Ms. Busby felt that she had to make a decision in line with the other eleven jurors." End of quote. Is that a correct statement?

A: No, sir.

Q: Are you telling Judge Bennett that you reached a verdict on this case and the verdict that you did reach was your own independent verdict?

A: Yes, it was.

Q: Are you telling the Court that you found Mr. Walsh guilty of aggravated child abuse only because of the statements made to you by the deputy?

A: No.

Q: Why did you reach the verdict that you reached, Ms. Busby?

A: Well, I think I just stated that. That after sitting there and I had everyone at the table go around and tell me again why they felt that he was guilty. And, I just felt it must be something wrong with me that I could not see it. And, I never did see it. But, I felt that I needed to go with them because of that. Because of my lack of self-confidence.

....

Q: Did anybody put any pressure on you in order for you to reach that decision?

A: No.

Q: Did anybody force you in order to get you to reach that decision?

A: No.

Q: Do you feel as if anybody engaged or exerted

any improper influence upon you in order for you to reach that decision?

A: No.

Q: Did any of the other eleven members of the jury ever state to you that they felt they were reaching a, on voting a certain way because of what a deputy may have said to them?

A: No.

Neither the court officer nor any of the other jurors were called to testify about these events. Therefore, based upon Ms. Busby's testimony, the court found that an improper communication had been made to the jury, but that this communication had not affected the verdict. Accordingly, the court denied post-conviction relief on this ground.

The petitioner appealed to the Court of Criminal Appeals which, upon review, agreed that the court officer's statement to the jury had been improper. The court also recognized that the improper communication raised a presumption of prejudice which the State was required to sufficiently rebut in order to sustain the verdict. The court was of the opinion, however, that there would be no way for the State to rebut this presumption without allowing the juror to testify about how the court officer's statement may have influenced her. Therefore, the Court of Criminal Appeals held that admission of the juror's testimony was proper and affirmed the denial of post-conviction relief. We granted permission to appeal to address whether a juror may testify about the effect on his or her deliberative process of an improper communication to the jury by a court officer during deliberations.

*Analysis*

*3 [1][2] We first address the State's argument that the issue of improper influence on the jury has been waived by the petitioner due to his failure to raise it during his direct appeals. However, the State did not assert the defense of waiver at the post-conviction hearing; instead, the State raises it for the first time in this Court. By doing so, the State has denied the petitioner an opportunity to rebut the presumption that this issue has been waived. *See* Tenn.Code Ann. § 40-30-110(f) (2003) (providing that "[t]here is a *rebuttable presumption* that a ground for relief not raised before a court of competent jurisdiction in which the ground could have been presented is waived") (emphasis added). Under these circumstances, we conclude that the State's waiver argument has itself been waived. Issues not addressed in the post-conviction court will generally not be

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## Addendum 24

addressed on appeal. *See Rickman v. State,* 972 S.W.2d 687, 691 (Tenn.Crim.App.1997); *see also State v. White,* 635 S.W.2d 396, 397-98 (Tenn.1982) (rejecting an argument presented by the State for the first time on appeal). We conclude therefore that the State may not properly assert the issue of waiver for the first time in this Court.

We now proceed to the central issue in this case-- whether the jury's verdict was tainted due to improper influence during deliberations. The parties do not dispute that the court officer made an improper statement to the jury. The dispute centers around how the post-conviction court arrived at its conclusion that the statement did not affect the verdict. The petitioner argues that allowing the State to cross-examine the **juror** regarding the effect of the court officer's statement impermissibly delved into the **juror's** internal thought processes and motivations during deliberations, thus violating Tennessee Rule of Evidence 606(b). Rule 606(b) provides:

> Upon an inquiry into the validity of a verdict or indictment, a **juror** may not testify as to any matter or statement occurring during the course of the **jury's** deliberations or to the effect of anything upon any **juror's** mind or emotions as influencing that **juror** to assent to or dissent from the verdict or indictment or concerning the **juror's** mental processes, except that a **juror** may testify on the question of whether **extraneous** prejudicial information was improperly brought to the **jury's** attention, whether any outside influence was improperly brought to bear upon any **juror,** or whether the **jurors** agreed in advance to be bound by a quotient or gambling verdict without further discussion; nor may a **juror's** affidavit or **evidence** of any statement by the **juror** concerning a matter about which the **juror** would be precluded from testifying be received for these purposes.

[3][4][5] In *State v. Blackwell,* 664 S.W.2d 686 (Tenn.1984), this Court adopted Federal Rule of Evidence 606(b), now embodied as Tennessee Rule of Evidence 606(b), [FN1] as "the rule governing the exclusion and admissibility of evidence to impeach a jury verdict in this State." *Id.* at 688; *see also State v. Parchman,* 973 S.W.2d 607, 612 (Tenn.Crim.App.1997). We recognized in *Blackwell* that Rule 606(b) was essentially a codification of established Tennessee law in this respect. *Blackwell,* 664 S.W.2d at 688. Rule 606(b) is "grounded in the common-law rule against admission of jury testimony to impeach a verdict and the exception for juror

testimony relating to extraneous influences." *Tanner v. United States,* 483 U.S. 107, 121, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987). The rule promotes full and frank discussion in the privacy of the jury room and protects jurors from harassment by the losing party who might seek to impeach the verdict. *Id.* at 108. Thus, the overarching purpose of both the federal and Tennessee Rule 606(b) is to protect the integrity of the jury's deliberative process. *See id.* at 119-20; *see also Caldararo v. Vanderbilt Univ.,* 794 S.W.2d 738, 741 (Tenn.Ct.App.1990). [FN2]

*4 [6][7][8] To this end, a juror is not permitted to testify about anything occurring during deliberations, including the juror's own internal thoughts, motivations, or emotions. Tenn. R. Evid. 606(b); *Blackwell,* 664 S.W.2d at 688. The rule does, however, make an exception in three circumstances, allowing juror testimony if there has been: (1) extraneous prejudicial information, (2) outside influence, or (3) an antecedent agreement to be bound by a quotient or majority result. Tenn. R. Evid. 606(b); *Cavalier Metal Corp. v. Johnson Metal Controls,* 124 S.W.3d 122, 127 (Tenn.Ct.App.2003). Further, when it has been shown that a juror was exposed to extraneous prejudicial information or subjected to improper influence, a rebuttable presumption of prejudice arises, and the burden shifts to the State to explain the conduct or demonstrate that it was harmless. *Blackwell,* 664 S.W.2d at 689; *Parchman,* 973 S.W.2d at 612.

Although adopted in 1984, the scope of inquiry permitted under Rule 606(b) remains an unsettled issue in this state. In some instances the rule has been interpreted as permitting juror testimony only as to the existence of extraneous information or outside influence and not to the subjective effect of that information or influence on the juror's deliberative process. *See Carruthers v. State,* 145 S.W.3d 85, 95-96 (Tenn.Crim.App.2003); *Montgomery v. State,* 556 S.W.2d 559, 561 (Tenn.Crim.App.1977). In other cases, courts have permitted juror testimony not only to establish the fact of extraneous information or outside influence, but also as to the effect of that information or influence on the juror's mental processes. *See Cavalier Metal Corp.,* 124 S.W.3d at 130; *Parchman,* 973 S.W.2d at 614.

For instance, in *Parchman,* the defendant was convicted of two counts of sale of cocaine. 973 S.W.2d at 610. It was later discovered that during the jury's deliberations a bailiff had made an improper communication to the jury. The jury had been at an

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

impasse regarding one of the charges, and one of the jurors decided to inform the court. However, rather than speaking with the judge, the juror spoke with a bailiff who informed the juror they would be required to deliberate until a verdict was reached. The jury then voted unanimously to find the defendant guilty. When called later to testify about the conversation, the bailiff stated that the juror had asked whether they could "find her guilty on one charge and not guilty on the other?" The bailiff testified that his only response was, "Yes." The court found that regardless of what the bailiff actually said, the jurors believed that the bailiff's statement had been that a verdict was required. *Id.* at 613. This extraneous information raised a presumption of prejudice and shifted the burden to the State to show the information was harmless in order to sustain the verdict. *Id.* By presenting only the testimony of the bailiff, the court concluded that the State had failed to sufficiently rebut this presumption, thus warranting a new trial. *Id.* at 614.

*5 Then, in dicta, the *Parchman* court offered that to rebut the presumption of prejudice, "[i]t would have been possible to call the jurors to testify whether they were influenced by the statement." *Id.* However, we conclude that the intermediate court's interpretation of Rule 606(b) in *Parchman* conflicts with that of the majority of other courts having addressed the issue. The predominant view among other jurisdictions is that juror testimony regarding the subjective effect of extraneous information or outside influence on the juror's internal thoughts or deliberative processes is not permitted. *See, e. g., Larson v. State,* 79 P.3d 650, 654 (Alaska Ct.App.2003); *Lewis v. Pearson,* 262 Ark. 350, 556 S.W.2d 661, 663-64 (Ark.1977); *Wiser v. People,* 732 P.2d 1139, 1142 (Colo.1987); *Flonnory v. State,* 778 A.2d 1044, 1053-54 (Del.2001); *People v. Hobley,* 182 Ill.2d 404, 231 Ill.Dec. 321, 696 N.E.2d 313, 339 (Ill.1998); *Griffin v. State,* 754 N.E.2d 899, 902 (Ind.2001); *Lund v. McEnerney,* 495 N.W.2d 730, 733-34 (Iowa 1993); *State v. Wisham,* 384 So.2d 385, 387 (La.1980); *State v. Cox,* 322 N.W.2d 555, 559 (Minn.1982); *State v. Mann,* 131 N.M. 459, 39 P.3d 124, 129 (N.M.2002); *State v. Lyles,* 94 N.C.App. 240, 380 S.E.2d 390, 394 (N.C.Ct.App.1989); *State v. Crowell,* 92 Wash.2d 143, 594 P.2d 905, 907 (Wash.1979). This is also the law in virtually every federal circuit to have addressed the issue. *See United States v. Gonzales,* 227 F.3d 520, 525 (6th Cir.2000); *Mahoney v. Vondergritt,* 938 F.2d 1490, 1492 (1st Cir.1991); *United States v. Ortiz,* 942 F.2d 903, 909 (5th Cir.1991); *Haugh v. Jones & Laughlin Steel Corp.,*

949 F.2d 914, 917-18 (7th Cir.1991); *United States v. Maree,* 934 F.2d 196, 201 (9th Cir.1991); *Capps v. Sullivan,* 921 F.2d 260, 263 (10th Cir.1990); *United States v. Small,* 891 F.2d 53, 56 (3rd Cir.1989); *Stockton v. Virginia,* 852 F.2d 740, 744 (4th Cir.1988); *United States v. Sjeklocha,* 843 F.2d 485, 488 (11th Cir.1988); *United States v. Moon,* 718 F.2d 1210, 1235 (2nd Cir.1983).

[9] A good analysis of the issue is found in *Haugh v. Jones & Laughlin Steel Corp.,* 949 F.2d 914 (7th Cir.1991), which involved a trial in federal district court. [FN3] After the jury rendered its verdict and was discharged, the jury foreman informed the judge that a marshal who had overseen the jury during deliberations had told its members that there was no such thing as a hung jury. *Id.* at 915. The judge held a hearing on the matter, questioning the marshal and each of the jurors to determine if the statement had actually been made. The marshal testified that he had been asked by a juror how long they would have to stay in the courthouse if a verdict could not be reached, to which he had replied, "[y]ou just have to keep deliberating." *Id.* at 916. Then, in questioning the jurors, the trial court judge inquired not only whether each of the jurors had heard the marshal's remark, but also how the remark had influenced each juror. The judge posed questions such as, "[F]or what reason did you [render this verdict], because you believed in the verdict or because you wanted to go home?" *Id.* at 918. Concluding that there was a reasonable possibility that the statement had influenced the verdict, the court ordered a new trial.

*6 [10] Upon review, the Seventh Circuit Court of Appeals held that the judge's questions concerning the effect of the marshal's statement on the jurors had been improper. *Id.* The Court of Appeals held that Rule 606(b) prohibited the questioning of jurors regarding the impact of extraneous information or outside influence on their deliberations. *Id.* According to the court, the proper procedure under Rule 606(b) is

> for the judge to limit the questions asked the jurors to whether the communication was made and what it contained, and then, having determined that the communication took place and what exactly was said, to determine--without asking the jurors anything further and emphatically without asking them what role the communication played in their thoughts or discussion--whether there is a reasonable possibility that the communication altered their verdict.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## Addendum 24

*Id.* at 917.

We agree with the foregoing interpretation of Rule 606(b). We also note that this view is not a recent development in the law. It was, in fact, held more than a century ago that a juror "may testify to any facts bearing upon the question of the existence of any extraneous influence, although not as to how far that influence operated upon his mind." *Mattox v. United States,* 146 U.S. 140, 149, 13 S.Ct. 50, 36 L.Ed. 917 (1892). As noted, federal courts generally continue to follow the *Mattox* rule. *See* 2 *Federal Rules of Evidence Manual* 905 (7th ed.1998).

[11][12][13] We conclude that this approach is in keeping with the goals of Rule 606(b) to protect the integrity of the deliberative process, encourage frank and open discussion among the jurors, and promote finality of jury verdicts. Prohibiting inquiry into the jurors' thought processes and motivations during deliberations also secures the proper relationship of the jury to the judge and the law. The right to a trial in which a jury serves as the ultimate finder of fact and arbiter of guilt or innocence "is no mere procedural formality, but a fundamental reservation of power in our constitutional structure. Just as suffrage ensures the people's ultimate control in the legislative and executive branches, jury trial is meant to ensure their control in the judiciary." *Blakely v. Washington,* 542 U.S. 296, ---- - ----, 124 S.Ct. 2531, 2538-39, 159 L.Ed.2d 403 (2004).

[14][15][16][17] For the foregoing reasons, we hold that Tennessee Rule of Evidence 606(b) permits **juror** testimony to establish the fact of **extraneous** information or improper influence on the **juror**; however, **juror** testimony concerning the effect of such information or influence on the **juror's** deliberative processes is inadmissible. In the case now before us, we conclude that it was error for the post-conviction court to consider the juror's testimony regarding the effect of the court officer's statement on her decision making process. The juror's testimony that the statement had been made was properly considered and raised a presumption of prejudice to the petitioner. The only evidence presented by the State to rebut this presumption was the inadmissible cross-examination testimony of this juror. The State could have called the court officer to testify as to whether he actually made the statement, or the other members of the jury could have been asked whether they heard the statement. However, as no other proof was presented on this issue at the hearing, we conclude that the State failed to sufficiently rebut the presumption of prejudice to the petitioner. Accordingly, we reverse the judgment of the Court of Criminal Appeals and remand this case for a new trial.

*7 Before concluding this issue, some additional discussion is in order. In reviewing the facts of this case, we see no ill intent by the court officer in making the statement to the jury. It was apparently no more than an "off the cuff" remark given during a short exchange with a juror, without any thought of its possible effect on the jury. We realize that a court officer's job places him or her in a position where some informal conversation with jurors is inevitable. Therefore, we take this opportunity to strongly caution officers against making any potentially prejudicial remarks to jurors. In doing so, we do not intend to discourage cordial relations between court officers and jurors. Jury service is " 'the highest obligation of citizenship [and] should be an interesting and rewarding experience to be looked back on with interest and pleasant recollection by those who are privileged to be selected.' " *Carruthers,* 145 S.W.3d at 93 (quoting *State v. Pennell,* 583 A.2d 1348, 1353 (Del.1990)). To that end, the court officer's role is vital. But at the same time, these officers must carefully guard against making any statements of law or prejudicial comments to jurors. Court officers act as representatives of the court, and they must recognize the official character of their position will cause their comments to carry great weight in the eyes of the jury. Thus, we again stress the importance of closely guarding all comments made in the presence of jurors.

### Conclusion

To summarize, we hold that Tennessee Rule of Evidence 606(b) does not permit **juror** testimony as to the effect of any **extraneous** information or improper influence on the **juror's** deliberations. Therefore, the post-conviction court erred in admitting juror testimony in this regard during the petitioner's post-conviction hearing. The court officer's improper statement to the jury created a presumption of prejudice which the State failed to overcome. Accordingly, the judgment of the Court of Criminal Appeals is reversed, and the case remanded for a new trial.

Costs of this appeal are taxed to the State of Tennessee.

> FN1. Federal Rule of Evidence 606(b) and the current Tennessee Rule of Evidence

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## Addendum 24

606(b) differ only in one respect. The Tennessee rule contains the additional exception allowing for juror testimony in a case where "the jurors agreed in advance to be bound by a gambling or quotient verdict."

FN2. The *Caldararo* court expounded on the purpose of the rule as follows:

[Rule 606(b) ] represents a compromise between important public policies. It enables the courts to protect the litigants from verdicts tainted by extraneous prejudicial information or outside influence. At the same time, it recognizes the importance of the inviolate nature of a jury's deliberations.... The rule precludes inquiries into the jury's deliberative process while allowing juror testimony concerning objective incidents or events that constitute external or extraneous influences on the jury.... Thus, it insures that jurors will not be guarded in their deliberations for fear of later scrutiny by others. It also prevents jurors whose views are in the minority from manipulating the system by repudiating the verdict and thereby requiring a new trial. *Id.* at 741-42 (citations omitted).

FN3. Although the court in *Haugh* was interpreting Federal Rule of Evidence 606(b), rather than the Tennessee rule, the federal court's interpretation provides helpful guidance to our own analysis because the two rules are virtually identical. *See Caldararo,* 794 S.W.2d 741 at n. 3; *Cont'l Cas. Co. v. Smith,* 720 S.W.2d 48, 49 (Tenn.1986).

2005 WL 1491138 (Tenn.)

Briefs and Other Related Documents (Back to top)

. 2005 WL 756909 (Appellate Brief) Brief Of Appellant Robert D. Walsh (Jan. 13, 2005)Original Image of this Document with Appendix (PDF)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Addendum 24