UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| GARY WAYNE SUTTON, | ) | |
| | ) | |
|     *Petitioner*, | ) | |
| | ) | |
| v. | ) | No.: 3:07-CV-30-TAV-CCS |
| | ) | |
| WAYNE CARPENTER, WARDEN, | ) | |
| Riverbend Maximum Security Institution, | ) | |
| | ) | |
|     *Respondent*. | ) | |

## MEMORANDUM OPINION

Gary Wayne Sutton ("Petitioner") was sentenced to life imprisonment and two years, to run consecutively, by a Tennessee jury, following his 1993 convictions for first-degree murder and setting fire to personal property. Petitioner has exhausted his appeals in the Tennessee Courts, and this Court denied his federal habeas corpus petition on September 29, 2011 [Docs. 28, 29]. This matter is now before the Court on remand from the Sixth Circuit. After reviewing the supplemental briefs filed by both parties, the applicable law, and, where relevant, the record of Petitioner's underlying conviction and habeas records, the Court will **DENY** Petitioner's claims.

**I.     Procedural Background[1]**

On February 24, 1993, Petitioner was convicted, along with co-defendant James Dellinger, of the first degree-degree murder of Connie Branam and felonious burning of

---

[1] The Court assumes familiarity with Petitioner's case and discusses only the procedural and factual background as it is relevant to the motion currently before the Court.

personal property [Doc. 3]. Petitioner received a life sentence for the murder conviction, and a consecutive two-year sentence for the burning of personal property conviction [Doc. 3]. The convictions were affirmed on direct appeal to the Tennessee Court of Criminal Appeals, *see State v. Sutton*, No. 03C01-9403-CR-0090, 1995 WL 406953 (Tenn. Crim. App. July 11, 1995), *perm. app. denied* Jan. 22, 1996, and state post-conviction relief was subsequently denied. *State v. Sutton*, No. E2004-01068-CCA-R3-PC, 2006 WL 1679595 (Tenn. Crim. App. June 19, 2006), *perm. app. denied* Oct. 30, 2006.

Petitioner filed a habeas corpus petition, which the Court denied on September 29, 2011 [Docs. 28, 29]. In reaching this decision, the Court found that Petitioner had procedurally defaulted on some of his ineffective assistance of counsel claims by failing to properly exhaust them in the state proceedings [Doc. 28]. The Court also denied Petitioner's certificate of appealability [Doc. 29].

Petitioner subsequently filed a motion to stay the case and hold it in abeyance pending the Supreme Court's decision in *Maples v. Thomas*, 132 S. Ct. 912 (2012), and *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), and a simultaneous motion to alter or amend the Court's judgment under Fed. R. Civ. P. 59(e) [Docs. 30, 31]. The Court denied Petitioner's motion to stay the case and his motion to alter judgment; however, the Court granted Petitioner's request to brief the procedural default issue under *Martinez* [Doc. 36]. The Court ultimately denied Petitioner's motion to alter or amend judgment finding

that *Martinez* was inapplicable to Tennessee convictions, but granted a certificate of appealability [Doc. 42].

On appeal to the Sixth Circuit, the court found that *Martinez* and the Supreme Court's intervening decision in *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), are applicable in Tennessee. *See Sutton v. Carpenter*, 745 F.3d 787 (6th Cir. 2014). The Sixth Circuit remanded the case to this Court to determine whether Petitioner is entitled to relief on his ineffective assistance of counsel claims. *Id*. at 796. The Court ultimately ordered the parties to file briefs on the ineffective assistance of counsel claims, the legal standard the Court should apply when analyzing these issues, and whether the Court is required to give deference to prior rulings under the Antiterrorism and Effective Death Penalty Act ("AEDPA") [Doc. 46].

**II.     Analysis**

Petitioner has moved to amend this Court's judgment, arguing that he can establish the requisite cause and prejudice to excuse the procedural default of his ineffective assistance of counsel claims because he received ineffective assistance of counsel during his state post-conviction proceedings [Doc. 51]. In his motion, Petitioner specifically seeks to reopen the following ineffective assistance of counsel claims: (1) trial counsel failed to object and appeal the manner in which the jury *venire* was comprised and the denial of individual *voir dire*; (2) trial counsel failed to call Danny Sutton to bolster the defense theory of the case; (3) trial counsel failed to present testimony rebutting the prosecution theory of the case; (4) trial counsel failed to

3

challenge the instruction that the jury could convict based on moral certainty; and (5) trial counsel failed to investigate and learn that jurors consulted the Bible during the deliberation process [Doc. 51].

In *Martinez*, the Supreme Court created "a narrow exception" to the general rule of *Coleman v. Thompson* that a habeas petitioner cannot use ineffective assistance of collateral review counsel as cause to excuse a procedural default. 501 U.S. 722, 756–57 (1991). The Supreme Court held that where a state's procedural law requires claims of ineffective assistance of counsel to be raised in an initial-review collateral proceeding, a procedural default will not bar a habeas court from hearing a substantial claim of ineffective assistance of trial counsel if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective. *Martinez*, 132 S. Ct. at 1320. The Supreme Court subsequently expanded the exception in *Martinez*, holding that where a "state['s] procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of counsel on direct appeal, [the] holding in *Martinez* applies." *Trevino*, 133 S. Ct. at 1921. The Sixth Circuit held in this case that *Martinez*, as expanded by *Trevino*, applies in Tennessee. *Sutton*, 745 F.3d at 795–96.

*Martinez* permits a petitioner to establish cause to excuse a procedural default of an ineffective assistance of trial counsel claim by showing that he received ineffective assistance by post-conviction counsel. *See Martinez*, 132 S. Ct. at 1320. This holding, however, does not dispense with the "actual prejudice" requirement established by the

4

Supreme Court in *Coleman*. 501 U.S. at 750. To successfully establish cause and prejudice under *Martinez* and *Trevino*, a petitioner must show a substantial underlying claim of ineffective assistance of trial counsel. *See Trevino*, 133 S. Ct. at 1918; *Martinez*, 132 S. Ct. 1318–19. "To establish that his claim is 'substantial,' a habeas petitioner must 'show that his post-conviction relief counsel was ineffective under *Strickland v. Washington*.' That is, the petitioner must show both that his post-conviction counsel's performance was constitutionally deficient and that the petitioner was prejudiced by the deficiency." *Thorne v. Hollway*, No. 3:14-CV-0695, 2014 WL 4411680, at *22 (M.D. Tenn. Sept. 8, 2014) (quoting *Clabourne v. Ryan*, 745 F.3d 362, 376 (9th Cir. 2014)).

As part of showing a substantial claim of ineffective assistance of trial counsel, the petitioner must prove prejudice under *Strickland*. *See McGuire v. Warden, Chillicothe Corr. Inst.*, 738 F.3d 741, 752 (6th Cir. 2013) ("To be successful under *Trevino*, [petitioner] must show a 'substantial' claim of ineffective assistance, and this requirement applies as well to the prejudice portion of the ineffective assistance claim." (internal citations omitted)). Under *Strickland*, a petitioner can prove prejudice by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The "actual prejudice" requirement of *Coleman* and the prejudice requirement of *Strickland* overlap such that

> in many habeas cases seeking to overcome procedural default under *Martinez*, it will be more efficient for the reviewing court to consider in the first instance whether the alleged underlying ineffective assistance of counsel was "substantial"

5

> enough to satisfy the "actual prejudice" prong of *Coleman*. If not, because the "cause and prejudice" standard is conjunctive rather than disjunctive, the reviewing court would have no need consider whether the petitioner has established cause to overcome the procedural default, in the form of ineffective assistance of post-conviction counsel.

*Hollway*, 2014 WL 4411680, at *23.

### A. Failure to Object and Appeal the Manner in which the Jury *Venire* was Comprised and the Denial of Individual *Voir Dire*.

Petitioner argues that his trial counsel was ineffective for failing to object and appeal the way his jury *venire* was selected [Doc. 51]. According to Petitioner, his jury was selected in a manner that was inconsistent with the Tennessee statutory procedure [Doc. 51]. Petitioner claims that this prejudicial jury composition violated his right to an impartial jury and an effective counsel would have objected and appealed the jury selection method [Doc. 51]. Petitioner also argues that his trial counsel was ineffective for failing to object and appeal the denial of the motion for individual *voir dire* [Doc. 51]. Petitioner alleges that two jurors who ultimately served on his petit jury heard prejudicial information divulged by another potential juror during *voir dire* [Doc. 51].

In response, Respondent argues that post-conviction counsel was not ineffective for failing to challenge trial counsel's failure to object to the jury selection procedure because the state court ultimately found that the verdict was rendered by an impartial jury [Doc. 55]. Respondent also argues that Petitioner's claim concerning the failure to object to individual *voir dire* was waived because Petitioner did not include it in his habeas

petitioner or on appeal to the Sixth Circuit, and that *Martinez* does not apply to counsel's actions on appeal [Doc. 55].

As an initial mater, the Court must address Petitioner's contention that *Martinez* and *Trevino* permit him to assert his claims of ineffective assistance of appellate counsel. Despite the Supreme Court's expansion of the *Martinez* exception in *Trevino*, the exception nonetheless remains a narrow one. The Sixth Circuit has previously found that *Martinez* does not apply to such claims. In *Hodges v. Colson*, the court held that "[u]nder *Martinez*'s unambiguous holding our previous understanding of *Coleman* is still the law—ineffective assistance of post-conviction counsel cannot supply cause for procedural default of a claim of ineffective assistance of appellate counsel." 727 F.3d 517, 531 (6th Cir. 2013) (citing *Landrum v. Mitchell*, 625 F.3d 905, 919 (6th Cir. 2010)). As such, the Court finds that Petitioner's claim, to the extent that it asserts ineffective assistance of appellate counsel, remains procedurally defaulted because it falls outside the purview of *Martinez* and *Trevino*.

As previously explained, to show a substantial ineffective assistance of counsel claim, a petitioner must demonstrate that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687–88. A counsel's performance is considered deficient if it is objectively unreasonable under prevailing professional norms. *Id*. at 688. To prove prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

7

Petitioner claims that his trial counsel was ineffective by failing to object to the way the jury *venire* was composed in violation of Tennessee's statutory procedure [Doc. 51]. The Court, however, need not reach the question of whether Petitioner's counsel was deficient in this aspect because Petitioner cannot demonstrate that his trial counsel's failure to object to the trial court's jury composition prejudiced him. *See, e.g., id*. at 697 (concluding that because both the performance prong and prejudice prong must be satisfied, if a petitioner cannot satisfy one prong, the other need not be examined). "To maintain a claim that a biased juror prejudiced him, [] Petitioner must show that the juror was actually biased against him." *Hughes v. United States*, 258 F.3d 453, 458 (6th Cir. 2001) (citing *Goeders v. Hundley*, 59 F.3d 73, 75 (8th Cir. 1995)). This Court previously held that

> Sutton has not pointed to any evidence in the seven volumes of *voir dire* transcripts indicating any juror who sat on his jury was biased against him. . . . Moreover, the Court's review of the *voir dire* transcripts did not reveal any bias by any of the jurors who sat on Sutton's case. In sum, Sutton has presented no evidence to support his claim that his jury was not impartial and/or that any jurors possessed actual bias.

[Doc. 28 at 77].

Petitioner further argues that trial counsel failed to object to the trial court's denial of his motion for individual *voir dire* [Doc. 51]. The record indicates, and Petitioner concedes, that trial counsel indeed filed a motion for individual *voir dire* and renewed the motion during the trial [Doc. 51]. The Court cannot find that trial counsel was ineffective for making an objection that he actually made. As such, the Court finds that Petitioner's

8

claim of failure to object to the way the jury *venire* was composed and the court's denial of individual *voir dire* is not "substantial" for the purposes of *Martinez*.

### B. Failure to call Danny Sutton to Bolster Defense Theory of the Case.

Petitioner next asserts that his trial counsel were ineffective for failing to call Danny Sutton to testify as a witness [Doc. 51]. According to Petitioner, because one of the defense's theory of the case was that Bill Cogdill was responsible for Connie Branam's death, counsel should have called Danny Sutton to testify to Bill Cogdill offering him cash to "take [Cogdill] to Happy Hollow in Wears Valley so that he could burn his truck and destroy fingerprints on his truck that would convict him" [Doc. 51; Doc. 51-1]. Respondent's response argues that this claim is waived because Petitioner did not include it in his motion to amend nor did he include it on appeal [Doc. 55]. Alternatively, Respondent argues that the claim is insubstantial.

Petitioner appears to argue here, relying on *Foster v. Wolfenbarger*, 687 F.3d 702 (6th Cir. 2012), that his trial counsel failed to adequately "investigate, discover, and present defense witnesses" [Doc. 51]. In *Foster*, the Sixth Circuit found that petitioner's trial counsel's performance was deficient under *Strickland* because his investigation of the alibi witness was not full under the circumstances. *Foster*, 687 F.3d at 708. Petitioner's case, however, is not a matter of failure to investigate, which would have triggered a reasonable analysis of counsel's decision not to call Danny Sutton. *See Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005) ("In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all

9

Case 3:07-cv-00030-TAV-CCS   Document 59   Filed 03/09/15   Page 9 of 18   PageID #: 701

the circumstances, applying a heavy deference to counsel's judgments. The relevant question is not whether counsel's choices were strategic, but whether they were reasonable. A purportedly strategic decision is not objectively reasonable when the attorney has failed to investigate his options and make a reasonable choice between them." (internal citations and quotation marks omitted)). Here, counsel actually contacted Danny Sutton, and in fact, subpoenaed him to appear as a witness. [*See* Doc. 51; 51-2]. Petitioner has not met his burden of showing that counsel's choice to not force Danny Sutton to testify after he failed to show up was not a strategic decision, was unreasonable, or was so far outside the range of reasonable professional assistance as to be deemed deficient.

Even further, the Court cannot find that counsel's failure to take further action to secure Danny Sutton's testimony prejudiced Petitioner. To prove prejudice, Petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The record indicates that the jury heard testimony from Bill Cogdill, as well as testimony from Joyce Tipton pointing at the defense's alternative suspect theory [Addendum No. 3, Vol. 8]. During cross examination, trial counsel questioned Bill Cogdill about his statements that Connie Branam would be found burned in her car near Happy Hollow, and about his alleged request to Danny Sutton to take him to Clear Fork to burn his van [Addendum No. 3, Vol. 8, pp. 1734, 1735–36]. The jury also heard testimony from Joyce Tipton that before Connie Branam's body was found, Bill Cogdill

10

told her that she would be found burned with her car [Addendum No. 3, Vol. 8, p. 1741]. Joyce Tipton further testified that Bill Cogdill told her: "[y]ou sure are a pretty woman. . . . I'd hate to see something happen to you like happened to Connie" [Addendum No. 3, Vol. 8, p. 1744]. According to Joyce Tipton, Bill Cogdill also made this statement to her before Connie Branam's body was found [Addendum No. 3, Vol. 8, pp. 174–45].

Based on this, it appears that the jury in fact heard testimony pointing to Bill Cogdill as an alternative suspect, including the sum of Danny Sutton's proposed testimony, and nevertheless, chose to disregard this theory in its decision to convict Petitioner. As such, Petitioner has failed to show that the result of the proceeding would be different had trial counsel somehow secured Danny Sutton to testify at trial. Therefore, the Court finds that this claim is insubstantial.

### C. Failure to Present Testimony Rebutting Prosecution Theory of the Case.

Next, Petitioner argues that his trial counsel were ineffective for failing to present testimony rebutting the prosecution's theory of the case [Doc. 51]. Particularly, Petitioner argues that the prosecution's theory of the case relied heavily on the Blount County murder case involving Tommy Griffin, and hinged on Griffin being murdered at 11:55 p.m. on February 21[Doc. 51]. Petitioner asserts, however, that evidence provided by the prosecution's expert did not support that theory [Doc. 51]. Petitioner also argues that if trial counsel had conducted further investigation, they would have revealed scientific evidence rebutting the prosecution's theory of the case [Doc. 51]. In support of this argument, Petitioner points to the testimony of Drs. Stanton Kessler and Neal Haskell

11

[Docs. 51, 51-4, 51-5]. Dr. Kessler testified that his research led him to believe that Tommy Griffin was killed no more than 24 hours before his body was discovered on February 24th [Doc. 51-4, p. 129]. Dr. Haskell testified that Tommy Griffin must have been killed between 24 and 36 hours, but no more than 48 hours before his body was found [Doc. 51-4, pp. 53–54]. According to Petitioner, trial counsel were ineffective for failing to investigate and present this evidence [Doc. 51].

In response, Respondent argues that this claim is waived and insubstantial [Doc. 55]. Particularly, Respondent claims that the claim was already decided in this Court's previous decision on Petitioner's closely-related claim [Doc. 55]. The Court agrees. In its order directing Petitioner to provide supplemental briefing on his ineffective assistance of counsel claims, the Court allowed Petitioner to address this claim "only to the extent that this claim is different than Petitioner's claim that counsel failed to investigate Griffin's death" [Doc. 46].

This claim substantially mirrors Petitioner's previous claim that his trial counsel were ineffective for failing to investigate the circumstances surrounding Griffin's death, even though the state's prosecution of Connie Branam's death was inextricably bound with proof that Petitioner and his co-defendant killed Griffin [Doc. 3]. In that claim, Petitioner makes the same argument he makes here, that counsel failed to investigate and provide evidence concerning Griffin's time of death, and that presenting this evidence would have affected the outcome of the case [Doc. 3]. Petitioner also relied on the findings of Drs. Kessler and Haskell as he does here [Doc. 3; Docs. 51-4, 51-5].

12

In addressing Petitioner's failure to investigate claim, the Court previously found that Petitioner failed to establish prejudice under *Strickland* [Doc. 28, pp. 54–55]; *see also Strickland*, 466 U.S. at 694 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."). This Court concluded, as did the Tennessee Court of Criminal Appeals, that Petitioner failed to show that had his trial counsel presented evidence on Tommy Griffin's time of death—which was arguably presented to the Blount County jury during Griffin's murder trial—there is a reasonable probability that it would have led to a different outcome in his Sevier County case [Doc. 28, p. 55]; *Dellinger v. State*, No. E2004-01068-CCA-R3-PC, 2006 WL 1679595, at *18 (Tenn. Crim. App. June 19, 2006). Accordingly, and for the reasons stated in the Court's previous order [Doc. 28], the Court finds that Petitioner's claim for ineffective assistance of counsel for failing to rebut the prosecution's theory of the case is insubstantial.

**D.     Failure to Challenge Instruction that Jury Could Convict Based on "Moral Certainty."**

Petitioner next argues that he received ineffective assistance of counsel because trial counsel failed to object to jury instructions that diluted the burden of proof to his prejudice [Doc. 51]. According to Petitioner, because the jury instructions defined the required degree of finding guilt beyond a reasonable doubt as being to a "moral certainty" and excluded "possible doubt" from the definition, there is the possibility that the jury viewed the proof necessary to convict below what is required by the Due Process Clause

13

[Doc. 51]. Respondent, however, contends that this claim should be dismissed because it is not substantial [Doc. 55].

The Due Process Clause of the Fourteenth Amendment requires the government to prove, beyond a reasonable doubt, every element of a charged offense. *See In re Winship*, 397 U.S. 358, 364 (1970). The Constitution, however, does not provide a blueprint for reasonable doubt jury instructions; rather, whatever instructions given must, "taken as a whole, . . . correctly convey the concept of reasonable doubt to the jury." *Victor v. Nebraska*, 511 U.S. 1, 5 (1994) (quoting *Holland v. United States*, 348 U.S. 121, 140 (1954)). In construing the constitutionality of a given instruction, the question "is whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the *Winship* standard." *Victor*, 511 U.S. at 6.

Petitioner, citing *Cage v. Louisiana*, 498 U.S. 39 (1990), alleges that the use of "possible doubt" combined with "moral certainty" made the jury instruction on reasonable doubt given in his case unconstitutional [Doc. 55]. In *Cage*, the Supreme Court found that the jury instruction did not comply with *Winship* because the use of "substantial doubt" and "grave uncertainty," when paired with "moral certainty" could lead a reasonable juror to find guilt based on proof below that required by the Due Process Clause. *Cage*, 498 U.S. at 41. Subsequently, the Supreme Court in *Victor v. Nebraska*, while not condoning the use of "moral certainty" in reasonable doubt

14

instructions, found that the use of the phrase is proper when the remainder of the instruction lends meaning to the phrase. *Victor*, 511 U.S. at 16.

Here, the jury instruction given on reasonable doubt stated that

> A reasonable doubt is an honest doubt which remains after investigation of all the evidence, which will not permit the mind to rest easily as to the certainty of guilt. A reasonable doubt does not include a captious, possible, or imaginary doubt. Absolute certainty is not required to convict, but moral certainty is required, and this certainty extends to every element necessary to constitute the offense.

[Addendum No. 3, Vol. 12, p. 2108]. Unlike the jury instruction in *Cage*, which distorted the standard of proof by coupling "moral certainty" with "substantial doubt" and "grave uncertainty," *see Cage*, 498 U.S. at 40–41, the instruction given in Petitioner's trial told the jury that they had to base their conclusion on all the evidence presented. As the Supreme Court in *Victor* held, "the moral certainty language cannot be sequestered from its surroundings." *Victor*, 511 U.S. at 16. Here, the entirety of the instruction lends meaning to the phrase "moral certainty." The Supreme Court, in *Victor*, also refused to find fault with the part of the instruction stating that reasonable doubt is not mere possible doubt, finding that the language of the instruction made clear the manner in which possible doubt was used. *Id*. at 17. Furthermore, the Court notes that the Sixth Circuit has found as substantially similar instruction to be constitutional based on the fact that language like "which will not permit the mind to rest easily as to the certainty of guilt," lends meaning to the phrase "moral certainty." *See Austin v. Bell*, 126 F.3d 843, 847 (6th Cir. 1997).

To prevail on this claim for ineffective assistance of counsel, Petitioner must show deficient performance by his trial counsel, and also show prejudice from that deficiency. *Strickland*, 466 U.S. at 687–688. Here, the Court cannot find that trial counsel's performance was deficient for failing to object to a jury instruction that was constitutionally sound, and for which their objection would most likely have been overruled. As such, Petitioner has not met his burden of proving that his trial counsel's performance was deficient.

E.  **Failure to Investigate and Learn that Jurors Consulted the Bible During the Deliberation Process.**

Finally, Petitioner claims that his trial counsel were ineffective for failing to interview jurors post-trial to learn that the jurors consulted a Bible during the deliberation process [Doc. 51]. Petitioner states that one of the jurors brought his Bible into the jury deliberation room, and he and another juror had the Bible open and prayed together [Doc. 51]. Petitioner argues that the presence of the Bible as an extraneous material, not admitted into evidence, was an impermissible external influence of the jury deliberations, and violated the Sixth Amendment [Doc. 51]. Respondent argues that this claim is waived, and regardless, that the claim is insubstantial because it has been previously decided that Petitioner's verdict was rendered by a fair and impartial jury [Doc. 55].

The Sixth Amendment guarantees the right to a trial by a fair and impartial jury which, at minimum, intimates an unprejudiced jury under judicial control as to the law to be applied to the facts. *See Jones v. Kemp*, 706 F. Supp. 1534, 1560 (N.D. Ga. 1989) (citing *Farese v. United States*, 428 F.2d 178, 179–80 (5th Cir. 1970)). In *Kemp*, the

16

court found that it was a constitutional error for the trial court to permit the Bible to go into the jury room at the request of the jurors. *Kemp*, 706 F. Supp. at 1560. Nevertheless, the court stated that it "in no way means to suggest that jurors cannot rely on their personal faith and deeply-held beliefs when facing the awesome decision of whether to impose the sentence of death on a fellow citizen." *Id.* Furthermore, the court differentiated between the situation in *Kemp* where the trial judge authorized the jury to take the Bible back into the deliberation room and where the record indicated that the members of the jury intended to use the Bible in their deliberation, and a case where there is "possession, even in the jury room, of personal Bibles, perhaps even consulted for personal—not group—inspiration or spiritual guidance." *Id.*

In Petitioner's case, the record indicates that one of the jurors had a Bible with him during the deliberation process. However, there is no evidence that the Bible was consulted or used in any manner that could have tainted the proceedings. According to one of the jurors, the Bible was merely used to comfort the understandably distraught juror [Addendum 13. Vol. 2, p. 104]. No specific passages of scripture were discussed, and the Bible was not used to convince any juror to do anything or decide in any particular way [Addendum 13, Vol. 2, p. 104]. Additionally, the juror testified that to his knowledge, the jury's decision was made based solely on the evidence and the law as was given by the trial court [Addendum 13, Vol. 2, p. 106].

As such, the Court cannot find that the mere presence of the Bible in the jury deliberation room constituted constitutional error, where Petitioner has failed to produce

17

evidence that it was used in any way in the reaching the verdict rendered by the jury. Because there is no constitutional error here, the Court finds that Petitioner cannot show the requisite deficient performance and prejudice necessary to raise a substantial claim of ineffective assistance of counsel under *Strickland*.

### III. Conclusion

For the reasons set forth above, the Court finds that Petitioner has failed to show that his claims of ineffective assistance of counsel are substantial permitting him to overcome their procedural default under *Martinez* and *Trevino*. Furthermore, the Court finds that Petitioner cannot show that his claim for ineffective assistance of appellate counsel falls within the scope of the *Martinez* exception. Accordingly, Petitioner's claims will be **DENIED**.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE